Frank S. Hedin (SBN 291289)
fhedin@hedinhall.com
David W. Hall (SBN 274921)
dhall@hedinhall.com
HEDIN HALL LLP
Four Embarcadero Center, Suite 1400
San Francisco, California 94104
Telephone: (415) 766-3534
Facsimile: (415) 402-0058

*Counsel for Plaintiff and the Putative Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTINE LLOYD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EAZE SOLUTIONS, INC.,<br><br>Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Kristine Lloyd, individually and on behalf of all others similarly situated, complains and alleges as follows based on personal knowledge as to herself, on the investigation of her counsel, and on information and belief as to all other matters. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth in this complaint, after a reasonable opportunity for discovery.

## NATURE OF ACTION

1. Plaintiff has never enrolled in or used the services of defendant Eaze Solutions, Inc. ("Defendant"), but she has nonetheless been inundated with the company's unsolicited, autodialed text messages offering to sell her marijuana, at all hours of the day (including as late as 2:10 a.m.) – in clear violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Plaintiff brings this action to recover legal and equitable

CLASS ACTION COMPLAINT

remedies on behalf of herself and the numerous other non-users of Eaze Solutions, Inc. across the country who have likewise been solicited by Defendant to buy drugs via text.

## PARTIES

2. Plaintiff is, and at all times mentioned herein was, an individual and a "person" as defined by 47 U.S.C. § 153(39). Plaintiff has never enrolled in or used Defendant's services and has never provided her cellular telephone number to Defendant.

3. Defendant Eaze Solutions, Inc. is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39). Known as "the Uber of Weed,"[1] Defendant is a recreational and medicinal marijuana delivery company that provides a mobile app to connect customers with cannabis dispensaries throughout California. Defendant maintains its corporate headquarters in San Francisco, California and does business in more than 100 cities in California.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over this putative class action lawsuit pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227.

5. Personal jurisdiction and venue are proper in this district because Defendant maintains its corporate headquarters in this district, because Defendant sent unsolicited text messages to Plaintiff's cellular device from within this district, using phone numbers assigned an area code (415) corresponding to locations in this district, and because the claims alleged herein arose in substantial part in this district.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

6. To address consumer complaints regarding certain telemarketing practices, Congress enacted the TCPA, 47 U.S.C. § 227, in 1991. The TCPA prohibits, *inter alia*, the use of automated telephone equipment, or "autodialers," to make any call, including sending a text message, to a wireless number absent an emergency or the "prior express consent" of

---

[1] Nolan, Greg, *Silicon Valley Has Turned Vaping into a Booming Industry*, The Huffington Post, July 18, 2017, *available at* https://www.huffingtonpost.com/entry/silicon-valley-has-turned-vaping-into-a-booming-industry_us_596e8ec3e4b05561da5a5b93 (last accessed May 1, 2018).

- 2 -

CLASS ACTION COMPLAINT

the party called. And in the case of calls or text messages that constitute "advertisements" or "telemarketing", as defined by applicable regulations, the TCPA requires the "prior express <u>written</u> consent" of the called party before initiating such calls or texts via an autodialer.

7. Moreover, telemarketing calls and text messages can only be made between the hours of 8 a.m. and 9 p.m. (local time at the called party's location). *See* 47 CFR 64.1200(c)(1).

8. According to findings by the Federal Communication Commission ("FCC"), which is vested with authority to issue regulations implementing the TCPA, autodialed calls and texts are prohibited because receiving them is a greater nuisance and invasion of privacy than live solicitation calls and they can be costly and inconvenient. The FCC also recognized that wireless customers are charged for such incoming calls and texts whether they pay in advance or after the minutes or texts are used.

9. One of the most prevalent bulk advertising methods employed by companies today involves the use of "Short Message Services" (or "SMS"), which is a system that allows for the transmission and receipt of short text messages to and from wireless telephones. Another similar service called "Multimedia Messaging Services" (or "MMS") is based upon and similar to the SMS system, but also permits the transmission of photos and videos via text message. According to a recent study, "[s]pam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds – from coupons to phishing schemes – sent directly to user's cell phones."[2]

10. SMS and MMS text messages are directed to a wireless device through a telephone number assigned to the device. When an SMS or MMS text message is successfully transmitted, the recipient's wireless phone alerts the recipient that a message

---

[2] Amanda Lenhart, Cell Phones and American Adults: They Make Just as Many Calls, but Text Less than Teens, Pew Research Center (2010), http://www.pewinternet.org/Reports/2010/Cell-Phones-and-American-Adults.aspx (last visited May 21, 2015).

- 3 -

CLASS ACTION COMPLAINT

has been received. Because wireless telephones are carried on their owners' persons, SMS and MMS text messages are received virtually anywhere in the world.

11. Unlike more conventional advertisements, SMS and MMS message advertisements can actually cost their recipients money because wireless phone users must pay their wireless service providers either for each text message they receive or incur a usage allocation deduction to their text messaging or data plan, regardless of whether the message is authorized.

12. Moreover, the transmission of an unsolicited SMS or MMS text message to a cellular device is distracting and aggravating to the recipient and intrudes upon the recipient's seclusion.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

13. Plaintiff is, and at all times mentioned herein was, the subscriber of the cellular telephone number (***) 521-2336 (the "2336 Number"). The 2336 Number is, and at all times mentioned herein was, assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

14. Founded in San Francisco in 2014, Defendant operates a mobile app and website that "enable[] superior customer choice and convenience [in buying marijuana] by connecting product brands, dispensaries and doctors to customers on demand."[3] Some of the consumer-oriented services facilitated by Defendant's technology include "deliver[ing] weed on-demand and enabl[ing] customers to acquire a medical marijuana card in ten minutes with just a phone call."[4]

15. In October 2016, Defendant announced a round of series B funding in the amount of $13 million from five investors, making the company the "highest-funded startup

---

[3] *Growth Engineer*, Eaze, *available at* https://jobs.lever.co/eaze/5dd83991-94a5-43ed-8550-395454ce5da5 (last accessed May 2, 2018).

[4] Nolan, Greg, *Silicon Valley Has Turned Vaping into a Booming Industry*, The Huffington Post, July 18, 2017, *available at* https://www.huffingtonpost.com/entry/silicon-valley-has-turned-vaping-into-a-booming-industry_us_596e8ec3e4b05561da5a5b93 (last accessed May 1, 2018).

in the history of the cannabis industry, as well as its fastest-growing one."[5] By mid-2017, Defendant was performing 120,000 deliveries per month to over 250,000 customers and had experienced 300 percent growth over the previous year.[6] And by September 2017, Defendant had "raised another $27 million in venture funding."[7]

16. All told, Defendant has thus far raised more than $52 million in financing[8] and acquired over 300,000 users, in California alone, since its inception in 2014.[9]

17. The inconvenient truth, however, is that Defendant's exponential growth is not attributable to the quality of the product it delivers or the convenience of the service it provides – after all, the product is not even grown by Defendant, and Defendant is hardly the first drug dealer to deliver. The reality is that Defendant "growth hacked" its way to the top of the pot delivery business – by relentlessly bombarding existing and prospective customers with text messages and other digital spam, day after day, *en masse*, without anyone's permission, precisely as experienced by Plaintiff here.

18. On its website, Defendant actually embraces growth hacking as the crux of its business model, priding itself as "the fastest growing technology startup in the cannabis industry" and actively soliciting employment applications for a "Growth Engineer" position and four other "growth"-related positions, including a "Growth Marketing Manager (Email,

---

[5] Burns, Janet, *Weed Delivery App 'Eaze' Bags $13M As Highest-Funded Cannabis Startup Yet*, Forbes, *available at* https://www.forbes.com/sites/janetwburns/2016/10/25/weed-delivery-app-eaze-bags-13m-as-highest-funded-cannabis-startup-yet/#73c4aa4a37c7 (last accessed May 2, 2018).

[6] Fried, Ina, *Eaze raises another $27M as money piles into cannabis tech*, Axios, *available at* https://www.axios.com/eaze-raises-another-27m-as-money-piles-into-cannabis-tech-1513305511-282b5db7-3f39-42d7-bdd3-8797f78d43c3.html (last accessed May 2, 2018); Hartman, Shelby, *Five Must-Have Cannabis Apps for Tech-Savvy Stoners*, LA Weekly, *available at* http://www.laweekly.com/news/five-weed-apps-and-cannabis-tech-digital-tools-8323655 (last accessed May 2, 2018).

[7] Buhr, Sarah, *Eaze is moving into recreational marijuana delivery with $27 million in new funding*, TechCrunch, *available at* https://techcrunch.com/2017/09/14/eaze-is-moving-into-recreational-marijuana-delivery-with-27-million-in-new-funding/ (last accessed May 2, 2018).

[8] Wallace, Alicia, *Eaze accelerating marijuana delivery tech with $27 million investment*, The Cannabist, *available at* https://www.thecannabist.co/2017/09/14/eaze-marijuana-delivery-tech-investment-california/88083/ (last accessed May 2, 2018).

[9] *Growth Engineer*, Eaze Solutions, Inc., *available at* https://jobs.lever.co/eaze/5dd83991-94a5-43ed-8550-395454ce5da5 (last accessed May 2, 2018).

SMS, CRM)"[10] – all of which identify as a job requirement the ability to "figure out" how to "growth hack" advertising channels in order to further "grow" the company.[11]

19.  Unfortunately for Defendant's users and non-users alike, the company's growth hacking in the SMS text marketing context has come at the expense of their privacy. As succinctly summarized by one recipient of Defendant's spam texts in a review posted to Apple's App Store:

> **Ratings & Reviews**
>
> **Terrible app. They will spam yo...**  Dec 30
> ★☆☆☆☆                              mykidsarenaughty
>
> Can't even believe these guys pulled down 51m$ from VCs. I think I'll be sending these investors an email. I don't even remember signing up for Eaze (and I definitely haven't given an indication that I'm interested), and they spam me over texts. Something about 30$ off. It's about 3-4 a day. I tried to block them, but the service they use to bulk SMS uses a new number every time. Extremely shady marketing tactics. This gives me hope that if I make an app, with a cute logo, and elementary knowledge with Swift, I'm gonna grab 50,000,000$ from VCs in Palo Alto. Ridiculous. Don't download, and stay away from this company!

20.  The reviewer has it right. Central to Defendant's "growth hacking" scheme is its relentless transmission of text message advertisements without the recipients' consent.

21.  Defendant transmits its text message advertisements with technology provided by (among other agents or affiliates) a company called Bitesize, which was founded and is operated by an individual named Jessica Lee. Bitesize's text messaging technology

---

[10] *Openings,* Eaze Solutions Inc., *available at* https://www.eaze.com/careers (last accessed May 2, 2018).

[11] *Growth Engineer*, Eaze, *available at* https://jobs.lever.co/eaze/5dd83991-94a5-43ed-8550-395454ce5da5 (last accessed May 2, 2018) (stating that "[t]he successful Growth Engineer will: . . . [a]ctually growth hack paid channels: A lot of the traditional digital advertising channels do not allow us to directly advertise our products on their platform but you will have to figure out how to do it (yes, it is doable).").

- 6 -
CLASS ACTION COMPLAINT

"helps companies," including Defendant, "drive sales with interactive text message[s],"[12] which Bitesize sends on the companies' behalf in "bulk."[13]

22.     In or about August 2018, Defendant transmitted or caused to be transmitted, by itself or through an intermediary or intermediaries, including through Bitesize as its agent, numerous text messages to the 2336 Number without first obtaining Plaintiff's express written consent and, in many cases, without providing Plaintiff a mechanism to stop receiving such messages in the future.

23.     On August 11, 2018 at 9:13 p.m., for example, Defendant transmitted or caused to be transmitted, by itself or through an intermediary or intermediaries, the following text message to the 2336 Number without Plaintiff's express consent, written or otherwise:



24.     The hyperlink URL contained within the above-depicted text message, www.eaze.com/verify/, is leased or owned, and is operated and maintained, by Defendant.

25.     When visited, the URL www.eaze.com/verify/ directs the visitor to a website that offers Defendant's goods and services for sale for profit.

26.     The source of the unsolicited text message advertisement that Defendant sent to the 2336 Number on August 11, 2018 at 9:13 p.m. was (415) 212-4684, which is a San

---

[12]    *See Bitesize,* Netcapital, *available at* https://netcapital.com/companies/bitesize (last accessed May 2, 2018) (identifying J. Lee as founder & CEO of Bitesize, a/k/a HandStack).

[13]    *Handstack,* LinkedIn, available at https://www.linkedin.com/company/5222232/ (last accessed May 2, 2018) ("We work with brand marketers . . . to increase ROI by cutting through the noise with efficient **bulk** two-way text conversations"); *Bitesize*, Netcapital (identifying as clients "Universal Studios, Legendary Entertainment, **Eaze**, and DoorDash[.]").

Francisco-based telephone number leased or owned by Defendant or Defendant's agent(s) or affiliate(s) and is used for operating Defendant's text message marketing program.

27. Defendant has transmitted numerous other text messages to the 2336 Number, including from other telephone numbers containing a (415) area code, at all times of day (as late as 2:10 a.m.).

28. Because Plaintiff is alerted by her cellular device, by auditory or visual means, whenever she receives a text message, the unsolicited SMS or MMS text messages that Defendant transmitted to Plaintiff's cellular device invaded Plaintiff's privacy and intruded upon Plaintiff's seclusion upon receipt.

29. Between Defendant's inception in 2014 through the present, numerous consumers have expressed their outrage to Defendant on social media after having received the same types of unsolicited, autodialed messages Plaintiff received.  Consider the following examples:










30.     In fact, in response to one customer's complaint to Defendant on Twitter, the founder and CEO of Bitesize, Jessica Lee, personally responded to the complaint by assuring the individual that Defendant's text message program is "completely CAN-SPAM compliant," as shown below:



31. Contrary to the response by Ms. Lee depicted above, the TCPA, not the CAN-SPAM Act, regulates the transmission of text messages like those sent by Defendant or Defendant's agent(s) or affiliate(s), including Bitesize. Accordingly, it appears that the text messages at issue in this case were sent by Bitesize on behalf of Defendant with the wrong regulatory scheme in mind.

32. All telephone contact by Defendant or affiliates, subsidiaries, or agents of Defendant to Plaintiff at the 2336 Number occurred via an "automated telephone dialing system" as defined by 47 U.S.C. § 227(b)(1)(A).

33. Specifically, Defendant utilized an "automated telephone dialing system" because the text messages to the 2336 Number and to the other Class members' cellular devices were sent from a telephone number used to message consumers *en masse*; because Defendant's automated dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous calls or texts simultaneously (all without human intervention); and because the hardware and software used by Defendant to send such messages have the capacity to store, produce, and dial random or sequential numbers, or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion and without human intervention.

34. And indeed, Defendant actually transmitted the text messages at issue in this case to Plaintiff and all other putative class members in an automated fashion and without human intervention, with hardware and software that stores, produces and dials random or sequential numbers. As alleged above, Bitesize publicly states that its technology, which is used by or on behalf of Defendant, transmits text messages in "bulk."[14] And since August 16, 2016, Defendant has admitted on its website that the text messages it transmits are "generated by automatic telephone dialing systems[.]"[15]

---

[14] *Handstack,* LinkedIn, *available at* https://www.linkedin.com/company/5222232/ (last accessed May 2, 2018) ("We work with brand marketers and political campaigns to increase ROI by cutting through the noise with efficient bulk two-way text conversations.") (emphasis added).

[15] *Terms of Use,* Eaze Solutions, Inc., available at https://www.eaze.com/terms-of-service (last accessed May 2, 2018) (emphasis added).

35. The text messages sent by Defendant to the 2336 Number, including without limitation the text message sent by Defendant on August 11, 2018 at 9:13 p.m., as well as those sent by Defendant to the other Class members, constitute "advertisements" and/or "telemarketing" material within the meaning of the applicable TCPA regulations. This is because Defendant sent the text messages in order to advertise the commercial availability of its marijuana delivery services, and because Defendant sent the text messages for the purpose of advertising the sale of marijuana goods and delivery services to Plaintiff and the other Class members for profit.

36. Neither Plaintiff nor the other members of the Class provided their "prior express written consent" or any other form of consent to Defendant or any affiliate, subsidiary, or agent of Defendant, including without limitation Bitesize, to transmit SMS or MMS text messages to the 2336 Number or to any other number by means of an "automatic telephone dialing system" within the meaning of 47 U.S.C. § 227(b)(1)(A).

37. Further, Defendant sent SMS and MMS text message advertisements and solicitations to the 2336 Number and the cellular telephone numbers of numerous other Class members before 8 a.m. and after 9 p.m. in the applicable time zones where the Class members reside, even though transmitting such messages at such times is clearly prohibited by 47 C.F.R. 64.1200(c)(1).

38. Remarkably, Defendant sent many of the unsolicited, autodialed text messages at issue in this case, including the ones it sent to Plaintiff, after it had already been sued for doing the same thing in *Williams v. Eaze Solutions, Inc.*, No. 3:18-cv-02598-JD (N.D. Cal.).

## CLASS ALLEGATIONS

39. <u>Class Definition</u>. Plaintiff brings this civil class action on behalf of herself individually and on behalf of all other similarly situated non-users of Defendant's services as a class action pursuant to Federal Rule of Civil Procedure 23. The "Class" which Plaintiff seeks to represent is comprised of and defined as follows:

> All persons within the United States who, between August 23, 2014 and the present, received one or more SMS or MMS text message(s) from Eaze Solutions, Inc. or an affiliate, subsidiary, or agent of Eaze Solutions, Inc. and who have never enrolled in Eaze Solutions, Inc.'s services.

40. Defendant, its employees, and agents are excluded from the Class.

41. Plaintiff reserves the right to modify the definition of the Class (or add one or more subclasses) after further discovery.

42. Plaintiff and all Class members have been impacted and harmed by the acts of Defendant or its affiliates or subsidiaries.

43. This Class Action Complaint seeks injunctive relief and monetary damages.

44. This action may properly be brought and maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b). This class action satisfies the numerosity, typicality, adequacy, commonality, predominance, and superiority requirements.

45. Upon application by Plaintiff's counsel for certification of the Class, the Court may also be requested to utilize and certify subclasses in the interests of manageability, justice, or judicial economy.

46. <u>Numerosity</u>. The number of persons within the Class is substantial, believed to amount to tens of thousands of persons dispersed throughout the United States. It is, therefore, impractical to join each member of the Class as a named Plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.

47. <u>Typicality</u>. Plaintiff, who has never enrolled in Defendant's services, received at least one text message through the use of an automatic telephone dialing system, without providing prior express written consent to the Defendant within the meaning of the TCPA. Consequently, the claims of Plaintiff are typical of the claims of the members of the Class,

and Plaintiff's interests are consistent with and not antagonistic to those of the other Class members she seeks to represent. Plaintiff and all members of the Class have been impacted by, and face continuing harm arising out of, Defendant's violations or misconduct as alleged herein.

48. <u>Adequacy</u>. As Class representative, Plaintiff has no interests adverse to, or which conflict with, the interests of the absent members of the Class, and is able to fairly and adequately represent and protect the interests of such a Class. Plaintiff has raised viable statutory claims of the type reasonably expected to be raised by members of the Class and will vigorously pursue those claims. If necessary, Plaintiff may seek leave to amend this Class Action Complaint to add additional Class representatives or assert additional claims.

49. <u>Competency of Class Counsel</u>. Plaintiff has retained and is represented by experienced, qualified, and competent counsel committed to prosecuting this action. Counsel are experienced in handling complex class action claims, in particular claims under the TCPA and other data privacy and consumer protection statutes.

50. <u>Commonality and Predominance</u>. There are well-defined common questions of fact and law that exist as to all members of the Class and predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from Class member to Class member and may be determined without reference to the individual circumstances of any class member, include (but are not limited to) the following:

   a) Whether Defendant or affiliates, subsidiaries, or agents of Defendant transmitted advertising or telemarketing text messages to Plaintiff's and Class members' cellular telephones;

   b) Whether such text messages were sent using an "automatic telephone dialing system";

> c) Whether Defendant or affiliates, subsidiaries, or agents of Defendant can meet their burden to show Defendant obtained prior express written consent (as defined by 47 C.F.R. 64.1200(f)(8)) to send the text messages complained of, assuming such an affirmative defense is raised;
>
> d) Whether the complained of conduct was knowing or willful;
>
> e) Whether Defendant or affiliates, subsidiaries, or agents of Defendant should be enjoined from engaging in such conduct in the future.

51. <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable. Even if every member of the Class could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. Class wide relief is essential to compel compliance with the TCPA. The interest of Class members in individually controlling the prosecution of separate claims is small because the statutory damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the text messages at issue are all automated and the Class members, by definition, did not provide the prior express written consent required under the statute to authorize

such text messages to their cellular telephones. The Class members can be readily located and notified of this class action through Defendant's records and, if necessary, the records of cellular telephone providers.

52. Additionally, the prosecution of separate actions by individual Class members may create a risk of multiple adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Class who are not parties to such adjudications, thereby substantially impairing or impeding the ability of such nonparty Class members to protect their interests. The prosecution of individual actions by Class members could further establish inconsistent results and/or establish incompatible standards of conduct for Defendant.

53. Defendant or any affiliates, subsidiaries, or agents of Defendant have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate. Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### NEGLIGENT VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT
### (47 U.S.C. § 227)

54. Plaintiff incorporates by reference paragraphs 1-53 of this Class Action Complaint as if fully stated herein.

55. The foregoing acts and omissions constitute negligent violations of the TCPA by Defendant, including but not limited to violations of each of the above-cited provisions of 47 U.S.C. § 227.

56. As a result of Defendant's negligent violations of 47 U.S.C. § 227, Plaintiff and all Class members are entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

57. As a result of Defendant's negligent violations of 47 U.S.C. § 227, Plaintiff and all Class members are also entitled to, and do seek, an award of $500.00 in statutory damages for each and every text message transmitted in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3).

58. Plaintiff and Class members also seek an award of attorneys' fees and costs.

### SECOND CLAIM FOR RELIEF
#### KNOWING AND/OR WILLFUL VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT
#### (47 U.S.C. § 227)

59. Plaintiff incorporates by reference paragraphs 1-53 of this Class Action Complaint as if fully stated herein.

60. The foregoing acts and omissions by Defendant constitute knowing or willful violations of the TCPA, including but not limited to violations of each of the above-cited provisions of 47 U.S.C. § 227.

61. As a result of alleged knowing or willful violations of 47 U.S.C. § 227, Plaintiff and all Class members are entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

62. As a result of Defendant's knowing or willful violations of 47 U.S.C. § 227, Plaintiff and all Class members are also entitled to, and do seek, treble damages of up to $1,500.00 for each and every text message transmitted in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3).

63. Plaintiff and Class members also seek an award of attorneys' fees and costs.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment in her favor, as follows:

A. Injunctive relief prohibiting such violations of the TCPA in the future;

B. As a result of the alleged negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each class member $500.00 in statutory damages for each and every text message that violated the TCPA;

C. As a result of the alleged willful or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each class member treble damages, as provided by the statute, of up to $1,500.00 for each and every text message that violated the TCPA;

D. An award of attorneys' fees and costs to counsel for Plaintiff and the Class; and

E. An Order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the law firm representing Plaintiff as counsel for the Class.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and the Class, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims so triable.

Dated: August 23, 2018                    Respectfully submitted,

By: s/ Frank S. Hedin

Hedin Hall llp

FRANK S. HEDIN (SBN 291289)
fhedin@hedinhall.com
DAVID W. HALL (SBN 274921)
dhall@hedinhall.com
Four Embarcadero Center, Suite 1400
San Francisco, California 94111
Telephone: (415) 766-3534
Facsimile: (415) 402-0058

*Counsel for Plaintiff and the Putative Class*