**BOIES SCHILLER FLEXNER LLP**
ALBERT GIANG, State Bar No. 224332
  *agiang@bsfllp.com*
MICHAEL D. ROTH, State Bar No. 217464
  *mroth@bsfllp.com*
725 South Figueroa Street, 31st Floor
Los Angeles, California 90017-5524
Telephone: (213) 629-9040
Facsimile: (213) 629-9022

FIONA TANG, State Bar No. 298101
  *ftang@bsfllp.com*
1999 Harrison Street, Suite 900
Oakland, California 94612-3578
Telephone: (510) 874-1000
Facsimile: (510) 874-1460

Attorneys for Defendant Eaze Solutions, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| KRISTINE LLOYD,<br><br>                 Plaintiff,<br><br>          v.<br><br>EAZE SOLUTIONS, INC.,<br><br>                 Defendant. | Case No. 18-CV-05176-JD<br><br>[Related to Case No. 18-CV-02598-JD]<br><br>**DEFENDANT EAZE SOLUTIONS, INC.'S MOTION TO DISMISS**<br><br>[Request for Judicial Notice and Notice of Documents Incorporated by Reference, Declaration of Albert Giang in support thereof, and [Proposed] Orders filed concurrently herewith]<br><br>**Judge:**          **Hon. James Donato**<br>**Hearing Date:**     **December 20, 2018**<br><br>Complaint Filed:   August 23, 2018<br>Trial Date:        Not Set |

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on December 20, 2018, at 10:00 a.m., or as soon thereafter as this matter may be heard, in the courtroom of the Honorable District Judge James Donato, located in Courtroom 11 of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Eaze Solutions, Inc. ("Eaze") will and hereby does move this Court to dismiss Plaintiff's Complaint with prejudice.

This Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6), upon the grounds that Plaintiff Kristine Lloyd ("Lloyd") has failed to state a claim upon which relief can be granted under the Telephone Consumer Protection Act ("TCPA") because:  (a) Lloyd's conclusory allegations about "autodialers" are insufficient to support a claim for either negligent or knowing/willing violation of the TCPA; (b) Lloyd has not alleged sufficient facts to support a claim for a TCPA violation based on the verification texts she allegedly received; and (c) Lloyd has not alleged sufficient facts to support a claim for a knowing/willing violation of the TCPA.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Request for Judicial Notice and Notice of Documents Incorporated by Reference, Declaration of Albert Giang and accompanying documents filed concurrently herewith, all of the pleadings and other documents on file in this case and in the related case of *Williams v. Eaze Solutions, Inc.*, Case No. 18-CV-02598-JD, all other matters of which the Court may take judicial notice, and any further argument or evidence that may be received by the Court at the hearing.

DATED:  October 8, 2018

BOIES SCHILLER FLEXNER LLP
ALBERT GIANG
MICHAEL D. ROTH
FIONA TANG

By _____/s/ Albert Giang_____
      ALBERT GIANG
Attorneys for Defendant EAZE SOLUTIONS, INC.

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND ..........................................1

        A.      Eaze's Platform and Verification System .............................................1

        B.      Allegations in the Lloyd Complaint ....................................................2

                1.      The Complaint includes one screenshot of a text message to Lloyd, but incorporates by reference other verification texts to Lloyd. ....................2

                2.      Lloyd's targeted verification texts are inconsistent with her allegations of "en masse" marketing texts received by others in the class of non-users she seeks to represent. ........................................4

III.    LEGAL STANDARD .......................................................................................5

IV.     LLOYD'S VERIFICATION TEXTS DO NOT VIOLATE THE TCPA. ...........................5

        A.      Plaintiff's conclusory allegations about "autodialers" are insufficient to support either TCPA claim. ............................................6

        B.      Plaintiff's allegations fit within a line of cases dismissing TCPA claims based on verification texts, similar to those allegedly received by Lloyd. ...............8

                1.      Verification texts are non-marketing attempts to *clarify* the intention of users and actually *support* the policy goal of obtaining consent. .............8

                2.      Verification texts are "direct targeting" to a specific phone number, which undermines any allegation of "en masse" texting. ...........................9

                3.      Verification texts follow human triggering, which undermines any allegation of "automatic" texting. .............................................11

                4.      The fact that Lloyd denies providing her number, and that third-party error likely triggered the verification texts, does not subject *Eaze* to liability under the TCPA. .............................................13

        C.      Plaintiff's claim for knowing/willful violation of the TCPA does not allege actual knowledge, is conclusory, and must be dismissed. ........................14

V.      CONCLUSION ..............................................................................................15

Case No. 18-CV-02598-JD

DEFENDANT EAZE SOLUTIONS, INC.'S MOTION TO DISMISS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BOIES SCHILLER FLEXNER LLP

## **<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Aca Int'l v. Fed. Commc'ns Comm'n*,
  885 F.3d 687 (D.C. Cir. 2018) ................................................................................................ 8, 9

*Aderhold v. car2go N.A. LLC*,
  668 F. App'x 795 (9th Cir. 2016) ............................................................................................. 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................................. 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................................. 5

*Carver v. Lehman*,
  558 F.3d 869 (9th Cir. 2009) .................................................................................................. 11

*Chesbro v. Best Buy Stores, L.P.*,
  705 F.3d 913 (9th Cir. 2012) .................................................................................................... 5

*Daniel v. Five Stars Loyalty, Inc.*,
  Case No. 15-cv-03546-WHQ, 2015 WL 7454260 (N.D. Cal. Nov. 24, 2015) ......................... 8

*Derby v. AOL, Inc.*,
  Case No. 15-cv-00452-RMW, 2015 WL 3477658 (N.D. Cal. June 1, 2015) ..................... *passim*

*Duguid v. Facebook*,
  Case No. 15-cv-00985-JST, 2016 WL 1169365 (N.D. Cal. March 24, 2016) .............. 1, 13, 6, 10

*Duguid v. Facebook*,
  Case No. 15-cv-00985-JST, 2017 WL 635117 (N.D. Cal. February 2, 2017) ................. 7, 10, 13

*Duguid v. Facebook*,
  Case No. 15-cv-00985-JST, 2017 WL 3128912 (N.D. Cal. July 24, 2017) ................................ 7

BOIES SCHILLER FLEXNER LLP

*Epps v. Earth Fare, Inc.*,
    Case No. CV 16-08221 sjo (ssx), 2017 WL 1424637 (C.D. Cal. Feb. 27, 2017) ....................... 11

*Freidman v. Massage Envy Franchising, LCC*,
    Case No. 3:12-cv-02962-L-RBB, 2013 WL 3026641 (S.D. Cal. June 13, 2013) ......................... 8

*Glauser v. Groupme, Inc.*,
    Case No. C 11-2584 PJH, 2015 WL 475111 (N.D. Cal. Feb. 4, 2015)................................. 12, 14

*Huricks v. Shopkick, Inc.*,
    Case No. C-14-2464 MMC, 2015 WL 5013299 (N.D. Cal. Aug. 24, 2015) .............................. 11

*Ibey v. Taco Bell Corp.*,
    Case No. 12-CV-0583-H (WVG), 2012 WL 2401972 (S.D. Cal. June 18, 2012) .................. 9, 12

*In The Matter Of Rules & Regulations Implementing The Tel. Consumer Prot. Act Of 1991*,
    30 F.C.C. Rcd. 7961 (2015)........................................................................ 8

*Jones v. Royal Admin. Servs., Inc.*,
    887 F.3d 443, 453 (9th Cir. 2018) ........................................................... 15

*Kramer v. Autobytel , Inc.*,
    759 F. Supp. 2d 1165 (N.D. Cal. 2010)...................................................... 6

*Kristensen v. Credit Payment Servs. Inc.*,
    879 F.3d 1010 (9th Cir. 2018) ............................................................... 14

*Lary v. Trinity Physician Fin. & Ins. Servs.*,
    780 F.3d 1101 (11th Cir. 2015) ......................................................... 14, 15

*Marks v. Crunch San Diego, Llc*,
    2018 WL 4495553 (9th Cir. Sept. 20, 2018) ............................................. 11

*Mckenna v. Whispertext*,
    Case No. 5:14-cv-00424-PSG, 2014 WL 4905629 (N.D. Cal. Sept. 29, 2014) ...................... 6, 14

*Mckenna v. Whispertext,*
    Case No. 5:14-cv-00424-PSG, 2015 WL 428728 (N.D. Cal. Jan. 30, 2015)........................ 11, 14

Case No. 18-CV-02598-JD

DEFENDANT EAZE SOLUTIONS, INC.'S MOTION TO DISMISS

*Mckenna v. Whispertext,*
   Case No. 5:14-CV-00424-PSG, 2015 WL 5264750 (N.D. Cal. Sept. 9, 2015) ................. 7, 12, 11

*Melito v. Am. Eagle Outfitters, Inc.,*
   Case No. 14-cv-02440 (VEC), 2015 WL 7736547 (S.D.N.Y. Nov. 30, 2015) .......................... 12

*Meyer v. Portfolio Recovery Assocs.,*
   707 F.3d 1036 (9th Cir. 2012) ........................................................................................................ 5

*St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.,*
   605 F.2d 1169 (10th Cir. 1979) ...................................................................................................... 2

*United States v. Ritchie,*
   342 F.3d 903 (9th Cir. 2003) ...................................................................................................... 2, 4

*United States v. Ruiz,*
   935 F.2d 1033 (9th Cir. 1991) ..................................................................................................... 11

*Weisberg v. Stripe, Inc.,*
   Case No. 16-cv-00584-JST, 2016 WL 3971296 (N.D. Cal. July 25, 2016) ......................... *passim*

*Wick v. Twilio Inc.,*
   Case No. C16-09914RSL, 2016 WL 6460316 (W.D. Wash. Nov. 1, 2016) ................................ 9

*Zisk v. Gannett Co. Income Prot. Plan,*
   73 F. Supp. 3d 1115, 1120 (N.D. Cal. 2014) .............................................................................. 11

**Statutes**

47 U.S.C. § 227 ........................................................................................................................... 1, 6

47 U.S.C § 227(A)(1) ...................................................................................................................... 6

47 U.S.C § 227(B)(1) ...................................................................................................................... 5

Fed. R. App. P. 41(c) .................................................................................................................... 12

Fed. R. Civ. P. 23(3) ....................................................................................................................... 3

Fed. R. Civ. P. 12(b)(6) ...................................................................................................................1

Telephone Consumer Protection Act, 47 U.S.C. § 227 ........................................................ *passim*

B O I E S   S C H I L L E R   F L E X N E R   L L P

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Eaze Solutions, Inc. ("Eaze") is the premier technology platform connecting independent, authorized cannabis dispensaries with verified users, providing consumers with safe and secure access to legal cannabis in California.  And this is the *second* attempt by Plaintiff's counsel to sue Eaze for classwide violations of the Telephone Consumer Protection Act ("TCPA").  The first attempt was the related case of *Williams v. Eaze* (Case No. 18-CV-02598-JD), which must fail because its named plaintiff was an undisputed user of the Eaze platform who waived class claims and agreed to individual arbitration of disputes.  (*See Williams*, Motion to Compel Individual Arbitration (Dkt. 17).)  Now recognizing that no class can proceed where all users like Williams "are subject to attack by [Eaze's] pending motion to compel arbitration" (*see* Administrative Motion (Dkt. 30)), Plaintiff's counsel is hoping that Lloyd can carry the torch for *non*-users who allegedly received "en masse" "autodialed" "marketing" text messages.

That hope is extinguished by Lloyd's own texts that clearly show that she received a series of targeted *verification texts* over three days—which was likely triggered by a prospective user who (erroneously) entered Lloyd's number, which sought verification of that specific number, and which belie Lloyd's conclusory claim that she received "unsolicited, autodialed" advertisements from Eaze.  Courts in this district have repeatedly found that similar verification or confirmation texts do not violate the TCPA, and this Court should do the same and grant this Motion to Dismiss. *See, e.g.*, *Weisberg v. Stripe, Inc.*, No. 16-CV-00584-JST, 2016 WL 3971296 (N.D. Cal. July 25, 2016); *Duguid v. Facebook* (*Duguid I*) Case No. 15-cv-00452-RMW, 2016 WL 1169365 (N.D. Cal. March 24, 2016) (appeal pending); *Derby v. AOL, Inc.*, No. 15-CV-00452-RMW, 2015 WL 3477658 (N.D. Cal. June 1, 2015).

### II.    FACTUAL AND PROCEDURAL BACKGROUND

#### A.    *Eaze's Platform and Verification System*

The complaints in the related *Lloyd* and *Williams* cases contain allegations about the Eaze platform and its verification system (Compl. ¶¶ 13-28), which is important context for the six text messages that form the basis of Lloyd's claims.  In order for prospective users to request and

**DEFENDANT EAZE SOLUTIONS, INC.'S MOTION TO DISMISS**

receive a delivery coordinated by Eaze, they must create an Eaze account.  (Declaration of Daniel Erickson ("Erickson Decl."), at ¶ 5.)[1]  Creating an Eaze account consists of two main components: registration and verification.  (*Id.* at ¶ 5)  To register, a user must enter information including their name, email address, and phone number.  (*Id*. at ¶ 5.)  After verifying their phone number, the user must upload a valid form of government identification onto the Eaze Platform, where an Eaze customer service representative confirms that the user is over the age limit and legally permitted to purchase cannabis products in California.  (*Id*. at ¶ 5.)

### B.   Allegations in the *Lloyd* Complaint

#### 1.   The Complaint includes one screenshot of a text message to Lloyd, but incorporates by reference other verification texts to Lloyd.

The Complaint contains only a few allegations specific to the texts received by Lloyd herself.  (Compl. ¶¶ 1, 2, 13, 17, 22-28.)  Lloyd alleges that she received "numerous text messages to [her] 2336 Number" (*id.* at ¶ 22), including "advertisement[s]" (*id.* at ¶ 26) without "a mechanism to stop receiving such messages in the future" (*id.* at ¶ 22) and "as late as 2:10 a.m." (*id.* at ¶ 27).  Yet Lloyd includes only one screenshot of a text message from August 11, 2018 (*id.* at ¶ 23), which is inconsistent with her characterization of the other texts in several ways:

*First*, the screenshot refers to **verification** (*i.e.*, it is not an advertisement), reminding the user that "Your phone is still unverified" and asking her to click a verification link.  (Compl. ¶ 23.)

*Second*, the screenshot does include a **clear mechanism to stop** receiving such messages: "(Text STOP now to unsubscribe)."  (*Id.*)

*Third*, the screenshot is **timestamped 9:13 p.m.**, not 2:10 a.m.  (*Id.*)

Given these inconsistencies and Lloyd's express reliance on "numerous text messages" to

---

[1] The Erickson Declaration, which details Eaze's registration and verification system, was submitted in the related matter of *Williams v. Eaze* (Dkt. 17-1) and is the subject of the concurrently filed Request for Judicial Notice and Notice of Documents Incorporated by Reference ("RJN").  As Plaintiff has conceded the direct relationship between *Williams* and this matter, the Erickson Declaration is subject to judicial notice here.  *See e.g.*, Plaintiff's Notice of Pendency of Other Action (Dkt. 6); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue").

form the basis of her claims, the "other text messages to [her] 2336 Number" that are incorporated

by reference into the Complaint[2] are relevant here:



This series of six (6) verification texts were sent between August 11, 2018 and August 14, 2018,

include the August 11, 2018 text message captured in the Complaint, and were provided to counsel

for Eaze.  (Giang Decl., ¶ 2.)  While not necessary for this motion, Eaze has confirmed these six (6)

verification texts in its system, which shows that these verification texts were the only messages

ever sent to Lloyd's number in Ohio (521-2336), before the account user corrected one digit to

another Ohio phone number.[3]  (*See* Giang Decl.¶ 3.)

Notably, the Complaint omitted screenshots of earlier texts in this verification series.  The

first text message was actually timestamped "7:42 p.m" on "August 11, 2018" and clearly asks the

---

[2] These texts are referenced explicitly in the Complaint, and therefore are subject to the doctrine of incorporation by reference.  *See* RJN, Declaration of Albert Giang ("Giang Decl."), ¶ 3; *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.").

[3] Should this matter proceed past the pleading stage, Eaze intends to show that a user with an Ohio phone number attempted to sign up for the platform, mistyped her phone number by one digit and inadvertently provided Lloyd's number, and clicked "RESEND VERIFICATION LINK" because she did not receive verification texts from Eaze.  (Giang Decl., ¶ 3.)  Six verification texts to Lloyd were eventually triggered before this user corrected Lloyd's phone number by one digit.  Such unusual circumstances not only undermine the claim that Eaze knowingly "initiated" "en masse" "marketing" texts in violation of the TCPA, but raise insurmountable problems for class certification.  *See* Fed. R. Civ. P. 23(3).

DEFENDANT EAZE SOLUTIONS, INC.'S MOTION TO DISMISS

1  user to "Complete the Eaze registration process" by clicking a secure verification link at a unique

2  address.  Different verification texts followed—including Lloyd's screenshot in the Complaint

3  indicating that "[y]our phone number is still unverified" (Compl. ¶ 23)—before the final

4  verification text was triggered at 2:10 a.m. on August 14, 2018, again asking the user to "verify

5  your mobile number" by clicking the same unique verification link.

> **2.    Lloyd's targeted verification texts are inconsistent with her allegations of "en masse" marketing texts received by others in the class of non-users she seeks to represent.**

8  The series of verification texts sent to Lloyd stands in contrast to her claims about different

9  texts allegedly sent to other persons.  According to Lloyd, the gravamen of both complaints in

10  *Lloyd* and *Williams* are marketing texts sent *en masse* by a third-party vendor:

> The plaintiffs in both this action and the *Williams* action allege the same two claims (willful violation of the TCPA and negligent violation of the TCPA), against the same defendant (Eaze Solutions, Inc.), for transmitting the same type of unsolicited text message advertisements, via the same automated dialing technology, powered by the same third party (Bitesize), over substantially the same period of time (the four years preceding the filing of each respective complaint).

14  Lloyd's Notice of Pendency of Other Action (Dkt. 6).  The difference is that Lloyd—after Eaze

15  moved to compel arbitration in *Williams* on the ground that all users, including Williams, consent

16  to both receive communications and arbitrate disputes—alleges a class of *non*-users who received

17  texts but "never enrolled in Eaze Solutions, Inc.'s services."  (Dkt. 32 ¶ 39.)

19  Lloyd's Complaint contains screenshots of social media posts by other persons between

20  April 2015 and December 2017 (Compl. ¶¶ 29-30), which show two different types of texts.  The

21  first category explicitly refers to the verification process.  (*See id.* at ¶ 29.)  The second category

22  contains single texts from June 2017 that do *not* reference verification and that appear to be sent by

23  an individual named "Jen from Eaze.com."  (*See id.* (texts to Ben, Shiv Shukla, and "jbrown").)

24  But Lloyd does not allege that *she* received any messages from this second category:  *her* texts

25  were received "in or about August 2018" (*id.* at ¶ 22), do not reference an individual named "Jen

26  from Eaze.com," and all explicitly reference the verification process.  Any general allegations

27  about unsolicited "advertisements" and "telemarketing" refer to texts *received by other people* (*id.*

28  at ¶¶ 19, 20, 21); sent by "autodialers" with the capacity "to dial such numbers, *en masse*, in an

BOIES  SCHILLER  FLEXNER  LLP

1    automated fashion and without human intervention" (*id.* at ¶¶ 17, 29, 32-34); and operated by a

2    third party-named Bitesize (*id.* at ¶¶ 21, 22, 30, 31).

3        The aforementioned verification texts received by Lloyd thus bear little resemblance to

4    those allegedly sent by Bitesize.  Moreover, Lloyd does not allege that she followed any of the

5    verification links, replied "STOP" or "wrong number" or otherwise attempted to unsubscribe, or

6    received any other texts from Eaze after August 14, 2018.

7    **III.    LEGAL STANDARD**

8        "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

9    accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

10   662, 678 (2009) (internal quotation marks omitted).  "[A] plaintiff's obligation to provide the

11   'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic

12   recitation of the elements of a cause of action will not do.  Factual allegations must be enough to

13   raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

14   (2007) (citations and footnote omitted).  Courts "need not accept as true allegations that contradict

15   matters properly subject to judicial notice or by exhibit or allegations that are merely conclusory,

16   unwarranted deductions of fact, or unreasonable inferences." *Derby*, 2015 WL 3477658, at *2

17   (quotations and citation omitted).

18   **IV.    LLOYD'S VERIFICATION TEXTS DO NOT VIOLATE THE TCPA.**

19       Lloyd relies on her verification texts to assert two causes of action—negligent violation and

20   knowing/willful violation of the TCPA—both of which require her to meet the three statutory

21   requirements for a TCPA claim:  "(1) the defendant called a cellular telephone number; (2) using

22   an automatic telephone dialing system ["ATDS"]; (3) without the recipient's prior express

23   consent." *Weisberg*, 2016 WL 3971296, at *3 (citing *Meyer v. Portfolio Recovery Assocs.*, 707

24   F.3d 1036, 1043 (9th Cir. 2012), 47 U.S.C § 227(b)(1)).  "The Ninth Circuit [has] emphasized that

25   courts must look to the surrounding circumstances in determining whether particular calls 'run

26   afoul of the TCPA,' and in so doing, courts must 'approach the problem with a measure of common

27   sense.'" *Derby*, 2015 WL 3477658, at *6 (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913,

28   918 (9th Cir. 2012)).

B O I E S   S C H I L L E R   F L E X N E R   L L P

BOIES  SCHILLER  FLEXNER  LLP

**A.      Plaintiff's conclusory allegations about "autodialers" are insufficient to support either TCPA claim.**

Conclusory allegations that a defendant "used an ATDS is not, without more, sufficient to support a claim for relief under the TCPA."  *Duguid I*, 2016 WL 1169365, at *4.  Here, the complaints in *Williams* and *Lloyd* contain identical allegations about "autodialers" used by Eaze or its agents, despite the fact that the cases involve different types of plaintiffs (*e.g.*, user versus non-user) who apparently received different types of texts (*e.g.*, non-verification versus verification).  In other words, both plaintiffs allege generic allegations about "autodialers" that are not specific to their own factual circumstances, and instead resort to the legal definition of "autodialers," which is statutorily defined as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C § 227(a)(1).

In fact, most of the allegations referencing "autodialers" or "autodialed" texts are no more than "labels and conclusions," patently insufficient to sustain a TCPA claim.  (*See, e.g.*, Compl. ¶¶ 1 ("unsolicited, autodialed text messages"), 29 ("unsolicited, autodialed messages"), 32 ("via an 'automated telephone dialing system'").)  The three paragraphs in the Complaint that actually focus on the text message system allegedly operated by Eaze (*id.* at ¶¶ 32-34) contain only "formulaic recitations" of the *legal* definition of "autodialers" under 47 U.S.C. § 227, which courts in this district have found insufficient to sustain a TCPA claim.

For example, the following ATDS allegations in the Complaint are comparable to allegations that have been rejected in this district:

- Lloyd's allegation that Eaze's system was "capable of making numerous calls or texts simultaneously" and "messag[ing] consumers *en masse*" (Compl.¶ 33) or that Jessica Lee/Bitesize's "text messaging technology" sent messages in "bulk" (Compl. ¶¶ 21, 34).  *See, e.g.*, *McKenna v. WhisperText* (*McKenna I*), No. 5:14-CV-00424-PSG, 2014 WL 4905629, at *1 (N.D. Cal. Sept. 29, 2014) ("McKenna's claims that WhisperText engaged in 'mass transmission of wireless spam' … are therefore insufficiently conclusory.").

- Lloyd's allegation of "hardware and software" with the "capacity to store, produce and dial random or sequential numbers" or "lists of telephone numbers" "without human intervention" (Compl. ¶¶ 33, 34).  *See, e.g.*, *Kramer v. Autobytel , Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) ("[I]t is conclusory to allege that messages were sent 'using equipment that . . . had the capacity to store or produce telephone numbers to be called, using a random or sequential generator.").

Case No. 18-CV-02598-JD
DEFENDANT EAZE SOLUTIONS, INC.'S MOTION TO DISMISS

- Lloyd's allegation of "features substantially similar to a predictive dialer" (Compl. ¶ 33). *See Duguid v. Facebook, Inc.* (*Duguid III*),[4] No. 15-CV-00985-JST, 2017 WL 3128912, at *3 (N.D. Cal. July 24, 2017) (dismissing for second time even after addition of "predictive dialer-like" allegations because, "[a]t best, his allegations are conclusory, … without offering any factual support for this claim").[5]

Indeed, courts in this district have dismissed TCPA claims even where plaintiffs have mustered more detailed allegations about "autodialers" than Lloyd. *See Weisberg*, 2016 WL 3971296, at *3 (dismissing despite allegation that "Defendant stores a database of numbers, . . . and automatically, without human intervention, transmits form text messages to users whose numbers are warehoused in its system"); *Duguid II*, Case No. 15-cv-00985-JST, 2017 WL 635117, at *4 (N.D. Cal. February 2, 2017) (dismissing for second time despite new allegations that Facebook "uses a 'computerized protocol for creating automated text messages programmed to appear customized to the user' through a template-based process" and "a two factor authentication system requiring users to 'enter a code' sent to mobile phones via text message whenever users log into Facebook from a new or unrecognized device").

Standing alone, Lloyd's "autodialer" allegations are no more than legal conclusions couched as fact. They lack any "factual content" about how the alleged "autodialer" works, especially how such an "en masse" system squares with the verification texts apparently sent to a specific individual. (*See* Compl. ¶¶ 9-10 (referencing other systems that send SMS or MMS texts, but making no claim whether such systems were responsible for Lloyd's alleged texts from Eaze); *McKenna v. WhisperText* (*McKenna III*), No. 5:14-CV-00424-PSG, 2015 WL 5264750, at *3 (N.D. Cal. Sept. 9, 2015) (dismissing for third time claims based on individualized text invitations, despite allegations that defendant conducted "mass spamming events" as part of "mobile growth hacking"). Because nothing in Lloyd's Complaint "nudges" her claims "across the line from

---

[4] After *Duguid I* and *II* granted the defendant's motions to dismiss and *Duguid III* rejected the plaintiff's attempt to set aside the dismissal, the plaintiff appealed to the Ninth Circuit, where the case is currently pending.

[5] Lloyd's conclusory allegation that Eaze "has admitted on its website" that text message are necessarily transmitted by an ATDS is false: the cited Terms of Service simply notifies *user*s, who consent to receive communications from Eaze (*see* RJN, Erickson Decl. at ¶ 23 Ex. E), that they "may receive communications generated by [an ATDS]." That notification does not guarantee that autodialers will be used for users or address alleged non-users like Lloyd.

BOIES  SCHILLER  FLEXNER  LLP

1    conceivable to plausible" (*Twombly*, 550 U.S. at 570), "Plaintiff[] ha[s] not stated with a level of

2    factual specificity a claim under the TCPA." *Freidman v. Massage Envy Franchising, LCC*, No.

3    3:12-CV-02962-L-RBB, 2013 WL 3026641, at *2 (S.D. Cal. June 13, 2013).

4      **B.**  ***Plaintiff's allegations fit within a line of cases dismissing TCPA claims based on***

     ***verification texts, similar to those allegedly received by Lloyd.***

5

6       Lloyd's texts all explicitly reference verification and are part of a user registration and

7    verification process, which makes sense for "a recreational and medicinal marijuana delivery

8    company that provides a mobile app to connect customers with cannabis dispensaries throughout

9    California." (Compl. ¶ 3.)  Indeed, the texts Lloyd received are analogous to those in cases where

10   this district has recognized the common sense proposition that texts sent to verify/confirm an

11   individual's identity and/or intention are not the type intended for liability under the TCPA.  To

12   hold otherwise would result in the "sorts of anomalous outcomes [that] are bottomed in an

13   unreasonable, and impermissible, interpretation of the statute's reach." *ACA Int'l v. Fed.*

14   *Commc'ns Comm'n*, 885 F.3d 687, 697 (D.C. Cir. 2018) (rejecting, for example, interpretation of

"ATDS" that would sweep in any personal smartphone).

15

16       **1.**  **Verification texts are non-marketing attempts to *clarify* the intention of**

      **users and actually *support* the policy goal of obtaining consent.**

17      As an initial matter, the FCC has held that "a one-time text message sent immediately after

18   a consumer's request for the text does not violate the TCPA and our rules." *In the Matter of Rules*

19   *& Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961 (2015).

20   Numerous courts have expanded that commonsense exception and concluded that persons who

21   trigger verification/confirmation texts by providing their number to or signing up with companies

22   have given consent, and cannot later complain when companies attempt to verify/confirm the

23   person.  *See Aderhold v. car2go N.A. LLC*, 668 F. App'x 795, 796 (9th Cir. 2016) ("The message

24   was directed instead to completing the registration process initiated by Aderhold and to validating

25   personal information.  We follow the FCC's determination that such messages, 'whose purpose is

26   to facilitate, complete, or confirm a commercial transaction that the recipient has previously agreed

27   to enter into with the sender are not advertisements.'"); *see also Daniel v. Five Stars Loyalty, Inc.*,

28   Case No. 15-CV-03546-WHO, 2015 WL 7454260, at *4 (N.D. Cal. Nov. 24, 2015) (finding that

B O I E S   S C H I L L E R   F L E X N E R   L L P

1   texts encouraging recipients to complete registration for defendant's loyalty rewards program did

2   not violate TCPA); *Ibey v. Taco Bell Corp.*, No. 12-CV-0583-H WVG, 2012 WL 2401972, at *3

3   (S.D. Cal. June 18, 2012) ("The Court concludes that the TCPA does not impose liability for a

4   single, confirmatory text message."); *Wick v. Twilio Inc.*, No. C16-00914RSL, 2016 WL 6460316,

5   at *3 (W.D. Wash. Nov. 1, 2016) (finding no TCPA violation for text message sent to consumer to

6   remind him that he did not complete his online registration process).

7           Thus, the nature of the verification texts received by Lloyd is fundamentally different than

8   the nature of "en masse" text messaging that is described elsewhere in the Complaint and that the

9   TCPA was intended to prohibit.  This is particularly true where recipients (like Lloyd) do not claim

10  that they attempted to opt out or stop allegedly unwanted texts:  courts should not impose penalties

11  where companies (like Eaze) make good faith attempts to verify consumer intent, which would

12  only create perverse incentivizes for recipients to not opt out.  *Cf. ACA Int'l*, 885 F.3d at 705

13  (describing how "a new subscriber could 'purposefully and unreasonably' refrain from informing a

14  good-faith caller about a number's reassignment 'in order to accrue statutory penalties'" and

15  finding FCC's one-call "safe harbor" for erroneous texts to be arbitrary and capricious).

16              **2.      Verification texts are "direct targeting" to a specific phone number,
                          which undermines any allegation of "en masse" texting.**

17          In addition, because verification texts are targeted to specific phone numbers, they do not

18  constitute the kind of "en masse" text messaging envisioned in the TCPA.  And where a plaintiff's

19  "own allegations suggest direct targeting that is inconsistent with the sort of random or sequential

20  number generation required for an ATDS, courts conclude that the allegations are insufficient to

21  state a claim for relief under the TCPA."  *Weisberg*, 2016 WL 3971296, at *3 (internal quotation

22  and citation omitted).

23          For example, in *Weisberg*, a plaintiff brought TCPA claims upon receiving a confirmation

24  text stating "Thanks for saving your payment info!  This number will be used to verify your

25  identity at Registration and other sites using Stripe Checkout," followed by a second text message

26  stating "Sorry, we cannot receive messages at this number.  If you need help, please contact

27  support@stripe.com."  *Id.* at *1.  The court dismissed the claims because, "[t]aken together, these

28  allegations suggest that Stripe's text messages are targeted to specific phone numbers in response

                                                    -9-                    Case No. 18-CV-02598-JD

BOIES  SCHILLER  FLEXNER  LLP

1    to the voluntary release of a user's phone number when completing the 'Remember Me' option as

2    described in [the complaint]." *Id.* at *4.  The court reached this conclusion notwithstanding

3    allegations that the plaintiff "never contacted nor conducted any business with Stripe in any

4    fashion," and that Stripe used "a database of numbers" to transmit form texts "without human

5    intervention." *Id.* at *1, 3.

6          In *Duguid I*, the court dismissed TCPA claims based on "login notification" texts that were

7    erroneously sent to the plaintiff, because the "allegations suggest that Facebook's login notification

8    text messages are targeted to specific phone numbers and are triggered by attempts to log in to

9    Facebook accounts associated with those phone numbers." *Duguid I*, 2016 WL 1169365, at *5.

10   The motion to dismiss was granted notwithstanding allegations that the plaintiff "never provided

11   his cellphone number to Facebook or authorized Facebook to send him texts," and in fact made

12   several attempts to opt out.  *Id.* at *1.  After the plaintiff amended to include new claims about

13   Facebook's texting technology, the court granted another dismissal because "the plaintiff had added

14   a number of new facts to his FAC, but once again fails to plausibly allege that Facebook used an

15   ATDS." *Duguid II*, 2017 WL 635117, at *4.

16         And in *Derby*, the court dismissed TCPA claims based on "three unsolicited text messages

17   that plaintiff received through defendant's AOL Instant Messenger ("AIM") service, and a

18   confirmation text from AOL to plaintiff following plaintiff's request to block future messages from

19   AIM." 2015 WL 3477658, at *1.  Despite the plaintiff's claim that he had not consented to receive

20   texts, the court reasoned that these were user-triggered texts to a specific phone number and cited

21   "[s]everal cases in which courts dismissed actions where TCPA liability was premised on

22   confirmation texts like that alleged here." *Id.* at *5.

23         The verification texts received by Lloyd are analogous to those in *Weisberg*, *Duguid*, and

24   *Derby.*  As shown in Lloyd's first verification text, when a user provides a phone number during

25   registration for the Eaze platform, the verification system sends a personalized text message

26   reminding the recipient to "Complete the Eaze registration process" by clicking a unique and

27   individualized verification link.  If triggered, subsequent verification texts remind the recipient to

28   verify "your mobile number" or "[y]our phone number."  Notwithstanding her complaints about

B O I E S   S C H I L L E R   F L E X N E R   L L P

-10-

DEFENDANT EAZE SOLUTIONS, INC.'S MOTION TO DISMISS

1   "en masse" texts, she does not allege that the targeted verification texts sent to her number were

2   also simultaneously sent to others with randomly generated numbers.  Nor could she, given the

3   specificity of the verification texts she received.

### 3.   Verification texts follow human triggering, which undermines any allegation of "automatic" texting.

6          Verification texts necessarily follow a person's initiation of a signup process and provision

7   of a phone number to verify, and "do not support a plausible inference that an ATDS was used."

8   *Epps v. Earth Fare, Inc.*, No. CV 16-08221 SJO (SSx), 2017 WL 1424637, at *6 (C.D. Cal. Feb.

9   27, 2017) (citation omitted); *see, e.g.*, *Weisberg*, 2016 WL 3971296, at *4 (confirmation texts were

10  sent "in response to the voluntary release of a user's phone number when completing the

11  'Remember Me' option"); *Huricks v. Shopkick, Inc.*, No. C-14-2464 MMC, 2015 WL 5013299, at

12  *1 (N.D. Cal. Aug. 24, 2015) (holding third-party, not defendant, was maker of invitational texts).

13         Lloyd's texts, for example, were reminders that "your phone number" had been provided to

14  Eaze but "still" required verification to "complete the Eaze registration process."  (Giang Decl., ¶ 2,

15  Exs. 1-3.)  Given the role of human intervention in triggering the verification system at issue—

16  from initiating contact with Eaze to providing the specific number to which the verification texts

17  would be sent—this is hardly the type of inhuman "autodialing" that is "completely detached from

18  any user direction."  *McKenna III*, 2015 WL 5264750, at *3.  In fact, "[o]ther courts have . . . found

19  human intervention in circumstances involving far less user involvement and far more automation

20  that alleged in the complaint in this case."  *Derby*, 2015 WL 3477658, at *4 (dismissing allegations

21  about three unsolicited invitation texts and one confirmation text that "show that extensive human

22  intervention is required to send text messages through defendant's AIM service"); *Mckenna v.

23  Whispertext* ("*Mckenna II*"), No. 5:14-cv-00424-PSG, 2015 WL 428728, at *3 (N.D. Cal. Jan. 30,

24  2015) ("McKenna's allegations make clear that the Whisper App can send SMS invitations only at

25  the user's affirmative direction to recipients selected by the user.").[6]

---

26  [6] While a panel of the Ninth Circuit recently rejected the argument that a system "must operate
27  without any human intervention whatsoever" to qualify as an ATDS, it did not articulate what level
    of human intervention *would* immunize a system from being an autodialer.  *See Marks v. Crunch*
28  *San Diego, LLC*, No. 14-56834, 2018 WL 4495553, at *9 (9th Cir. Sept. 20, 2018).  Nor did it

BOIES   SCHILLER   FLEXNER   LLP

Furthermore, although Lloyd denies providing her number to Eaze (Compl. ¶ 2), she does not allege *how* her specific number was provided to Eaze, does not claim that it was inputted by an "automated" process, and cannot deny that a human user must have entered her number into Eaze's system.  *See Melito v. Am. Eagle Outfitters, Inc.*, No. 14-cv-02440 (VEC), 2015 WL 7736547, *4 (S.D.N.Y. Nov. 30, 2015) ("[t]he absence of an allegation of who actually 'made' or physically placed the text message is not lost on the Court.  Plaintiffs' conclusory assertions that Experian sent or caused the text message to be sent is simply a legal conclusion devoid of further factual enhancement.").  Lloyd's allegations pale compared to the plaintiff in *McKenna*, whose third attempt to state TCPA claims added several allegations about "automated processes" in the defendant's system—including automatically "harvest[ing]" and "upload[ing]" the plaintiff's number—but was nonetheless dismissed.  *McKenna III*, 2015 WL 5264750, at *3 ("while this court accepts as plausible the allegations that WhisperText uses automated processes to harvest phone numbers . . . it is undeniable from McKenna's previous allegations that the human intervention of a Whisper App user is necessary to set those processes in motion"); *see also Glauser v. GroupMe, Inc.*, No. C 11-2584 PJH, 2015 WL 475111, at *6 (N.D. Cal. Feb. 4, 2015) (dismissing TCPA claims based on group "welcome" and reminder texts "triggered by the group creator's addition of plaintiff to the group").  "The TCPA's statutory and legislative history emphasize that the statute's purpose is to prevent unsolicited *automated* telemarketing and bulk communications," not user-triggered verification texts like Lloyd's.  *Ibey*, 2012 WL 2401972, at *3.

---

expressly overrule any of the verification text cases cited in this Motion.  Moreover, the panel decision is not final because no mandate has issued and there is a pending petition for rehearing en banc.  *See, e.g.*, *Carver v. Lehman*, 558 F.3d 869, 878 & n.16 (9th Cir. 2009) ("No opinion of this circuit becomes final until the mandate issues," and reliance on a non-final decision is a "gamble"); *United States v. Ruiz*, 935 F.2d 1033, 1037 (9th Cir. 1991) ("no expectation of finality can attach during the period in which either party may petition for rehearing"); *Zisk v. Gannett Co. Income Prot. Plan*, 73 F. Supp. 3d 1115, 1120 (N.D. Cal. 2014) (declining to rely on Ninth Circuit decision when deciding a motion to dismiss where decision was not final because of a pending petition for rehearing en banc); *see also* Fed. R. App. P. 41(c) advisory committee's note ("A court of appeals' judgment or order is not final until issuance of the mandate; at that time the parties' obligations become fixed.").

1

**4.     The fact that Lloyd denies providing her number, and that third-party error likely triggered the verification texts, does not subject *Eaze* to liability under the TCPA.**

2

3       Lloyd's allegation that she herself "never provided her cellular telephone number to

4   Defendant" (Compl. ¶ 2) may rebut a consent defense by Eaze, but does not change the

5   fundamental nature of the verification texts themselves.  The verification-based claims in *Weisberg*,

6   *Duguid*, and *Derby* were supported by similar allegations denying that the plaintiffs provided their

7   numbers or otherwise consented to receive texts, but were still dismissed.  *See Weisberg*, 2016 WL

8   3971296, at *1 ("Plaintiff David Weisberg never contacted nor conducted any business with Stripe

9   in any fashion, nor visited Stripe's online websites."); *Duguid II*, 2017 WL 635117, at *1 ("Duguid

10  could not 'Log in' to turn off the messages because he does not have a Facebook account"); *Derby*,

11  2015 WL 3477658, at *1 ("Plaintiff alleges that he never signed up to receive texts through AIM,

12  and did not provide AOL or any of AOL's users with consent to receive text messages.").

13      Nor does the possibility that *third-party errors* may have triggered the verification texts to

14  Lloyd—which the evidence will likely show happened here—change the fact that verification texts

15  are not the type of automated mass marketing texts regulated by the TCPA.  *See, e.g.*, *Derby*, 2015

16  WL 3477658, at *1 ("Although the complaint does not so allege, presumably the three texts were

17  the result of the sender inputting an incorrect phone number, which happened to be plaintiff's.").

18  In *Derby*, this district rejected the idea that confirmation texts triggered by third party error were

19  inherently actionable just because the plaintiff had not given prior consent:

20              The court can see no reason to find that the confirmation text in this case
                is any different:  whether the responsive text seeks clarification of
21              plaintiff's intentions or simply confirms plaintiff's decision to opt out, it
                does not constitute the sort of automated and intrusive telemarketing
22              communications the TCPA was enacted to combat.

23  *Derby*, 2015 WL 3477658, at 6.  And in *Duguid*, the district concluded that the targeted login

24  notifications were not actionable under the TCPA, notwithstanding the plaintiff's allegation that the

25  system allowed for error and was "'sloppy' because messages are sent to individuals who have

26  never had a Facebook account, have never shared their phone number with Facebook, and/or who

27  have requested deactivation of the login notifications."  *Duguid I*, 2016 WL 1169365, at *5.

28

-13-

Case No. 18-CV-02598-JD

DEFENDANT EAZE SOLUTIONS, INC.'S MOTION TO DISMISS

1    Logically, if TCPA liability does not apply to a system that permits third parties to

2    *intentionally* send unsolicited texts to a plaintiff (*see McKenna II*, 2015 WL 428728, at *3

3    (permitting anonymous mass invitations sent "at the user's affirmative direction to recipients

4    selected by the user") and *Glauser*, 2015 WL 475111, at *6 (permitting group invitations "triggered

5    by the group creator's addition of plaintiff to the group")), it should not apply where a third party

6    *accidentally* enters the wrong number and triggers unsolicited texts to a plaintiff.[7]   Here, whether or

7    not Lloyd originally "consented" does not change the nature of those verification texts, which were

8    aimed at *confirming* the recipient's identity and *avoiding* errant texts to the wrong person.

9    Therefore, this Court should dismiss Lloyd's Complaint, because "[c]onstruing the TCPA to

10   prohibit consumer-friendly confirmation texts like that at issue here would fly in the face of both

11   common sense and the goals of TCPA."   *Derby*, 2015 WL 3477658, at *6.

12   **C.    Plaintiff's claim for knowing/willful violation of the TCPA does not allege actual knowledge, is conclusory, and must be dismissed.**

13   While Plaintiff's entire complaint is deficient, her second claim for a knowing/willful

14   violation of the TCPA should be dismissed for the additional independent reason that Lloyd failed

15   to allege Eaze "knew the [text message] was unsolicited, as required by section 227(b)(1)(C)."

16   *Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1107 (11th Cir. 2015) (affirming that

17   complaint did not support willful TCPA violation or treble damages); *see also Kristensen v. Credit*

18   *Payment Servs. Inc.*, 879 F.3d 1010, 1015 (9th Cir. 2018) (rejecting claim of ratification where

19   defendant lacked "actual knowledge that [its purported agent] was sending text messages in

20   violation of TCPA").   "And the bare assertion . . . that the defendants 'willfully' and 'knowingly'

21   violated the Act was a legal conclusion, not an allegation of fact" that must be "accept[ed] as true."

22   *Lary*, 780 F.3d at 1107; *see* Compl. ¶¶ 60-62.

23

24

25   _____

[7]  In cases involving invitational texts, even though such invitations target specific phone numbers,
26   users have the power to intentionally send *mass* invitations to *third party* numbers.  Verification
     texts, in contrast, are intended to allow users to send themselves *individual* texts to verify *their own*
27   numbers.  *See, e.g.*, *McKenna I*, 2014 WL 4905629, at *1 (dismissing TCPA claims based on app
     that allowed "users to send these [text] invitations to contacts anonymously using a telephone
28   number registered to WhisperText").

BOIES  SCHILLER  FLEXNER  LLP

1   Lloyd relies heavily on the alleged use of "text messaging technology" operated by a third-

2   party vendor named Bitesize to send the allegedly offending messages.  (Compl. ¶¶ 21-31).  But

3   Lloyd does not allege that Eaze granted "actual authority to place calls in violation of the TCPA" or

4   otherwise "exercised sufficient control over the 'manner and means'" of Bitesize's texts.  *Jones v.*

5   *Royal Admin. Servs., Inc.*, 887 F.3d 443, 453 (9th Cir. 2018) ("[Vendor's] telemarketers did not

6   have actual authority to place the unlawful calls, and [defendant] exercised insufficient control over

7   the manner and means of the work to establish vicarious liability under the asserted theory.").

8   Indeed, Lloyd does not allege that Eaze even *knew* that Bitesize allegedly was using an autodialer

9   or otherwise violating the TCPA.  *See Lary*, 780 F.3d at 1107 (noting that defendant "used a third

10  party to send out advertisements, which suggests that Hong and Trinity might have had no

11  knowledge that Lary received a particular fax").

12  Similarly, the Complaint contains no allegation that could support an inference that Eaze

13  had any way to know that the verification texts Lloyd received were *not* sent to a user who had

14  provided her number to Eaze and consented to receive texts as part of the verification process.

15  Thus, Lloyd has not pled the necessary elements of a willful TCPA violation (or an entitlement to

16  treble damages under the statute), and her second claim must be dismissed for this additional

17  reason.

18  **V.   CONCLUSION**

19  For the foregoing reasons, Eaze respectfully respects that this Court grant this motion to

20  dismiss Lloyd's Complaint in its entirety.

21                               Respectfully submitted,

22  DATED:  October 8, 2018        BOIES SCHILLER FLEXNER LLP

23

24                               By   ____/s/ Albert Giang_____

25                                    ALBERT GIANG
                                     Attorneys for Defendant EAZE SOLUTIONS, INC.

26

27

28

B O I E S   S C H I L L E R   F L E X N E R   L L P

1

**CERTIFICATE OF SERVICE**

2        It is hereby certified that a true and correct copy of the foregoing was served electronically

3    via the Court's electronic filing system on the date below upon all counsel of record in this matter.

4    DATED:  October 8, 2018                    BOIES SCHILLER FLEXNER LLP

5                                                          ALBERT GIANG

6

7                                              By _____/s/ Albert Giang_____

8                                                          ALBERT GIANG
                                                           *Attorneys for Defendant Eaze Solutions, Inc.*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28