Frank S. Hedin (SBN 291289)
fhedin@hedinhall.com
David W. Hall (SBN 274921)
dhall@hedinhall.com
HEDIN HALL LLP
Four Embarcadero Center, Suite 1400
San Francisco, California 94104
Telephone: (415) 766-3534
Facsimile: (415) 402-0058

*Counsel for Plaintiffs and the Putative Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTINE LLOYD; and JULIUS MENA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>EAZE SOLUTIONS, INC.,<br><br>Defendant. | Case No. 3:18-cv-05176-JD<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**[1]<br><br>(DEMAND FOR JURY TRIAL) |

Plaintiffs Kristine Lloyd and Julius Mena, individually and on behalf of all others similarly situated, complain and allege as follows based on personal knowledge as to themselves, on the investigation of their counsel, and on information and belief as to all other matters.

## **NATURE OF ACTION**

1. Without having registered for, attempted to register for, or otherwise used the services of defendant Eaze Solutions, Inc. ("Defendant"), Plaintiffs Kristine Lloyd and Julius Mena received unsolicited, autodialed text-message advertisements from Defendant in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Numerous other individuals received the same messages, even though they too had never registered for, attempted to register for, or otherwise used

---

[1] Plaintiffs file this First Amended Class Action Complaint with the written consent of Defendant. *See* Fed. R. Civ. P. 15(a)(2).

FIRST AMENDED CLASS ACTION COMPLAINT

Defendant's services. Plaintiffs bring this action for legal and equitable remedies for themselves and these other similarly-situated individuals.

**PARTIES**

2. Plaintiff Kristine Lloyd is, and at all times mentioned herein was, an individual and a "person" as defined by 47 U.S.C. § 153(39) and a citizen and resident of Orrville, Ohio.

3. Plaintiff Mena is, and at all times mentioned herein was, an individual and a "person" as defined by 47 U.S.C. § 153(39) and a citizen and resident of San Jose, California.

4. Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39). Founded in San Francisco in 2014, Defendant operates a "gig economy"-type delivery service that, inter alia, connects adult purchasers of medicinal and recreational cannabis products with brands, dispensaries, and doctors on demand, by way of a consumer-facing mobile application and website. Defendant maintains its corporate headquarters in San Francisco, California.

**JURISDICTION AND VENUE**

5. The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227.

6. Personal jurisdiction and venue are proper because Defendant maintains its corporate headquarters in California and within this district.

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991**

7. To address consumer complaints regarding certain telemarketing practices, Congress enacted the TCPA, 47 U.S.C. § 227, in 1991. The TCPA prohibits, *inter alia*, the use of automated telephone equipment, or "autodialers," to make any call, including sending a text message, to a wireless number absent an emergency or the "prior express consent" of the party called. And in the case of calls or text messages that constitute "advertisements" or "telemarketing", as defined by applicable regulations, the TCPA requires the "prior express <u>written</u> consent" of the called party before initiating such calls or texts via an autodialer.

8. According to findings by the Federal Communication Commission ("FCC"), which is vested with authority to issue regulations implementing the TCPA, autodialed calls and texts are

prohibited because receiving them is a greater nuisance and invasion of privacy than live solicitation calls and they can be costly and inconvenient. The FCC also recognized that wireless customers are charged for such incoming calls and texts whether they pay in advance or after the minutes or texts are used.

9. One of the most prevalent bulk advertising methods employed by companies today involves the use of "Short Message Services" (or "SMS"), which is a system that allows for the transmission and receipt of short text messages to and from wireless telephones. Another similar service called "Multimedia Messaging Services" (or "MMS") is based upon and similar to the SMS system, but also permits the transmission of photos and videos via text message. According to a recent study, "[s]pam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds — from coupons to phishing schemes — sent directly to user's cell phones."[2]

10. SMS and MMS text messages are directed to a wireless device through a telephone number assigned to the device. When an SMS or MMS text message is successfully transmitted, the recipient's wireless phone alerts the recipient that a message has been received. Because wireless telephones are carried on their owners' persons, SMS and MMS text messages are received virtually anywhere in the world.

11. Unlike more conventional advertisements, SMS and MMS text-message advertisements can actually cost their recipients money, because wireless phone users must often pay their service providers for each text message received or incur a usage allocation deduction to their text messaging or data plan, regardless of whether the message was authorized.

12. Moreover, unsolicited text-message advertisements are distracting and aggravating to receive and intrude upon their recipients' seclusion.

**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

13. Plaintiff Lloyd is, and at all times mentioned herein was, the subscriber of the cellular telephone number (***) 521-2336 (the "2336 Number"). The 2336 Number is, and at all times

---

[2] Amanda Lenhart, Cell Phones and American Adults: They Make Just as Many Calls, but Text Less than Teens, Pew Research Center (2010), http://www.pewinternet.org/Reports/2010/Cell-Phones-and-American-Adults.aspx (last visited May 21, 2015).

mentioned herein was, assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

14. Plaintiff Mena is, and at all times mentioned herein was, the subscriber of the cellular telephone number (***) 537-3292 (the "3292 Number"). The 3292 Number is, and at all times mentioned herein was, assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

15. All of the text-message advertisements that Defendant sent to Plaintiff Lloyd's 2336 Number, to Plaintiff Mena's 3292 Number, and to the cellular telephone numbers of the proposed Class members in this case were transmitted using technology provided by Handstack, P.B.C., a/k/a "Bitesize," which was founded and is operated by an individual named Jessica Hyejin Lee (collectively, "Handstack"); Iterable, Inc. ("Iterable"); and/or Twilio, Inc. ("Twilio").

16. On June 17, 2017 at 4:27 p.m., Defendant transmitted or caused to be transmitted, by itself or through an intermediary or intermediaries, including Handstack and/or Twilio, a text-message advertisement to Plaintiff Mena's 3292 Number without first obtaining Plaintiff Mena's express written consent to be sent the message, which stated as follows:

> Hi! Jen here from Eaze (eaze.co/hurry20) We do on-demand marijuana delivery in 20 minutes. Want a code for $20 of FREE marijuana? Hurry, expires at 10PM!!

17. The website accessible at the hyperlinked URL in the above-transcribed text message, eaze.co/hurry20, is leased or owned, and is operated and maintained, by Defendant. When accessed, the website eaze.co/hurry20 redirects to another website, also owned and operated by Defendant (https://www.eaze.com/?utm_source=handstack&utm_medium=sms&utm_campaign=hurry20), where Defendant offers goods and/or services for sale for profit.

18. The source of the unsolicited text-message advertisement sent by Defendant to Plaintiff Mena's 3292 Number on June 17, 2017 at 4:27 p.m. was (628) 227-5544, which is a San Francisco-based telephone number that was leased or owned by Defendant or Defendant's agent(s) or affiliate(s), including Handstack and/or Twilio, and was used for operating Defendant's text-message marketing program.

19. In or about August 2018, Defendant transmitted or caused to be transmitted, by itself or through an intermediary or intermediaries, including Iterable and/or Twilio, two text-message advertisements to the 2336 Number without first obtaining Plaintiff Lloyd's express written consent to be sent the messages. For example, on August 11, 2018 at 9:13 p.m., Defendant transmitted or caused to be transmitted, by itself or through an intermediary or intermediaries, including Iterable and/or Twilio, the following text-message advertisement to the 2336 Number without Plaintiff Lloyd's prior express written consent:



20. The website accessible at the hyperlinked URL in the above-depicted text message, https://www.eaze.com/verify/, is leased or owned, and is operated and maintained, by Defendant. The website accessible at the URL https://www.eaze.com/verify/ offers goods and/or services for sale for profit.

21. The source of the unsolicited text-message advertisement sent by Defendant to Plaintiff Lloyd's 2336 Number on August 11, 2018 at 9:13 p.m. was (415) 212-4684, which is a San Francisco-based telephone number that was leased or owned by Defendant or Defendant's agent(s) or affiliate(s), including Iterable and/or Twilio, and was used for operating Defendant's text-message marketing program.

22. Because Plaintiffs are alerted by their cellular devices whenever they receive a text message, by auditory or visual means, the unsolicited text-message advertisements that Defendant transmitted to Plaintiffs' cellular devices invaded Plaintiffs' privacy and intruded upon their seclusion upon receipt.

23. All telephone contact initiated by Defendant or affiliates, subsidiaries, or agents of Defendant (including Handstack, Iterable, and/or Twilio) to Plaintiffs and the members of the proposed Class defined below occurred via an "automated telephone dialing system" as defined by 47 U.S.C. § 227(b)(1)(A).

24. Specifically, Defendant and/or its affiliates, subsidiaries, or agents, including Handstack, Iterable, and/or Twilio, utilized an "automated telephone dialing system" because the text messages that Defendant delivered to the 2336 Number, the 3292 Number, and the other Class members' cellular telephone numbers were sent from telephone numbers used to message consumers *en masse*; because the automated dialing equipment used by Defendant and/or its affiliates, subsidiaries, or agents, including Handstack, Iterable, and/or Twilio, included features substantially similar to a predictive dialer, inasmuch as it was capable of making numerous calls or texts simultaneously (all without human intervention); and because the hardware and software used by Defendant and/or its affiliates, subsidiaries, or agents, including Handstack, Iterable, and/or Twilio, to send such messages had the capacity to store, produce, and dial random or sequential numbers, or to receive and store lists of telephone numbers and then dial such numbers, *en masse*, in an automated fashion and without human intervention.

25. And indeed, Defendant actually transmitted the text messages at issue in this case to Plaintiffs and all other putative Class members with hardware and software that received and stored lists of telephone numbers, and then dialed such numbers, *en masse*, in an automated fashion and without human intervention.

26. The text messages sent by Defendant to Plaintiff Lloyd's 2336 Number on August 11, 2018 at 9:13 p.m., to Plaintiff Mena's 3292 Number on June 17, 2017 at 4:27 p.m., and to the other proposed Class members during the Class period constituted "advertisements" and/or "telemarketing" material within the meaning of applicable TCPA regulations. This is because Defendant sent such text messages for the purpose of advertising the commercial availability of its goods and/or services for profit. (*See supra* ¶ 16 (alleging Plaintiff Mena's receipt of message stating "Hi! Jen here from Eaze (eaze.co/hurry20) We do on-demand marijuana delivery in 20 minutes. Want a code for $20 of

FREE marijuana? Hurry, expires at 10PM!!"); *id.* ¶ 19 (alleging Plaintiff Lloyd's receipt of message stating, in pertinent part, ". . . If you're still looking to get a fast marijuana delivery click https://www.eaze.com/verify/ . . .").)

27. Prior to receiving Defendant's text-message advertisements, neither Plaintiff Lloyd nor Plaintiff Mena, nor any of the other members of the proposed Class defined below, had provided their "express written consent" to Defendant or any affiliate, subsidiary, or agent of Defendant, including Handstack, Iterable, and/or Twilio, to be sent such messages via an "automatic telephone dialing system" within the meaning of 47 U.S.C. § 227(b)(1)(A).

## CLASS ALLEGATIONS

28. <u>Class Definition</u>. Plaintiffs bring this civil class action on behalf of themselves individually and on behalf of all other similarly-situated individuals as a class action pursuant to Federal Rule of Civil Procedure 23. The "Class" which Plaintiffs seek to represent is comprised of and defined as follows:

> All persons within the United States who, between August 23, 2014 and the present, were sent one or more text message(s) (other than one containing a uniquely-identifying verification code and/or a uniquely-identifying verification URL to complete an online registration form) by Eaze Solutions, Inc. or an affiliate, subsidiary, or agent of Eaze Solutions, Inc., at a time when such person had not registered for or initiated the registration process for Eaze Solutions, Inc.'s services (i.e., a "non-user" of Eaze Solutions, Inc.).

29. Excluded from the Class are Defendant, its employees, officers, directors, agents, and representatives, and their immediate family members; Plaintiff's counsel; and the judges who preside over this action and their immediate family members.

30. This action may properly be brought and maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b). This class action satisfies the numerosity, typicality, adequacy, commonality, predominance, and superiority requirements.

31. Upon application by Plaintiffs' counsel for certification of the Class, the Court may also be requested to utilize and certify subclasses in the interests of manageability, justice, or judicial economy.

32. <u>Numerosity</u>. The number of persons within the Class is substantial, believed to amount to tens of thousands of persons. It is, therefore, impractical to join each member of the Class as a named plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.

33. <u>Typicality</u>. Plaintiffs each received at least one of Defendant's text messages through the use of an automatic telephone dialing system, at a time when they had not registered for or otherwise used Defendant's services. Consequently, the claims of each of the named Plaintiffs are typical of the claims of the members of the proposed Class, and Plaintiffs' interests are consistent with and not antagonistic to those of the other proposed Class members they seek to represent. Plaintiffs and the members of the proposed Class have all been impacted by, and face the risk of continuing harm arising out of, Defendant's conduct as alleged herein.

34. <u>Adequacy</u>. As proposed Class representatives, Plaintiffs have no interests adverse to, or which conflict with, the interests of the absent members of the proposed Class and are able to fairly and adequately represent and protect the interests of such a class. Plaintiffs have raised viable statutory claims of the type reasonably expected to be raised by members of the proposed Class and will vigorously pursue those claims.

35. <u>Competency of Class Counsel</u>. Plaintiffs have retained and are represented by experienced, qualified, and competent counsel committed to prosecuting this action. Plaintiffs' counsel and proposed counsel for the Class are experienced in handling complex class action claims, including those alleging violation of the TCPA and other data-privacy and consumer-protection statutes.

36. <u>Commonality and Predominance</u>. There are well-defined common questions of fact and law that exist as to all members of the proposed Class and predominate over any questions affecting only individual members of the proposed Class. These common legal and factual questions, which do not vary from proposed Class member to proposed Class member and may be determined

without reference to the individual circumstances of any proposed Class member, include but are not limited to the following:

    a) Whether Defendant or affiliates, subsidiaries, or agents of Defendant, including Handstack, Iterable, and/or Twilio, transmitted "advertising" or "telemarketing" text messages (within the meaning of the TCPA and applicable regulations) to Plaintiffs' and the proposed Class members' cellular telephones;

    b) Whether such text messages were sent using an "automatic telephone dialing system" within the meaning of the TCPA;

    c) To the extent such text messages are found to contain "telemarketing" or "advertising" material, whether Defendant can meet its burden to show that it obtained the "express written consent" within the meaning of the TCPA prior to sending the text messages, assuming such an affirmative defense is raised;

    d) Whether the complained of conduct was knowing or willful; and

    e) Whether Defendant should be enjoined from engaging in such conduct in the future.

37. <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all proposed Class members would be impracticable. Even if every member of the proposed Class could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the court(s) presiding over such individual litigation. Holding multiple trials of the same factual issues would magnify the delay and expense to all parties and to the court system, and would also present the potential for varying, inconsistent, or contradictory judgments. By contrast, the maintenance of this action as a class action presents few management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each member of the proposed Class. Plaintiffs anticipate no difficulty in the management of this action as a class action. Class-wide relief

is essential to compel compliance with the TCPA. The interest of proposed Class members in individually controlling the prosecution of separate claims is small because the statutory damages recoverable in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many other TCPA actions because the proposed Class members can be readily located and notified of this class action through Defendant's records and, if necessary, the records of cellular telephone providers and other public sources.

38. Additionally, the prosecution of separate actions by individual members of the proposed Class may create a risk of multiple adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Class who are not parties to such adjudications, thereby substantially impairing or impeding the ability of such nonparty Class members to protect their interests. The prosecution of individual actions by Class members could further establish inconsistent results and/or establish incompatible standards of conduct for Defendant.

39. Defendant has acted on grounds generally applicable to the proposed Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

## **CLAIM FOR RELIEF**

**VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT**
(By Plaintiffs Lloyd and Mena, Individually and on Behalf of the Proposed Class)

40. Plaintiffs incorporate by reference paragraphs 1-39 of this First Amended Class Action Complaint as if fully stated herein.

41. Plaintiffs and each member of the proposed Class received a text message from Defendant that was sent using an automatic telephone dialing system. Each such text message promoted the commercial availability of Defendant's goods or services and thus constituted an "advertisement" or "telemarketing" material within the meaning of the TCPA and its implementing regulations. Neither of the Plaintiffs nor any other member of the proposed Class provided Defendant their "prior express written consent" to receive such text messages.

42. By using an automatic telephone dialing system to transmit text-message advertisements and telemarketing material to the cellular telephone numbers of Plaintiffs and the other members of the proposed Class, absent the requisite "prior express written consent," as set forth above, Defendant violated the TCPA including 47 U.S.C. § 227(b)(1)(A).

43. As a result of Defendant's violations of 47 U.S.C. § 227(b)(1)(A), Plaintiffs and all proposed Class members are entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future pursuant to 47 U.S.C. § 227(b)(3)(A).

44. As a result of Defendant's violations of 47 U.S.C. § 227(b)(1)(A), Plaintiffs and all Class members are also entitled to, and do seek, an award of statutory damages of $500.00 (or $1,500.00 for any violations committed willfully or knowingly) pursuant to 47 U.S.C. § 227(b)(3).

45. Plaintiffs, individually and on behalf of the proposed Class, also seek an award of attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the proposed Class, pray for relief and judgment in their favor as follows:

A. Injunctive relief sufficient to prohibit Defendant from committing such violations of the TCPA in the future pursuant to 47 U.S.C. § 227(b)(3)(A);

B. Statutory damages of $500.00 (or $1,500.00 for any willful or knowing violations) for Plaintiffs and each member of the proposed Class to remedy each of Defendant's violations of 47 U.S.C. § 227(b)(1)(A) pursuant to 47 U.S.C. § 227(b)(3);

C. An award of attorneys' fees and costs to counsel for Plaintiffs and the proposed Class; and

D. An Order finding this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, certifying the proposed Class defined above, finding that Plaintiffs and their counsel are proper representatives of the Class, and appointing the law firm representing Plaintiffs as counsel for the Class.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and the proposed Class, hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims so triable.

Dated: March 29, 2019

Respectfully submitted,

**HEDIN HALL LLP**

By: s/ Frank S. Hedin

FRANK S. HEDIN (SBN 291289)
fhedin@hedinhall.com
DAVID W. HALL (SBN 274921)
dhall@hedinhall.com
Four Embarcadero Center, Suite 1400
San Francisco, California 94111
Telephone: (415) 766-3534
Facsimile: (415) 402-0058

*Counsel for Plaintiffs and the Putative Class*