1  Frank S. Hedin (SBN 291289)
   fhedin@hedinhall.com
2  David W. Hall (SBN 274921)
   dhall@hedinhall.com
3  HEDIN HALL LLP
   Four Embarcadero Center, Suite 1400
4  San Francisco, California  94104
   Telephone: (415) 766-3534
5  Facsimile: (415) 402-0058

6  *Counsel for Plaintiff and the Putative Class*

7                  UNITED STATES DISTRICT COURT

8              NORTHERN DISTRICT OF CALIFORNIA

9

10 KRISTINE LLOYD; and JULIUS MENA,          Case No. 3:18-cv-05176-JD
   individually and on behalf of all others
11 similarly situated,                        **PLAINTIFFS' UNOPPOSED MOTION FOR
                                               PRELIMINARY APPROVAL OF CLASS
12            Plaintiffs,                       ACTION SETTLEMENT**

13 v.

14 EAZE SOLUTIONS, INC.,

15            Defendant.

16

17         Plaintiffs Kristine Lloyd and Julius Mena hereby move for preliminary approval of the class-

18 wide Settlement Agreement (attached as Exhibit "A" to the Declaration of Frank S. Hedin, filed

19 together herewith) entered into between Plaintiffs and Defendant Eaze Solutions, Inc. ("Eaze").[1]

   **I.    INTRODUCTION**

20         The present case is a putative class action in which Plaintiffs allege that Eaze transmitted, via

21 an "automatic telephone dialing system" (or "ATDS"), unsolicited text-message advertisements to

22 their cellular devices and the cellular devices of numerous other similarly-situated individuals, in

23 violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Plaintiffs seek

24 statutory damages for themselves and the other members of the Settlement Class.

25         This litigation has been comprehensive and highly contentious. The Parties have collectively

26

27 ─────────────────────
   [1]     Unless otherwise defined herein, all capitalized terms have the same force, meaning and effect
28 as ascribed in Section II ("Definitions") of the Settlement Agreement.

   PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

prepared and filed two complaints, briefing on a motion to dismiss and requests for judicial notice, joint discovery and pretrial proposals, a stipulated confidentiality order, comprehensive pre-mediation briefs, among other things.  Plaintiffs' counsel thoroughly investigated the claims alleged in this action, including by speaking with numerous members of the Settlement Class regarding the messages they received and the circumstances under which they were sent. The Parties exchanged written and electronic discovery over the course of several months, on both individual merits and class certification-related issues.  Plaintiffs' counsel served subpoenas on third parties and obtained detailed electronically-stored records reflecting the identities of Settlement Class members. Plaintiffs' counsel deposed Eaze's text-message marketing vendor Handstack, P.B.C., the entity responsibly for actually transmitting (on Eaze's behalf) most of the text messages at issue in this case. The considerable time and resources Plaintiffs and their counsel devoted to this case afforded them the opportunity, in advance of ever discussing settlement with Eaze, to meaningfully assess the strength and weaknesses of the Settlement Class's claims, the risks posed by continued litigation, and the benefits that might be realized for the Settlement Class through early resolution.

Settlement negotiations were hard fought. The parties engaged in over ten hours of contentious, arms-length negotiations before Robert A. Meyer, a well-respected and experienced JAMS mediator in Los Angeles, California.  Although mediation was unsuccessful, the Parties continued their negotiations for several weeks afterwards with the continued assistance of Mr. Meyer, ultimately agreeing upon the principal terms of the proposed Settlement, subject to confirmatory discovery, on the eve of a January 17, 2019 hearing scheduled before the Court on Eaze's motion to dismiss.

Prior to executing the formal Settlement Agreement, Plaintiffs obtained additional confirmatory discovery from Eaze and its third-party marketing vendors concerning, inter alia, the size and scope of the proposed Settlement Class and the identities and contact information of its members.  Plaintiffs' counsel obtained electronically-stored records reflecting the contents, dates and times of transmission, and recipient numbers of each of the text messages in question, as well as separate records reflecting the names and addresses of many of the persons of the messages.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiffs' counsel subsequently confirmed the authenticity, accuracy, and completeness of this data by deposing the CEO of the marketing vendor that possessed them pursuant to Federal Rule of Civil Procedure 30(b)(6). After obtaining this information and confirming the size and scope of the Settlement Class, Plaintiffs and their counsel executed the proposed Settlement Agreement, memorializing the terms of the deal principally reached in January.

The proposed Settlement would, if approved, provide substantial monetary and non-monetary relief to the Settlement Class. As set forth in the Settlement Agreement, Eaze has agreed to establish a non-reversionary, all-cash Settlement Fund of $1,750,000.00 (one-million seven-hundred fifty thousand dollars), from which each of the approximately 51,000 Settlement Class members who submits a Valid Claim will receive a pro rata share (after Notice and Administration Costs and any Attorneys' Fee Award and Service Awards authorized by the Court are first deducted from the Settlement Fund). Class Counsel estimates that each Settlement Class member who submits a Valid Claim will receive a Cash Award of approximately $230 (an estimate which assumes that 10% of Settlement Class files claims, as projected, that the Notice and Administration Costs are somewhere between $111,365 and $125,000, as estimated, and that the Court awards 25% of the Settlement Fund to Class Counsel as an Attorneys' Fee Award and $2,500 to each of the Class Representatives as a Service Award, as will be requested).

Additionally, the proposed Settlement provides wide-ranging non-monetary prospective relief to the Settlement Class. Pursuant to the Settlement, Eaze has agreed to implement the following meaningful policies, procedures, and changes to its business practices as of the Preliminary Approval Date: (1) institute TCPA compliance training and marketing oversight generally of key personnel involved in text messaging and maintain best marketing practices at all times in the future; (2) refrain from ever retaining the text messaging services of Handstack, P.B.C., a/k/a "Bitesize," or its founder and CEO Jessica Hyejin Lee in the future; (3) refrain from transmitting verification reminder text messages containing advertising copy in the future; (4) include opt-out notifications in all verification text messages that it transmits in the future; and (5) take steps to adjust the verification process to prevent individuals from mistakenly and repeatedly sending messages to Non-users of its services in

- 3 -

the future.

The Settlement Agreement designates KCC LLC ("KCC") as the Settlement Administrator to administer the Settlement Class Notice Program, under which the Class Notice will be provided both directly and via publication to the Settlement Class, easily satisfying due process and the procedural requisites of Rule 23 and the Northern District of California's Class Action Guidance.

The Settlement would, if approved, provide meaningful monetary and non-monetary relief to the Settlement Class in an expeditious manner – and thus represents an eminently fair, reasonable, and adequate resolution to this litigation.  Accordingly, Plaintiffs respectfully request that the Court (1) preliminary approve the Settlement, (2) certify the proposed Settlement Class, (3) appoint Plaintiffs as Class Representatives and their counsel as Class Counsel, (4) approve the proposed Notice plan, and (5) set a final approval hearing date.

## II.   BACKGROUND

### A.   The TCPA and the Meaning of "Automatic Telephone Dialing System"

The TCPA was enacted more than two decades ago in response to "[v]oluminous consumer complaints about abuses of telephone technology." *Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740, 744 (2012).  In passing the statute, Congress specifically sought to prevent "intrusive nuisance calls" to consumers that it deemed "invasive of privacy," *see id.*, and set statutory damages in the amount of $500 per violation (which may be trebled if the conduct is found willful) as well as provided for injunctive relief.  *See* 47 U.S.C. § 227(b)(3)(A)–(C).

The TCPA and its implementing regulations specifically prohibit the transmission of marketing text messages to cellular phones via an "automatic telephone dialing system" (or "ATDS"), absent the "prior express written consent" of the called party.  47 U.S.C. § 227(b)(1)(A)(iii).  To prove a violation of the TPCA, the plaintiff has the burden of demonstrating, inter alia, that the defendant's calls or text messages were sent via an ATDS, which is defined in the statute as any dialing equipment that "ha[s] the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator."  47 U.S.C. § 227(a)(1).

**B.      History of this Litigation**

On August 23, 2018, following an extensive pre-filing investigation, Plaintiff Lloyd initiated this action by filing the Complaint, individually and on behalf of others similarly situated. (ECF No. 1.) The Complaint alleged two claims for violation of the TCPA against Eaze.

On October 8, 2018, Eaze filed a motion to dismiss the action for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 11 (the "Motion to Dismiss"), as well as a request for judicial notice (ECF No. 12).  On November 29, 2018, Plaintiff Lloyd responded in opposition to the Motion to Dismiss (ECF No. 16) and to the request for judicial notice (ECF No. 17), and on December 20, 2018, Eaze filed its replies in support of the Motion to Dismiss (ECF No. 19) and the request for judicial notice (ECF No. 20).

On November 27, 2018, the parties filed a motion for entry of a stipulated confidentiality order (ECF No. 15), which the Court entered on December 5, 2018 (ECF No. 18).

In discovery, Eaze produced, inter alia, copies of the only potentially-applicable insurance policies that existed for the duration of the Class period, each of which contained an exclusion for TCPA litigation and thus provided no coverage.  Eaze additionally produced documents, information, and data reflecting the identities of its marketing vendors; the approximate number of recipients of the text messages in question, the dates on which such messages were sent, and information confirming that none of the individuals who received such messages had registered for or initiated the process of registering for Eaze's services.   Plaintiffs' counsel obtained further important information bearing on the size and scope of this action by serving third-party subpoenas to Twilio, Inc. and Handstack, P.B.C.

Armed with this information, together with other important information obtained during a robust pre- filing investigation of the underlying facts in this matter, Plaintiff Lloyd and her counsel were in a position to intelligently assess the strengths and weaknesses of the Settlement Class members' claims and Eaze's defenses to them.

Thus, on December 14, 2018, the parties attended a full-day of mediation in Oakland, California before Robert A. Meyer of JAMS, a mediator with substantial experience mediating

- 5 -

complex civil actions including class actions.  Although mediation was unsuccessful, substantial progress was made towards the principal components of a proposed settlement.

Shortly after mediation, Plaintiffs' counsel was retained by Julius Mena, another non-user recipient of Eaze's text messages, who provided Plaintiffs' counsel with additional important information concerning the claims alleged in the action, information which enabled Plaintiffs' counsel to further assess the strengths and weaknesses of the underlying claims of the class and the likelihood of prevailing at class certification. Thus, for the month following the mediation, Plaintiffs' counsel (now representing Ms. Lloyd and Mr. Mena) continued to investigate the merits of the claims alleged in this action and the likelihood of winning class certification, and also continued to engage in settlement negotiations with Eaze's counsel with the continued assistance of Mr. Meyer.

On January 16, 2019, the Parties reached a proposed resolution of this action and signed a binding term sheet setting forth the material terms of the proposed Settlement Agreement, the execution of which was conditioned upon Plaintiffs taking confirmatory discovery regarding, inter alia, the composition of the Settlement Class.

Over the next two months, Plaintiffs' counsel conducted additional party and third-party discovery to confirm, inter alia, the size and scope of the proposed Settlement Class and other matters bearing on Plaintiffs' claims and Eaze's defenses.  For instance, on February 21, 2019, Eaze produced to Plaintiffs' counsel spreadsheets of records reflecting the date, time, recipient telephone number, and the content of each Eaze-related "verification-reminder" text message that had been erroneously transmitted to Settlement Class members, including to Plaintiff Lloyd.  Additionally, on February 25, 2019, Plaintiffs' counsel deposed Jessica Hyejin Lee, the CEO and designated corporate representative of Handstack, P.B.C., d/b/a "Bitesize," one of the entities retained by Eaze to transmit text messages on its behalf. In advance of Ms. Lee's deposition, Plaintiffs' counsel obtained from Ms. Lee copies of, inter alia, additional text-transmission records reflecting the dates, times, recipient numbers, and the contents of each of the text messages that Handstack, P.B.C. had transmitted on Eaze's behalf using Twilio, Inc.'s technology, including the message it had sent to Plaintiff Mena.

After Plaintiffs' counsel successfully confirmed the size and scope of the Settlement Class

- 6 -

1  and the accuracy of the records described above, the Parties solicited estimates from four (4) potential

2  settlement administrators. The estimates were prepared based upon various detailed assumptions

3  pertaining to the type and scope of class member data available to the Parties. Upon obtaining and

4  thoroughly reviewing the four estimates, including by analyzing differences between the detailed

5  notice and disbursement plans devised by each potential administrator and the extent to which an

6  estimate deviated from the specifications provided by the parties, the Parties agreed to select KCC as

7  the proposed Settlement Administrator.[2]

8        On March 26, 2019, the Parties executed the Settlement Agreement.

9        On March 29, 2019, together with the filing of the instant Motion, and with the written consent

10  of Eaze pursuant to Fed. R. Civ. P. 15(a)(2), Plaintiffs filed the operative First Amended Class Action

11  Complaint. (ECF No. 24 (hereinafter, the "Amended Complaint")). The Amended Complaint alleges

12  that Eaze, acting through its marketing-partner agent(s) Handstack, P.B.C., Twilio, Inc., and/or

13  Iterable, Inc., violated the TCPA by transmitting text-message advertisements, via ATDS, to

14  Plaintiffs' and the Settlement Class members' cellular telephone numbers, without their prior

15  "express written consent."

16        Thus, as described above, the Settlement is the product of a wide-ranging investigation, an

17  exchange of the pertinent discovery, lengthy and arm's-length negotiations overseen by an

18  experienced mediator, thorough confirmatory discovery, and a competitive bidding process resulting

19  in the selection of an experienced Settlement Administrator.

20  **III.    TERMS OF THE SETTLEMENT**

21        A copy of the Settlement Agreement is attached as Exhibit "A" to the Declaration of Frank S.

22  Hedin filed together herewith, the key terms of which are summarized as follows:

23

24

25

26  [2]       Over the past two years, proposed Class Counsel's firm, Hedin Hall LLP, has not engaged
   KCC to administer any other settlements. Moreover, neither David W. Hall nor Frank S. Hedin
27  (proposed Class Counsel in this matter) engaged KCC to administer any other settlements during their
   time with their previous firms, Robbins Geller Rudman & Dowd LLP and Carey Rodriguez Milian
28  Gonya, LLP.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

1

2

**A.      Class Definition**

3      Pursuant to the Settlement Agreement, Plaintiff requests in this Motion that the Court

4 provisionally certify the following Settlement Class:

5

6

> All Persons within the United States who, between August 23, 2014 and the Preliminary Approval Date, were sent one or more text message(s) (other than one containing a uniquely-identifying verification code and/or uniquely-identifying verification URL to complete an online registration form) by Eaze Solutions, Inc. or an affiliate, subsidiary, or agent of Eaze Solutions, Inc., at a time when such Person had not registered for or initiated the registration process for Eaze Solutions, Inc.'s services (i.e., a "Non-user" of Eaze Solutions, Inc.).

7

8

9 Settlement Agreement § III.A.[3]  Specifically excluded from the Settlement Class are the following

10 Persons: (a) Eaze Solutions, Inc., and its employees, officers, directors, agents, and representatives

11 and their immediate family members; (b) Class Counsel; and (c) The Judges who have presided over

12 the Litigation and their immediate family members. *Id.*

13

**B.      Monetary Relief**

14      Eaze has agreed to pay, on a non-reversionary basis, cash in the amount of $1,750,000.00 to

15 establish the Settlement Fund, for the benefit of Settlement Class members, which will be used to pay

16 all Settlement costs, including without limitation all Cash Awards to Settlement Class members, all

17 Notice and Administrative Costs to KCC, any Attorneys' Fee Award to Class Counsel and Service

18 Awards to the Class Representatives, and will be in full satisfaction of all of Eaze's monetary

19 obligations under the Settlement and Settlement Agreement. *Id.* § IV.A.

20      After Notice and Administration Costs and any Attorneys' Fee Award and Service Awards

21 have been paid from the Settlement Fund, each Settlement Class Member who submits a Valid Claim

22 will receive a pro rata share of the remainder of the Net Settlement Fund.[4]  *Id.* § IV.B; *see also id.* §

23

24 [3]      The proposed class definition and claims to be released are the same as those alleged in the operative Amended Complaint.  (*See* ECF No. 24 (Amended Complaint).)

25

26 [4]      Any unclaimed funds will be distributed via subsequent distribution(s) to approved claimants to the extent the uncashed check funds allow for subsequent distribution of Cash Awards of $1.00 or more per claimant, after administration costs, and to the extent otherwise feasible. Settlement

27 Agreement § IV.F.  In the event uncashed check funds are of an amount that does not allow for a subsequent distribution of Cash Awards of $1.00 or more per claimant, after administration costs, or

28 if it is otherwise infeasible to distribute uncashed check funds in the Settlement Fund, then the

IV.D-G (timing of and process for payment distribution).  In light of the projected 10% rate for this Settlement – a projection based on Class Counsel's experience in prior similar settlements, the detailed data that exists for most Settlement Class members, and the robust nature of the Notice Program that KCC has devised (featuring individual notice to most Settlement Class members) – each Settlement Class Member who files a timely Claim is expected to receive approximately $230.00. Regardless of the number of Valid Claims submitted, no portion of the Settlement Fund shall be returned or refunded to Eaze.  *Id.* § IV.A, F.

### C.    Non-Monetary Relief

Pursuant to the Settlement Agreement, Eaze has also agreed to make significant changes to its consumer marketing practices going forward, to ensure that no text messages are transmitted to Settlement Class members absent their prior express written consent in the future.  *Id.* § IV.C.

Specifically, Eaze has agreed to implement the following policies, procedures, and changes in business practices as of the Preliminary Approval Date: (1) institute TCPA compliance training and marketing oversight generally of key personnel involved in text messaging and maintain best marketing practices at all times in the future; (2) refrain from ever retaining the text messaging services of Handstack, P.B.C., a/k/a "Bitesize," or its founder and CEO Jessica Hyejin Lee in the future; (3) refrain from transmitting verification reminder text messages containing advertising copy in the future; (4) include opt-out notifications in all verification text messages that it transmits in the future; and (5) take steps to adjust the verification process to prevent individuals from mistakenly and repeatedly sending messages to Non-users of its services in the future.  *Id.*

These practices shall remain in effect at all times in the future, unless a subsequent change in applicable law modifies or discharges the obligation to maintain such practices, in which event Eaze

---

remaining uncashed funds shall be distributed as directed by the Court, upon application made by Class Counsel and Defense Counsel for such funds to be distributed to Electronic Privacy Information Center ("EPIC"), which is a charitable organization selected by the Parties concerned with consumer privacy issues of the general character presented by this case, such that EPIC's work coincides, or at least overlaps, with the interest of the Settlement Class.  *Id.*; *see also* Hedin Decl., Ex. B (informational document describing EPIC's non-profit work on emerging issues of privacy, and identifying sampling of prior matters in which EPIC has been appointed a cy pres recipient). <u>Under no circumstances shall any money in the Settlement Fund revert to Eaze.</u>  *See* Settlement Agreement § IV.F.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

may conform its practices to comport with the subsequent change in applicable law.  *Id.*

### D.     Notice and Settlement Administration Costs

Eaze has agreed to pay from the Settlement Fund all Notice and Administration Costs to the Settlement Administrator.  *Id.* § IV.D-E.  The Settlement Administrator estimates that the total Notice and Administration Costs will be between $111,365 and $125,000. (*See* Declaration of Carla Peak ("Peak Decl.") at 8 (paragraph 21).)   The form of the Class Notice and Claim Form, and information concerning the Settlement Class Notice Program, are set forth in the Settlement Agreement, and the proposed Class Notices and Claim Forms are attached as exhibits to the Settlement Agreement.

### E.     Service Awards and Attorneys' Fee Award

Eaze has agreed to pay from the Settlement Fund, subject to Court approval, reasonable Service Awards to Plaintiffs in recognition of the time and effort they expended in pursuing this action and in fulfilling their obligations and responsibilities as class representative.  Settlement Agreement § VI.A. Eaze has also agreed to pay from the Settlement Fund a reasonable Attorneys' Fee Award to proposed Class Counsel, as may be awarded by the Court.  *Id.* § VI.B. The amount of any Service Awards and Attorneys' Fee Award was not part of the Parties' negotiation of the terms of the Settlement or Settlement Agreement. *Id.* § VI.C. Proposed Class Counsel must file any application for an Attorneys' Fee Award and Service Award no later than thirty-five (35) Days before the Opt-Out and Objection Date.  *Id.* § IX.O.

Thus, at least thirty-five (35) days prior to the Opt-Out and Objection Date, Plaintiffs's counsel intend to make an application to the Court for a Service Award of $2,500 to each Class Representative, for a total of $5,000, and for an Attorneys' Fee Award to Class Counsel of 25% of the Settlement Fund, or $437,500, inclusive of the out-of-pocket costs expended by Plaintiffs' counsel in this litigation.[5] The Settlement Agreement is not contingent on the amount of any Service Award

---

[5]     To date, proposed Class Counsel's lodestar is approximately $92,675.  The lodestar figure was computed by multiplying 168.5, the number of hours of attorney time reasonably incurred by counsel investigating, prosecuting, and resolving these claims, by $550, which is the reasonable hourly rate that both Frank S. Hedin and David W. Hall charge for their services.  The requested 25% fee, to be addressed in further detail in Plaintiffs' forthcoming motion for attorneys' fees, equates to a multiple of counsel's lodestar of approximately 4.72.  These figures, which are reasonable in present form, do not include the value of the services that will be provided by Plaintiffs' counsel to complete

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

or Attorneys' Fee Award. *Id.* § VI.C-D. The proposed Class Notices inform Settlement Class members of the amounts of the Service Awards and Attorneys' Fee Award that will be requested by Plaintiffs and Class Counsel.

**F.     Objections and Opt-Out Rights**

Any Settlement Class Member who intends to object must do so on or before the Opt-Out and Objection Date, which Plaintiffs propose be set for 60 days after the Notice Date. Settlement Agreement § VII.A. In order to object, a Settlement Class Member must timely file with the Court or send to the Clerk of Court a written objection containing all of the information set forth in Section VII, Part B of the Settlement Agreement. *Id.* § VII.B.

Any Settlement Class Member who wishes to opt out of the Settlement Class must complete and send to the Settlement Administrator a request for exclusion that is post- marked or submitted electronically no later than the Opt-Out and Objection Date, which Plaintiffs propose be set for 60 days after the Notice Date. *Id.* § VII.C. The request for exclusion must comply with all of the requirements set forth in Section VII, Part C of the Settlement Agreement. *Id.*

The Class Notice provided to the Settlement Class will contain language consistent with the provisions of Section VII of the Settlement Agreement concerning objections and opt-outs. *Id.*

**G.     Release of Liability**

If the Settlement is finally approved and a Final Approval Order and Judgment entered by the Court, Eaze (along with the third-party marketing companies retained by Eaze to transmit the text messages in question, including Handstack, P.B.C., Iterable, Inc., and Twilio, Inc.) will be released and discharged from any and all claims arising from or relating to allegedly unauthorized text messages sent by Eaze to members of the Settlement Class (as set forth in Section X of the Settlement Agreement) – except that none of the claims of Settlement Class members who timely and properly

---

the work that that remains in this case, in the approval process, fielding Class member inquiries, and beyond. Additionally, proposed Class Counsel have expended approximately $13,450 in out-of-pocket costs in connection with this litigation – costs for which no additional reimbursement will be sought beyond the requested Attorneys' Fee Award of 25% of the Settlement Fund.

request exclusion will be released, as set forth in the Settlement Agreement.  *Id.* § X; *see also id.* § VII.D-E (concerning opt-outs).

## IV.   THE CLASS ACTION SETTLEMENT APPROVAL PROCESS

As the Ninth Circuit has repeatedly recognized, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain.  *See Officers for Justice v. Civil Service Com'n of City and County of San Francisco,* 688 F.2d 615, 625 (9th Cir. 1982); *Lane v. Facebook,* 696 F.3d 811, 819 (9th Cir. 2012); 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.41 (4th ed. 2002) (collecting cases) (hereinafter *Newberg*).

The approval process for a proposed class action settlement has three steps:

> (1) Preliminary approval of the proposed settlement at an informal hearing;
>
> (2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and
>
> (3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

David F. Herr, *Manual for Complex Litigation* (4th ed. 2004) § 21.63.  This procedure safeguards the due process rights of unnamed Settlement Class member and enables the Court to fulfill its role as the guardian of Settlement Class's interests. 4 *Newberg* § 11.25.  Plaintiffs are presently at the first step of this three-step process.

## V.   THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED, AND THE SETTLEMENT CLASS SHOULD BE PROVISIONALLY CERTIFIED

The proposed Settlement was negotiated at arm's length by competent, experienced counsel and would, if approved, provide substantial monetary and non-monetary relief to Settlement Class members, in a prompt and efficient manner.  Accordingly, the Court should (A) preliminarily approve the Settlement, (B) provisionally certify the Settlement Class, (C) appoint Plaintiffs as Class Representatives and their counsel as Class Counsel, (D) approve the proposed Settlement Class

- 12 -

Notice Program, and (E) schedule the Fairness Hearing.

**A.     The Settlement Should Be Preliminarily Approved**

Rule 23(e) provides that a court may approve a proposed class settlement "on a finding that it is fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2); *see also Lane,* 696 F.3d at 818 ("a district court's only role in reviewing the substance of [a] settlement is to ensure that it is 'fair, adequate, and free of collusion.'") (citing *Hanlon v. Chrysler Corp.,*150 F.3d 1011, 1026 (9th Cir.1998)).   At the preliminary approval stage, the district court need only assess whether the proposed settlement falls within the range of possible approval, in order to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing.  *See Officers for Justice,* 688 F.2d at 625.

In making this appraisal, courts consider a range of factors such as "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; [and] the experience and views of counsel." *Id.* (citing *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir. 1993)).  "The relative importance to be attached to any factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice,* 688 F.2d at 625.

Here, each factor weighs in favor of finding the Settlement fair, reasonable, and adequate, warranting its preliminary approval.

**1.  The Settlement Provides Substantial Relief to the Settlement Class, Particularly Given the Risks Posed by Continued Litigation**

Among the most important factors relevant to the fairness of a class action settlement is the strength of the plaintiff's case on the merits balanced against the amount offered in the settlement.  Still, settlement is necessarily "an amalgam of delicate balancing, gross approximations and rough justice," *Officers for Justice,* 688 F.2d at 625, and thus "the question whether a settlement

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

is fundamentally fair . . . is different from the question whether the settlement is perfect in the estimation of the reviewing court." *Lane,* 696 F.3d at 819.

The amount offered in the Settlement – $1.75 million – is substantial.[6]  Should the Settlement be approved, each Settlement Class member who submits a timely, Valid Claim is likely to receive a Cash Award of approximately $230.00 – a sum that compares favorably with per-claimant recoveries in prior settlements in similar TCPA cases,[7] including one in which Plaintiffs' counsel served as class counsel, as reflected in the chart below:

---

[6]    The estimated potential class recovery if Plaintiffs had fully prevailed on behalf of the approximately 51,000 members of the Settlement Class would have been approximately either $25 million (for non-willful violations) or $75 million (if such violations were willful and damages were trebled).  Neither potential outcome was at all likely, as discussed below. But even if such an outcome was realistically attainable, it would almost certainly have put Eaze into bankruptcy, resulting in a total non-recovery to the Settlement Class.

[7]    *E.g., In re Capital One Tel. Consumer Prot. Act Litig.,* 80 F. Supp. 3d 781, 786 (N.D. Ill. 2015) (approving TCPA class action settlement providing $34.60 cash to each claiming class member); *Douglas v. W. Union Co.,* No. 14-CV-1741, 2015 WL 9302316 (N.D. Ill. Nov. 10, 2015) ($95.90 cash); *Kolinek v. Walgreen, Co.,* 311 F.R.D. 483, 493 (N.D. Ill. 2015) (approximately $30.00 cash to each claiming class member); *Weinstein v. The Timberland Co.,* No. 06-cv-00484 (N.D. Ill. 2008) ($150.00 cash); *Desai v. ADT Sec. Servs., Inc.,* Case No. 1:11-cv-01925 (N.D. Ill. Feb. 14, 2013) (between $50.00 and $100.00 cash); *Garret, et al. v. Sharps Compliance, Inc.,* Case No. 1:10-cv- 04030 (N.D. Ill. Feb. 23, 2012) (between $27.42 and $28.51 cash); *Hashw v. Dept. Stores Nat'l Bank,* — F. Supp. 3d —, No. 13-727-RHK, 2016 WL 1729525, *1, 4 (D. Minn. April 26, 2016) ($33.20 cash); *Kazemi v. Payless Shoesource, Inc.,* No. 3:09-cv-05142 (N.D. Cal. Apr. 2, 2012) ($25.00 voucher); *Satterfield v. Simon & Schuster, Inc., et al.,* No. 06-cv-2893 (N.D. Cal. 2010) ($175.00 cash); *Steinfeld v. Discover Fin. Servs.,* No. C 12-01118 (N.D. Cal. Mar. 10, 2014) ($46.98 cash); *Adams v. AllianceOne Receivables Mgmt., Inc.,* No. 3:08-cv-00248-JAH-WVG (S.D. Cal. Sept. 28, 2012) ($40.00 cash); *Manouchehri v. Styles for Less, Inc.,* Case No. 14cv2521 NLS, 2016 WL 3387473, at *2, 5 (S.D. Cal. June 20, 2016) ($10.00 cash or $15.00 voucher); *Franklin v. Wells Fargo Bank, N.A.,* Case No. 14cv2349-MMA (BGS), 2016 WL 402249 (S.D. Cal. Jan. 29, 2016) ($71.16 cash); *In re Jiffy Lube Int'l, Inc. Text Spam Litig.,* No. 3:11-md-02261 (S.D. Cal. Feb. 20, 2013) ($20.00 voucher or $15.00 cash); *Estrada v. iYogi, Inc.,* No. 2:13–01989 WBS CKD, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) ($40.00 cash); *Cubbage v. Talbots, Inc.,* No. 09-cv- 00911-BHS (W.D. Wash. Nov. 5, 2012) ($40.00 cash or $80.00 certificate); *Arthur v. Sallie Mae, Inc.,* No. 2:10-cv-00198 (W.D. Wash. Sept. 17, 2012) (between $20.00 and 40.00 cash); *Melito v. Am. Eagle Outfitters, Inc.,* No. 1:14-CV-02440-VEC, 2017 WL 366247, at *1 (S.D.N.Y. Jan. 24, 2017) (between $142.00 and $285.00 cash).

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

|  | *Lloyd v. Eaze Solutions, Inc.*, No. 18-cv-5176-JD (N.D. Cal.) | *Farnham v. Caribou Coffee Co.*, No. 16-cv-295-wmc (W.D. Wisc.) |
|---|---|---|
| **Total Size of Fund** | $1.75 million all-cash, non-reversionary common fund | $8.5 million all-cash, non-reversionary common fund |
| **Number of Settlement Class Members** | Approximately 51,000 | Approximately 530,000 |
| **Number of Notices Delivered** | Estimated that 94% of Settlement Class members will Receive Postcards | 503,900 Postcards sent to Class members, approximately 95% of the Settlement Class |
| **Notice Methods** | Double-Postcard Notice, Online Advertisement and Social Media Publication, CAFA Notice to AGs | Double-Postcard Notice, E-Mail Notice, Online Advertisement Notice, Notice to AGs |
| **Number and Percentage of Claiming Class Members** | Estimated that 10% of the Settlement Class, or approximately 5,100 individuals, will file claims | 73,703 claimants, representing approximately 13.9% of the Settlement Class |
| **Average Recovery** | Each claimant will receive approximately $230 if 10% of Settlement Class files claims | Each claiming Settlement Class member received approximately $68 |
| **Cy Pres/Residual Funds Recipient Information** | Residual, uncashed check funds remaining after all subsequent distributions are complete will be paid to EPIC, a consumer privacy-focused non-profit. | The parties have not yet proposed a recipient of any residual uncashed check funds that might remain for the Court to approve pursuant to the settlement agreement, which is to occur after all subsequent distributions are completed |
| **Settlement Admin Costs** | Estimated between $111,365 and $125,000 | $657,157.32 |
| **Attys' Fees/Costs** | $437,500 (25% of Settlement Fund) | $2,610,947 (1/3 of the Net Settlement Fund) |

And while Plaintiffs continue to believe that their claims against Eaze have merit, there are a number of legal uncertainties associated with continued litigation that pose substantial risk of non-recovery to the Settlement Class. *See Smith v. CRST Van Expedited, Inc.*, No. 10-cv-1116, 2013 WL 163293, at *3 (S.D. Cal. Jan. 14, 2013) (where "the settlement avoids the risks of extreme results on either end, *i.e.,* complete or no recovery . . . it is plainly reasonable for the parties at this stage to find that the actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication. These factors support approval.").

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

First, the Parties' primary disagreement in this case concerns the meaning of the term "automatic telephone dialing system," an issue which the Ninth Circuit recently resolved in *Marks v. Crunch of San Diego*, 904 F.3d 1041 (9th Cir. 2018), but which the FCC appears likely to weigh in on in with an order or agency rulemaking in the near future. *See, e.g., Public Notice on Interpretation of the Telephone Consumer Protection Act* (CG Docket No. 18-152; CG Docket No. 02-278), October 3, 2018 (heading stating as follows: "CONSUMER AND GOVERNMENTAL AFFAIRS BUREAU SEEKS FURTHER COMMENT ON INTERPRETATION OF THE TELEPHONE CONSUMER PROTECTION ACT IN LIGHT OF THE NINTH CIRCUIT'S MARKS V. CRUNCH SAN DIEGO, LLC DECISION"). Any post-*Marks* FCC decision interpreting the definition of ATDS would likely trump *Marks* and thus bind this Court on the issue. So while Plaintiffs firmly believe that Eaze's text messages were sent using technology that qualifies as an ATDS under the current, post-*Marks* meaning of the term, there is nonetheless a substantial risk that the FCC will, in the near future, redefine the term narrowly enough to exempt Eaze's technology, leaving Plaintiffs and the Settlement Class members without causes of action under the TCPA and entitled to no relief. The risk of total non-recovery presented by such a scenario is serious enough, by itself, to render the Settlement fair, reasonable and adequate for the Settlement Class.

Second, the Parties disagree whether the Settlement Class could be certified on a contested motion for class certification filed by Plaintiff. Eaze maintains, inter alia, that individual issues among Settlement Class members would predominate and preclude class certification. For example, Eaze would likely contend variations across the content and context of the text messages sent to class members present a host of individualized issues as to, *e.g.*, whether particular messages qualify as advertising, what type of prior express consent was required, and whether particular messages qualify for confirmatory message or other possible regulatory exemptions.

Finally, even if Plaintiffs were to win class certification, there would remain a risk of losing a jury trial. And even assuming Plaintiffs prevailed at trial, any judgment could be reversed on appeal and, even if it were not, any class-wide damages award "would most surely bankrupt the prospective

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

judgment debtor," *see In re Capital One*, 80 F. Supp. 3d at 790, as discussed above.  A pyrrhic victory for the Settlement Class at trial would be in no one's interest.

The $1.75 million Settlement provides an estimated Cash Award to each claiming Settlement Class member of $230.00, which compares favorably to per-claimant recoveries in prior settlements in similar cases – especially in view of the significant litigation risks Plaintiffs and the Settlement Class would have faced in continued litigation.  The relative strength of this Settlement confirms that it is a fair, reasonable and adequate result for the Settlement Class.  *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007) (settlement should be preliminarily approved if it is free of "obvious deficiencies" and generally falls within the range of "possible" approval).

## 2.  Continued Litigation Would Be Complex, Costly and Lengthy

Preliminary approval is also favored where settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation.  *See Nat'l Rural Telecommc'ns Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("The Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.").

This would be lengthy and very expensive litigation if it were to continue, involving extensive motion practice, including, inter alia, a motion for class certification (and possibly a motion for decertification), motions for summary judgment and various pretrial motions, as well as the retention of experts, preparation of expert reports, and conducting expert depositions.  *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("[C]lass action suits have a well deserved reputation as being most complex.").  The case would probably not go to trial for over a year.  And even if the Settlement Class recovered a judgment at trial in excess of the $1.75 million provided by the Settlement, post-trial motions and the appellate process would deprive them of any recovery for years, and possibly forever in the event of a reversal.

Rather than embarking on years of protracted and uncertain litigation, Plaintiffs and their counsel negotiated a Settlement that provides immediate, certain, and *meaningful* relief to all Settlement Class members.  *See DIRECTV, Inc.*, 221 F.R.D. at 526.  Accordingly, this factor weighs

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

in favor of finding the Settlement fair, reasonable and adequate. *See Borcea v. Carnival Corp.*, 238 F.R.D. 664, 674 (S.D. Fla. 2006) (noting that "[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush").

### 3. Proposed Class Counsel are Competent, Well-Informed and Experienced, and Strongly Endorse the Settlement

Courts may also examine the opinion of competent counsel as to whether a proposed settlement is fair, reasonable, and adequate. *Officers for Justice,* 688 F.2d at 625. In assessing the qualifications of counsel under this factor, a court may rely upon affidavits submitted by class counsel as well as its own observations of class counsel during the litigation. *Id.*

Plaintiff's counsel and proposed Class Counsel, Frank S. Hedin and David W. Hall of Hedin Hall LLP, have extensive experience in similar complex class action litigation, including serving as class counsel in similar TCPA class actions concerning the transmission of allegedly unsolicited text message advertisements. (*See generally* Declaration of Frank S. Hedin ("Hedin Decl."); Declaration of David W. Hall ("Hall Decl.").) Both Mr. Hedin and Mr. Hall strongly endorse this Settlement, which was negotiated at arm's length with the assistance of Robert A. Meyer (JAMS, Los Angeles), an experienced mediator. (*See id.*)

Accordingly, this factor also weighs in favor of finding the Settlement fair, reasonable and adequate. *See, e.g., Smith*, 2013 WL 163293, at *3 (given their "experience and understanding of the strengths and weaknesses of cases such as this, class counsel's endorsement weighs in favor of final approval."); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 257 (N.D. Cal. 2015) ("The trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties." (citation omitted)).

### 4. The Settlement is the Product of a Thorough Pre-Filing Investigation, Efficiently-Prosecuted Litigation, and Arm's Length Negotiations, and was Only Finalized after Robust Confirmatory Discovery

The stage of the proceedings and the amount of discovery that has been completed at the time a proposed settlement is reached also bears on whether the settlement is fair, reasonable, and adequate. *Lane,* 696 F.3d at 819.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

The proposed Settlement was reached after months of hard-fought litigation and was informed by counsel's thorough review and analysis of voluminous documents and ESI produced by Eaze and related third parties, concerning every aspect of this case.  Plaintiffs' counsel additionally performed extensive and wide-ranging pre-filing and post-filing investigations concerning the recipients of Eaze's text messages, the marketing company retained by Eaze to send them, and the dialing technology used to deliver them.  Armed with this information, Plaintiffs and their counsel had "a clear view of the strengths and weaknesses" of the case and were in a strong position to negotiate a fair, reasonable, and adequate settlement on behalf of the Settlement Class, at mediation and beyond. *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd* 798 F.2d 35 (2d Cir. 1986).

Mediation was also hard-fought, and after ten hours of contentious negotiations, the Parties left without a deal.  The proposed Settlement was only reached after several more weeks of continued negotiations, and then was only executed after Class Counsel obtained further discovery to confirm the size of the Settlement Class, including by way of a deposition of Handstack, P.B.C.'s CEO pursuant to Rule 30(b)(6).  Where, as here, a proposed settlement is the product of arm's length negotiations between experienced counsel after significant discovery has occurred, the Court may presume the settlement to be fair, adequate, and reasonable.  *See Rodriguez v. W. Publishing*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."); *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) ("An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining."); 4 *Newberg* § 11.41 (presumption of fairness exists where a proposed class settlement "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced.").[8]

---

[8]    *See also, e.g.*, *Adams v. Inter-Con Sec. Sys., Inc.*, No. 06-cv-5428, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *In re Indep. Energy Holdings PLC*, No. 00-cv-6689, 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("the fact that the settlement was reached after

1

2    Accordingly, this factor also weighs in favor of finding the Settlement fair, reasonable and adequate.

3    **B.    The Settlement Class Should Be Provisionally Certified for Settlement Purposes**

4    The Court must next find that the proposed Settlement Class is appropriate for provisional

5    certification pursuant to Rule 23(a) and that it fits into one of the three subsections of Rule 23(b). *See*

6    *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 621 (1997); *see also Manual for Complex Litigation*,

7    *supra*, § 21.632.  Provisional certification will allow the Settlement Class to receive notice of the

8    Settlement and its terms, including the rights of Settlement Class Members to submit a Claim Form

9    and recover a Cash Award if the Settlement is finally approved, to be heard on the Settlement's

10   fairness at the Fairness Hearing, and to opt out of the Settlement.

11   For the reasons below, the Court should provisionally certify the Settlement Class –

12   defined as "[a]ll Persons within the United States who, between August 23, 2014 and the Preliminary

13   Approval Date, were sent one or more text message(s) (other than one containing a uniquely-

14   identifying verification code and/or uniquely-identifying verification URL to complete an online

15   registration form) by Eaze Solutions, Inc. or an affiliate, subsidiary, or agent of Eaze Solutions, Inc.,

16   at a time when such Person had not registered for or initiated the registration process for Eaze

17   Solutions, Inc.'s services (i.e., a 'Non-user' of Eaze Solutions, Inc.)" – under Rule 23(a) and Rule

18   23(b)(3).

19   **1.    The Requirements of Rule 23(a) Are Satisfied**

20   Rule 23(a) requires that (1) the proposed settlement is so numerous that joinder of all

21   individual class members is impracticable (numerosity); (2) there are questions of law or fact common

22   to the proposed settlement class (commonality); (3) the plaintiff's claims are typical of those of the

23   class (typicality), and (4) the plaintiff and class counsel will adequately protect the interests of the

24   class (adequacy).  Fed. R. Civ. P. 23(a)(1)–(4).  The Settlement Class readily satisfies each of these

25   requirements.

26

27   _____

28   exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable").

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

### a.   Numerosity

The first requirement of Rule 23(a) is that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  The Settlement Class consists of approximately 51,000 individuals dispersed throughout the United States.  Joinder of all Settlement Class Members is obviously impractical.  *See Celano v. Marriott Int'l Inc.*, 242 F.R.D. 544, 548-49 (N.D. Cal. 2007) (numerosity is satisfied where at least 40 class members).

Accordingly, the numerosity requirement of Rule 23(a) is satisfied.

### b.   Commonality

The second requirement is that "there are questions of law or fact common to the class."  Rule 23(a)(2).   The commonality requirement is satisfied where a plaintiff asserts claims that "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011).

Many questions of law and fact are common to the Settlement Class in this case, including whether Eaze's dialing technology constitutes an ATDS, whether the texts Eaze sent to the Settlement Class members were "advertisements" under the TCPA, whether Eaze obtained the requisite consent prior to texting the Settlement Class members, and whether Eaze willfully or knowingly transmitted text messages to the Settlement Class in violation of the TCPA.  *See Whitaker v. Bennett Law, PLLC*, No. 13-3145, 2014 WL 5454398, at *5 (S.D. Cal. Oct. 27, 2014) (finding commonality satisfied where the central issue was whether the defendant used an ATDS to make calls); *see also G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869, *12 (N.D. Ill. Aug. 20, 2009) (finding numerous common questions underpinning TCPA claims).

Accordingly, the commonality requirement of Rule 23(a) is satisfied.

### c.   Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "The typicality requirement is not demanding."  *Fogarazzao v. Lehman Bros., Inc.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005).

- 21 -

Plaintiffs' claims are typical of the claims of Settlement Class members because their claims arise out of the same event, practice or course of conduct that gives rise to the claims of the other class members and are based on the same legal theory. *See, e.g., Whitaker*, 2014 WL 5454398, at *5 (finding typicality satisfied because each class member's claim "revolves exclusively around [the defendant's] conduct as it specifically relates to the alleged violations of the TCPA"); *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 569 (W.D. Wash. 2012) (finding typicality satisfied where the plaintiff's claims, "like all class members' claims, arise from text marketing campaigns commissioned by Papa John's franchisees and executed by the same marketing vendor . . . ."). Plaintiffs and each Settlement Class member received one or more text message from Eaze, sent via the same dialing technology and pursuant to the same text message marketing campaigns. Moreover, Plaintiffs seek the same statutory damages on behalf of themselves and all Settlement Class members.

Accordingly, the typicality requirement of Rule 23(a) is satisfied.

### d.    Adequacy of Representation

The fourth and final Rule 23(a) requirement is "adequacy of representation," Fed. R. Civ. P. 23(a)(4), which has two components: (1) the representatives must not possess interests which are antagonistic to the interests of the class; and (2) the representatives' counsel must be qualified, experienced and generally able to conduct the proposed litigation. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).

Both components are satisfied because Plaintiff's interests in this litigation are aligned with, and not antagonistic to, those of the Settlement Class, and because Plaintiffs hired qualified and competent counsel. Plaintiffs each challenge the same alleged unlawful conduct that each Settlement Class member challenges, and they each seek the same monetary relief that is sought by each Settlement Class member. Plaintiffs have retained competent counsel, provided substantial assistance to their counsel in advance of and during the litigation, vigorously prosecuted the case on behalf of the Settlement Class, and assisted their counsel in reaching a proposed resolution to this action on behalf of the Settlement Class. Finally, Plaintiffs' counsel have substantial class action litigation experience, having successfully investigated, prosecuted, and resolved many

- 22 -

1   complex class actions, including prior TCPA class actions similar to the instant matter.  (*See generally*

2   Hedin Decl.; Hall Decl.)

3        Accordingly, the adequacy of representation requirement of Rule 23(a) is satisfied.

4            **2.   The Requirements of Rule 23(b)(3) Are Satisfied**

5        Finally, because Plaintiffs seek provisional certification under Rule 23(b)(3), Plaintiffs must

6   additionally show (1) that common questions of law or fact predominate over questions affecting only

7   individual members of the class (predominance); and (2) that a class action is superior to other

8   available methods of resolving the controversy (superiority).   Fed. R. Civ. P. 23(b)(3).[9]   Both

9   requirements are easily satisfied here.

10           **a.       Common Questions Predominate**

11       The   predominance   requirement   of   Rule   23(b)(3)   is   satisfied   because   common   questions

12   comprise a substantial aspect of the case and can be resolved for all Settlement Class members in a

13   single adjudication.  *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("When

14   'one or more of the central issues in the action are common to the class and can be said to predominate,

15   the action may be considered proper under Rule 23(b)(3) . . .'" (citation omitted)); *True Health*

16   *Chiropractic, Inc. v. McKesson Corporation*, 896 F.3d 923, 932 (9th Cir. 2018); *accord Roach v. T.L*

17   *Cannon Corp.*, 773 F.3d 401, 405 (2d Cir. 2015) (predominance is satisfied "if resolution of some of

18   the legal or factual questions that qualify each class member's case as a genuine controversy can be

19   achieved through generalized proof, and if these particular issues are more substantial than the issues

20   subject only to individualized proof").

21       The text messages in question were sent to Settlement Class members pursuant to a common

22   marketing campaign and a uniform course of conduct.  Thus, the central questions in this case –

23   whether Eaze sent text messages constituting "advertisements" or   "telemarketing" material to

24   members of the Settlement Class via an "automatic telephone dialing system," and without prior

25

26   [9]       Because the Court is called upon to assess the requirements of Rule 23 in the context of a
settlement, the Court need not consider whether any manageability problems would arise at trial if
27   the Settlement Class is certified.   *Amchem*, 521 U.S. at 620 ("Confronted with a request for
settlement-only  class certification, a district court need not inquire whether the case, if tried, would
28   present intractable management problems . . . for the proposal is that there be no trial.").

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

"express written consent" – are each capable of resolution on a class-wide basis by looking to Eaze's records (together with those of Eaze's retained marketing vendors Handstack, P.B.C, Iterable, Inc., and Twilio, Inc.) and Eaze's dialing technologies (together with that of Twilio, Inc.).  *See, e.g., Sadowski v. Med1 Online, LLC*, No. 07 C 2973, 2008 U.S. Dist. LEXIS 41766, *13 (N.D. Ill. May 27, 2008) (finding common issues such as "how numbers were generated from Defendant's database and whether Defendant's actions . . . violated the TCPA" to predominate, and that the issue of consent might be resolved through common proof such as "the source of the numbers" and "how Defendant selected who was to receive the [ ] faxes").  Because every member of the Settlement Class received an offending text message at a time when he or she had not enrolled in or even attempted to enroll in Eaze's services (much less provided Eaze their telephone number), Eaze likely cannot prove that it obtained any Settlement Class member's "express written consent" prior to texting the entire Settlement Class.  *See Johansen v. GVN Mich., Inc.*, No. 1:15-cv-00912, 2015 WL 3823036, at *1 (N.D. Ill. June 18, 2015) (noting burden is on the defendant to plead consent affirmative defense).  Accordingly, in this case, unlike many TCPA actions, there are no individualized issues of consent capable of predominating over issues common to the Settlement Class.

Because there are no apparent issues requiring individualized proof, the predominance requirement is satisfied for purposes of preliminary approval.

**b.      Class Treatment of these Claims is Superior to any Alternative**

Rule 23(b)(3) also requires that a class action be superior to other available methods for adjudicating the controversy.  It is axiomatic that cases involving "multiple claims for relatively small individual sums" are well suited to class treatment.  *Local Joint Exec. Bd. of Culinary/ Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001); *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."); *see also Amchem,* 521 U.S. at 617 (noting that "the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all").

- 24 -

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

A class action is the superior method for the fair and efficient adjudication of these claims. Plaintiffs' claims are shared by approximately 51,000 other consumers, each of whom received at least one text message promoting the sale of goods or services from Eaze, via the same dialing technology, during the same four-year statutory period.  The resolution of all claims of all Settlement Class Members in a single proceeding promotes judicial efficiency and avoids inconsistent decisions. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (noting "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23").  Further, the statutory damages available under the TCPA ($500 per violation, or $1,500 if the violation is willful) are small in comparison to the costs of litigation.  As a result, it is unlikely any Settlement Class member would be willing or able to pursue relief on an individual basis.

Accordingly, the superiority requirement is satisfied for purposes of preliminary approval. The Court should provisionally certify the Settlement Class.

### C.      Plaintiff's Counsel Should Be Appointed Class Counsel

Upon certifying a class, Rule 23 requires that a court appoint class counsel who will "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B), (2), (4).  In appointing class counsel, the court must consider (1) the work counsel has done in identifying or investigating potential claims; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the case; (3) counsel's knowledge of the applicable law, and (4) the resources class counsel has committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv); *Cabiness v. Educational Fin. Solutions, LLC*, No. 16-cv-1109-JST, 2018 WL 3108991, at*4 (N.D. Cal. June 25, 2018).

In this case, proposed Class Counsel, Frank S. Hedin and David W. Hall of Hedin Hall LLP, readily satisfy the criteria of Rule 23(g).  *See* Settlement Agreement § III.B.  First, Plaintiff's counsel and proposed Class Counsel have devoted substantial time, effort and resources to this litigation, beginning with their initial investigation of Plaintiff's allegations, continuing through several months of vigorous litigation, formal discovery and expert consultation, and ending with hard-fought

- 25 -

settlement negotiations, a lengthy mediation and confirmatory discovery.  Second, Plaintiff's counsel

have extensive experience in complex class action litigation, in district courts of the Ninth Circuit and

elsewhere, and Mr. Hedin previously served as class counsel in two prior similar cases involving the

alleged unsolicited transmission of advertising and marketing text messages in violation of the TCPA,

*Farnham v. Caribou Coffee Company, Inc.*, No. 16-cv-295-wmc (W.D. Wisc.) ($8.5 million class

settlement finally approved on behalf of approximately 530,000 settlement class members, each

claiming settlement class member received approximately $68); *Chimeno-Buzzi, et al. v. Hollister,

Co.*, No. 14-cv-23120-MGC (S.D. Fla.) ($10 million class settlement finally approved, each claiming

settlement class member received approximately $40).

Accordingly, the Court should appoint Plaintiffs' counsel at Hedin Hall LLP as Class Counsel.

**D.    The Court Should Approve the Proposed Notice, and Direct the Settlement Administrator to Provide Notice to the Settlement Class**

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class

members who would be bound by a proposed settlement, voluntary dismissal, or compromise'

regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for

Complex Litigation, supra*, at § 21.312.   The best practicable notice is that which is "reasonably

calculated, under all the circumstances, to apprise interested parties of the pendency of the action and

afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*,

339 U.S. 306, 314 (1950).   The notice must contain specific information in plain, easily understood

language, including the nature of the action and the rights of class members. Fed. R. Civ. P.

23(c)(2)(B)(i)–(vii).

Pursuant to the Settlement Agreement, the Class Notice will provide information to Settlement

Class Members regarding the filing of Claim Forms, Settlement Agreement § V.A.; *see also id.* §

V.E., Ex. B (sample Class Notice), and additionally will: (i) describe the essential terms of the

Settlement, the relief provided by the Settlement, and the amount of each Cash Award that Class

Counsel estimate a claiming Settlement Class member will receive; (ii) disclose Class Counsel's

intention to file an application with the Court for Service Awards to the Class Representatives and an

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

Attorneys' Fee Award to Class Counsel, the specific amounts that will be requested for each, and the date on which such application will be filed with the Court; (iii) inform Settlement Class members that Class Counsel's and the Class Representatives' application for an Attorneys' Fee Award and for Service Awards, as well as the motion for final approval of the Settlement and all other Settlement-related filings, will be accessible on the Settlement Website immediately after the filing of such materials with the Court; (iv) indicate the time and place of the hearing to consider final approval of the Settlement, and the method for filing objections to and/or requests for exclusion from the Settlement; (v) explain the procedures for allocating and distributing the Settlement Fund; and (vi) prominently display the address of the Clerk of Court, the Settlement Administrator, and Class Counsel and the procedure for making inquiries concerning the Settlement, *id.* § IX.C.

Claim Forms will be available from the Settlement Administrator, upon request, and on the Settlement Website.  *Id.* § V.A; *see also id.* § V.E., Ex. A (sample Claim Form).  Settlement Class members will be able to submit their respective Claim Forms through the Settlement Website or by U.S. postal mail.  *Id.* § V.A.  In order to file a Valid Claim, as necessary to receive a Cash Award, Settlement Class Members must sign and return, by the Claims Deadline, a fully completed Claim Form containing the following required information: (1) name; (2) current address; (3) cellular telephone number at which the person received one or more qualifying text(s) from Eaze; (4) the person's current e-mail address or telephone number (in case the Settlement Administrator requires additional information to process the claim); and (5) an attestation under penalty of perjury that the person received a qualifying text message and that the information submitted on the Claim Form is truthful to the best of his or her belief.  *Id.* § V.A-B; *see also id.* § V.C-D (process for determining validity of Claim Forms and resolving concerns of suspected fraud).

The Settlement Agreement requires the Settlement Administrator to implement a comprehensive Settlement Class Notice Program for providing the Class Notice to Settlement Class Members and otherwise notifying the Settlement Class of the Settlement and the Settlement Agreement.  *Id.* § II.GG.  The Parties have already provided the Settlement Administrator with a list of the cellular telephone numbers appearing in its records (and the records of third-party marketing

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

companies retained by Eaze) as having received one or more qualifying text message(s) during the Class Period, as well as the names and physical addresses corresponding to over 94% of these numbers. (*See* Peak Decl. ¶¶ 7, 25.) Immediately after the Court enters the Preliminary Approval Order directing commencement of the Settlement Class Notice Program, the Settlement Administrator will update these records through reverse-lookup procedures, as necessary, to ensure that the physical addresses Eaze has on file for Settlement Class Members are as current as possible, and will utilize additional skip-tracing procedures to attempt to identify physical addresses for the Settlement Class members for whom no address or name is presently on file. (*See* Peak Decl. ¶¶ 15-16.)  The Settlement Administrator will then provide direct notice, via double-sided postcard (with the Class Notice on one side and a Claim Form with pre-paid return postage on the reverse), to all Settlement Class Members whose physical addresses is identified. Both the postcards and e-mails sent to Settlement Class members by the Claims Administrator will contain the Class Notice and the website address for the Settlement Website, where a Claim Form may be submitted electronically. *See Mullane*, 339 U.S. at 314 (explaining that Rule 23 "requires that individual notice in 23(b)(3) actions be given to class members who can be identified through reasonable effort."). *See Manual for Complex* Litigation*, supra*, §21.311, at 287 ("When the names and addresses of most class members are known, notice by mail usually is preferred.").

In addition to direct notice, the Settlement Class will also be notified with electronic advertisements published by the Settlement Administrator on widely-utilized websites with banners and on Facebook and Twitter.  (Peak Decl. ¶ 17; *see also* Fed. R. Civ. P. 23(e)(1) (calling for notice to be provided in a "reasonable manner to all class members who would be bound by the proposal"); *In re Northfield*, 2012 WL 366852, at *7.)

The double-sided, pre-paid postcards and electronic advertisements and social media notices will also direct Settlement Class Members to the Settlement Website, which will contain the Class Notice and an electronic version of the Claim Form that can be submitted online, as well as answers to frequently asked questions, the toll-free Settlement telephone number, and copies of the full Settlement Agreement and other important documents (including the operative Complaint, this

- 28 -

1  Motion, all Orders of the Court concerning the Settlement, and Plaintiffs' forthcoming motions for

2  an Attorneys' Fee Award and Service Awards and for final approval of the Settlement). (Peak Decl.

3  ¶ 18.)

4        The proposed Settlement Class Notice Program is robust, comprehensive and informative,

5  effectuating the Class Notice directly to approximately 94% of Settlement Class members; notifying

6  additional members of the Settlement Class through publication, the Settlement Website, and the

7  automated toll-free Settlement telephone number; and providing for the filing of Claim Forms by

8  postal mail and on the Settlement Website.

9        Accordingly, Plaintiffs respectfully request that the Court, as set forth in the proposed order

10  accompanying this Motion, find that the notice provided by the Settlement Class Notice Program: (i)

11  is the best practicable notice; (ii) is reasonably calculated, under the circumstances, to apprise the

12  Settlement Class of the pendency of the Action and of their right to object to or to exclude themselves

13  from the proposed Settlement; (iii) is reasonable and constitutes due, adequate and sufficient notice

14  to all Persons entitled to receive notice; and (iv) meets all requirements of applicable law.  *See*

15  Settlement Agreement § IX.G; *see, e.g., Touhey v. U.S.*, No. 08-cv-1418, 2011 WL 3179036, at *11

16  (C.D. Cal. July 25, 2011) (finding mail, publication, website and toll-free number were sufficiently

17  calculated to reach class members, and satisfied Rule 23 notice requirements).

18        Further, Plaintiffs respectfully request that the Court, as set forth in the proposed order

19  accompanying this Motion, approve the Class Notice and Claim Form, appoint KCC as the Settlement

20  Administrator, direct the Settlement Administrator to disseminate the Class Notice in accordance with

21  the Settlement Class Notice Program, require the Settlement Administrator to file proof of compliance

22  with the Settlement Class Notice Program no later than seven (7) days before the Fairness Hearing,

23  and set a Claim Deadline of ninety (90) days after the Notice Date.[10]

24

25

26

27  ——————————————
[10]     Promptly after the filing of this Motion and the attached Settlement Agreement, Eaze will
serve or cause the Class Administrator to serve CAFA Notice in full compliance with 28 U.S.C. §
28  1715.  Settlement Agreement § V.F.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

**E.     The Court Should Schedule the Final Approval Hearing**

The last step in the settlement approval process, after completion of the Settlement Class Notice Program, will be a Fairness Hearing on final approval of the Settlement and Settlement Agreement to consider the fairness, reasonableness and adequacy of the proposed Settlement and whether it should be finally approved by the Court, and to determine the reasonableness of the requested Attorneys' Fee Award and Service Award.  *Id.* § IX.D.  Plaintiffs respectfully request that the Court set a date for the Final Hearing at the Court's convenience, consistent with the proposed timetable set forth in the proposed order accompanying this Motion.  *See id.*

## VI.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion and enter an order (in the form of the proposed order attached hereto) that: (1) preliminarily approves the Settlement; (2) provisionally certifies the Settlement Class and appoints Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel; (3) approves the Class Notice, appoints KCC as Settlement Administrator, and orders that the Notice Program be effectuated by KCC; (4) establishes a procedure and timetable, consistent with the procedures set forth in the Settlement Agreement, for Settlement Class members to object to the Settlement, exclude themselves from the Settlement Class, and file Claims in the Settlement (pursuant to the timetable set forth in the proposed order attached hereto); and (5) set a final approval hearing to consider whether to finally approve the Settlement.

Dated:  March 29, 2019

Respectfully submitted,

**HEDIN HALL LLP**

By: s/ Frank S. Hedin
FRANK S. HEDIN (SBN 291289)
fhedin@hedinhall.com
DAVID W. HALL (SBN 274921)
dhall@hedinhall.com
Four Embarcadero Center, Suite 1400
San Francisco, California 94111
Telephone: (415) 766-3534
Facsimile: (415) 402-0058

*Counsel for Plaintiff and the Putative Class*

- 30 -
PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT