1   Frank S. Hedin (SBN 291289)
    fhedin@hedinhall.com
2   David W. Hall (SBN 274921)
    dhall@hedinhall.com
3   HEDIN HALL LLP
    Four Embarcadero Center, Suite 1400
4   San Francisco, California 94104
    Telephone: (415) 766-3534
5   Facsimile: (415) 402-0058

6   *Counsel for Plaintiffs and*
    *the Proposed Settlement Class*

7

8                 UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                  SAN FRANCISCO DIVISION

11  KRISTINE LLOYD; and JULIUS MENA,          Case No. 3:18-cv-05176-JD
    individually and on behalf of all others
12  similarly situated,                       **PLAINTIFFS' UNOPPOSED MOTION FOR
                                              PRELIMINARY APPROVAL OF PROPOSED
13              Plaintiffs,                    CLASS ACTION SETTLEMENT**

14                                            [Declarations of Frank S. Hedin (with Exhibits),
    v.                                        David W. Hall, and Carla A. Peak; and [Proposed]
15                                            Order filed concurrently herewith]
    EAZE SOLUTIONS, INC.,
16                                            **Judge: Hon. James Donato**
              Defendant.                      **Date: December 5, 2019 at 10:00 a.m.**
17
18                                            Complaint Filed: August 23, 2018
19                                            Trial Date: Not Set
20
21
22
23
24
25
26
27
28

---

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

## **TABLE OF CONTENTS**

I.     INTRODUCTION ......................................................................................................... 1

II.    BACKGROUND ........................................................................................................... 3

    A.    The TCPA and the Meaning of "Automatic Telephone Dialing System"............... 3

    B.    History of this Litigation......................................................................................... 4

III.   TERMS OF THE SETTLEMENT................................................................................. 7

    A.    Class Definition ....................................................................................................... 7

    B.    Monetary Relief ...................................................................................................... 8

    C.    Prospective Relief ................................................................................................... 9

    D.    Class Notice and Settlement Administration .......................................................... 9

    E.    Service Award for Class Representative and Attorneys' Fees for Class Counsel ................. 11

    F.    Objections and Opt-Out Rights............................................................................. 11

    G.    Release of Liability ............................................................................................... 12

IV.    THE CLASS ACTION SETTLEMENT APPROVAL PROCESS............................. 12

V.     ARGUMENT .............................................................................................................. 13

    A.    The Settlement Should Be Preliminarily Approved ............................................. 13

        1.    The Settlement Provides Substantial Relief to the Settlement Class, Particularly Given the Risks Posed by Continued Litigation ................................................. 14

        2.    Continued Litigation Would Be Complex, Costly, and Lengthy....................... 21

        3.    Proposed Class Counsel are Competent, Well-Informed and Experienced, and Strongly Endorse the Settlement......................................................................... 21

        4.    The Settlement is the Product of a Thorough Investigation, Efficiently Prosecuted Litigation, and Arm's-Length Negotiations.......................................... 22

    B.    The Settlement Class Should Be Provisionally Certified for Settlement Purposes ............. 23

        1.    The Requirements of Rule 23(a) Are Satisfied.................................................. 24

            a.    Numerosity............................................................................................ 24

            b.    Commonality......................................................................................... 25

            c.    Typicality .............................................................................................. 25

            d.    Adequacy of Representation ................................................................. 26

        2.    The Requirements of Rule 23(b)(3) Are Satisfied............................................. 26

            a.    Common Questions Predominate .......................................................... 27

            b.    Class Treatment of Plaintiffs' Claims is Superior ............................... 28

    C.    Plaintiffs' Counsel Should Be Appointed Class Counsel ..................................... 29

    D.    The Court Should Approve the Proposed Notice Plan .......................................... 30

    E.    The Court Should Schedule the Final Approval Hearing ...................................... 35

VI.    CONCLUSION............................................................................................................ 35

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adams v. Inter-Con Sec. Sys., Inc.*,
  No. 06-cv-5428, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007) .................................................... 24

*Agne v. Papa John's Int'l, Inc.*,
  286 F.R.D. 559 (W.D. Wash. 2012) .................................................................................. 26

*Amchem Prods. Inc. v. Windsor*,
  521 U.S. 591 (1997)........................................................................................... 24, 27, 29

*Bakhtiar v. Info. Res. , Inc.*,
  No. 17-cv-4559-JST (N.D. Cal. Jul. 26, 2018) ......................................................................... 34

*Bellinghausen v. Tractor Supply Co.*,
  306 F.R.D. 245 (N.D. Cal. 2015)......................................................................................... 22

*Bloom v. Jenny Craig Inc.*,
  No. 1:18-cv-21820 (S.D. Fla.) ............................................................................................ 17

*Borcea v. Carnival Corp.*,
  238 F.R.D. 664 (S.D. Fla. 2006) ......................................................................................... 22

*Brown v. Rita's Water Ice Franchise Company, LLC*,
  No. 15-cv-3509 (E.D. Pa.) ................................................................................................ 16

*Cabiness v. Educational Fin. Solutions, LLC*,
  No. 16-cv-1109-JST, 2018 WL 3108991 (N.D. Cal. June 25, 2018) ........................................... 30

*Celano v. Marriott Int'l Inc.*,
  242 F.R.D. 544 (N.D. Cal. 2007)......................................................................................... 25

*Chimeno-Buzzi v. Hollister Co.*,
  No. 14-cv-23120 (S.D. Fla.) ........................................................................................ 16, 30

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) ........................................................................................... 21

*Couser v. Comenity Bank*,
  125 F. Supp. 3d 1034 (S.D. Cal. 2015)................................................................................... 11

*Cubbage v. Talbots, Inc.*,
  No. 09-cv- 00911-BHS (W.D. Wash. Nov. 5, 2012)................................................................... 18

*Douglas v. The Western Union Company*,
  No. 14-cv-1741 (N.D. Ill.) ................................................................................................ 16

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ............................................................................................. 26

ii

*Estrada v. iYogi, Inc.*,
No. 2:13–01989 WBS CKD, 2015 WL 5895942 (E.D. Cal. Oct. 6, 2015) ................................. 17

*Farnham v. Caribou Coffee Co.*,
No. 16-cv-295-wmc (W.D. Wisc.) ................................................................................ 15, 16, 30

*Fogarazzao v. Lehman Bros., Inc.*,
232 F.R.D. 176 (S.D.N.Y. 2005) ........................................................................................... 26

*G.M. Sign, Inc. v. Finish Thompson, Inc.*,
No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869 (N.D. Ill. Aug. 20, 2009) ................................. 26

*Gen. Tel. Co. of the Sw. v. Falcon*,
457 U.S. 147 (1982) ............................................................................................................. 29

*Gergetz v. Telenav, Inc.*,
No. 16-cv-4261 (N.D. Cal.) ..................................................................................................... 17

*Golan v. FreeEats.com, Inc.*,
No. 17-3156, 2019 WL 3118582 (8th Cir. July 16, 2019) ...................................................... 21

*Golan v. Veritas Entm't, LLC*,
No. 4:14CV00069 ERW, 2017 WL 3923162 (E.D. Mo. Sept. 7, 2017) ............................... 20, 21

*Goldschmidt v. Rack Room Shoes, Inc.*,
No. 1:18-cv-21220-KMW (S.D. Fla. 2019) .......................................................................... 18

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir.1998) ............................................................................................... 13

*Harris v. Vector Mktg. Corp.*,
No. C-08-5198 EMC, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ...................................... 23

*In re Indep. Energy Holdings PLC*,
No. 00-cv-6689, 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) .......................................... 24

*In re Jiffy Lube Int'l, Inc. Text Spam Litig.*,
No. 3:11-md-02261 (S.D. Cal. Feb. 20, 2013) ...................................................................... 17

*In re Tableware Antitrust Litig.*,
484 F. Supp. 2d 1078 (N.D. Cal. 2007) .............................................................................. 21

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985) ........................................................................................ 23

*Johansen v. GVN Mich., Inc.*,
No. 1:15-cv-00912, 2015 WL 3823036 (N.D. Ill. June 18, 2015) ......................................... 28

*Kazemi v. Payless Shoesource, Inc.*,
No. 3:09-cv-05142 (N.D. Cal. Apr. 2, 2012) ........................................................................ 18

*Lane v. Facebook*,
696 F.3d 811 (9th Cir. 2012) ........................................................................................ 12, 13, 14, 23

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

*Lathrop v. Uber Technologies, Inc.*,
15-cv-6942 (N.D. Ill.) ............................................................................................ 17

*Local Joint Exec. Bd. of Culinary/ Bartender Trust Fund v. Las Vegas Sands, Inc.*,
244 F.3d 1152 (9th Cir. 2001) ................................................................................ 29

*Manouchehri v. Styles for Less, Inc.*,
Case No. 14cv2521 NLS, 2016 WL 3387473 (S.D. Cal. June 20, 2016)................. 17

*Marengo v. Miami Resch. Assocs., LLC*,
No. 1:17-cv-20459-KMW (S.D. Fla. July 20, 2018) .............................................. 17

*Marks v. Crunch of San Diego*,
904 F.3d 1041 (9th Cir. 2018) ................................................................................ 19

*Masson v. Tallahassee Dodge Chrysler Jeep, LLC*,
No. 17-22967-CIV-M0ORE (S.D. Fla. May 8, 2018) ............................................ 17

*Melito v. American Eagle Outfitters, Inc.*,
No. 14-cv-440 (S.D.N.Y.)........................................................................................ 16

*Mims v. Arrow Fin. Servs. LLC*,
132 S. Ct. 740 (2012) ................................................................................................ 3

*Mohamed v. Off Lease Only, Inc.*,
No. 1:15-cv-23352-MGC (S.D Fla. 2019) ............................................................. 18

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ........................................................................................... 31, 32

*Nat'l Rural Telecommc'ns Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................ 21, 22

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco*,
688 F.2d 615 (9th Cir. 1982) ................................................................. 12, 13, 14, 22

*Parker v. Universal Pictures, Inc., et al.*,
No. 6:16-cv-01193-CEM-DCI (M.D. Fla.). ...................................................... 14, 15

*Pimental v. Google, Inc.*,
No. 11-cv-2585 (N.D. Cal.) ..................................................................................... 17

*Poirier v. CubaMaxTravel, Inc.*,
No. 1:18-cv-23240-CMA (S.D. Fla. 2018)............................................................. 18

*Roach v. T.L Cannon Corp.*,
773 F.3d 401 (2d Cir. 2015).................................................................................... 28

*Rodriguez v. W. Publishing*,
563 F.3d 948 (9th Cir. 2009) .................................................................................. 23

*Sadowski v. Med1 Online, LLC*,
No. 07-cv-2973, 2008 U.S. Dist. LEXIS 41766 (N.D. Ill. May 27, 2008)................. 28

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

*Satterfield v. Simon & Schuster, Inc., et al.*,
   No. 06-cv-2893 (N.D. Cal. 2010) ......................................................................................... 18

*Smith v. CRST Van Expedited, Inc.*,
   No. 10-cv-1116, 2013 WL 163293 (S.D. Cal. Jan. 14, 2013) ...................................... 18, 22

*Soular et al. v. Northern Tier Energy LP*,
   No. 15-cv-556 (D. Minn.) ..................................................................................................... 17

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) .................................................................................................. 14

*Touhey v. U.S.*,
   No. 08-cv-1418, 2011 WL 3179036 (C.D. Cal. July 25, 2011) ............................................ 36

*True Health Chiropractic, Inc. v. McKesson Corporation*,
   896 F.3d 923 (9th Cir. 2018) ................................................................................................ 28

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016) .......................................................................................................... 27

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) .......................................................................................................... 25

*Weinstein v. The Timberland Co.*,
   No. 06-cv-00484 (N.D. Ill. 2008) ......................................................................................... 18

*Whitaker v. Bennett Law, PLLC*,
   No. 13-3145, 2014 WL 5454398 (S.D. Cal. Oct. 27, 2014) .............................................. 25, 26

*Wijesinha v. Susan B. Anthony List, Inc.*,
   No. 1:18-cv-22880-JEM (S.D. Fla. 2019) ............................................................................ 18

*Willis v. iHeartMedia, Inc.*,
   No 2016 CH 02455 (Cir. Ct. Cook Cty., Ill.) ....................................................................... 17

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) .............................................................................................. 29

*Wright v. Lyft*,
   No. 14-cv-421 (W.D. Wash.) ................................................................................................ 17

**Statutes**

28 U.S.C. § 1715 ......................................................................................................................... 36

47 U.S.C. § 227 ............................................................................................................................. 1

47 U.S.C. § 227(a)(1) ................................................................................................................... 4

47 U.S.C. § 227(b)(1) ................................................................................................................... 4

47 U.S.C. § 227(b)(3) ................................................................................................................... 4

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

**Rules**

Fed. R. Civ. P. 23(a)(1) ................................................................................. 25

Fed. R. Civ. P. 23(a)(2) ................................................................................. 25

Fed. R. Civ. P. 23(a)(3) ................................................................................. 26

Fed. R. Civ. P. 23(a)(4) ................................................................................. 26

Fed. R. Civ. P. 23(b)(3) ............................................................................ 24, 27

Fed. R. Civ. P. 23(c)(2) ................................................................................. 31

Fed. R. Civ. P. 23(e)(1) ............................................................................ 30, 33

Fed. R. Civ. P. 23(e)(2) ................................................................................. 13

Fed. R. Civ. P. 23(g) ............................................................................... 29, 30

Fed. R. Civ. P. 30(b)(6) ................................................................................. 23

**Treatises**

4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* (4th ed. 2002) ................ 12, 13, 24

David F. Herr, *Manual for Complex Litigation* (4th ed. 2004) ............................................. 13, 30, 31

**Other Authorities**

*Public Notice on Interpretation of the Telephone Consumer Protection Act* (CG Docket No. 18-152; CG Docket No. 02-278) ................................................................................. 19

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

1    Plaintiffs Kristine Lloyd and Julius Mena hereby move for preliminary approval of the class-

2    wide Settlement Agreement (attached as Exhibit "1" to the Declaration of Frank S. Hedin ("Hedin

3    Decl.") submitted concurrently herewith) entered into between Plaintiffs and defendant Eaze

4    Solutions, Inc. ("Eaze") (collectively, the "Parties").[1]

5    **I.    INTRODUCTION**

6        The present case is a putative class action in which the Plaintiffs allege that Eaze transmitted,

7    via an "automatic telephone dialing system" (or "ATDS"), unsolicited text message advertisements

8    to their cellular devices and the cellular devices of numerous other similarly-situated individuals, in

9    violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Plaintiffs seek

10   statutory damages for themselves and the other members of the Settlement Class.

11       This litigation has been comprehensive and highly contentious.  The Parties have collectively

12   prepared and filed two complaints, briefing on a motion to dismiss and requests for judicial notice,

13   joint discovery and pretrial proposals, a stipulated confidentiality order, and comprehensive pre-

14   mediation briefs, among other things.  Plaintiffs' counsel thoroughly investigated the claims alleged

15   in this action, including by speaking with numerous members of the Settlement Class regarding the

16   messages they received and the circumstances under which they were sent.  The Parties exchanged

17   wide-ranging documents and information over the course of several months, on both individual merits

18   and class certification related issues.  Plaintiffs' counsel served subpoenas on multiple third parties,

19   obtained voluminous electronically stored information reflecting the identities of Settlement Class

20   members, and deposed Eaze's primary marketing vendor, the party responsible for physically

21   transmitting most of the text messages at issue in this case.  The considerable time and resources

22   Plaintiffs and their counsel devoted to this case, in advance of ever discussing settlement with Eaze,

23   allowed them to meaningfully assess the strengths and weaknesses of the Settlement Class's claims,

24   the risks posed by continued litigation, and the benefits that might be realized for the Settlement Class

25   through early resolution.

26       Settlement negotiations were also hard fought. The Parties engaged in over ten hours of

27

28   [1]    Unless otherwise defined herein, all capitalized terms have the same force, meaning and effect
     as ascribed in Section II ("Definitions") of the Settlement Agreement.

1

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

1   contentious, arm's-length negotiations before Robert A. Meyer, a well-respected and experienced

2   JAMS mediator, in Los Angeles, California, ultimately reaching a proposed settlement that would

3   have provided $1.75 million to the Settlement Class.  Although the Court denied preliminary approval

4   of the Parties' initial proposed settlement (discussed further below), raising concerns regarding the

5   claims and distribution procedures and the adequacy of the relief provided under the initial settlement,

6   the Parties nonetheless continued to engage in good-faith, arm's-length settlement negotiations for

7   the next several months.  With further assistance from Mr. Meyer, the Parties were ultimately able to

8   agree upon the terms of the revised proposed Settlement memorialized in the Settlement Agreement

9   submitted herewith.

10          The proposed revised Settlement reached by the Parties provides fair, reasonable, and

11   adequate relief to the Settlement Class, in a timely and efficient manner.  Eaze has agreed to pay each

12   of the approximately 52,104 Settlement Class Members (except for those who exclude themselves

13   from the Settlement) $50 for each qualifying text message that they received.  Eaze has also agreed

14   to pay all Notice and Administrative Costs to KCC, LLC ("KCC") (not to exceed $255,000), an

15   Attorneys' Fee Award to Class Counsel of $437,500 (the same amount that Class Counsel would have

16   requested in connection with the initial proposed settlement that the Court declined to approve), and

17   Service Awards of $2,500 to each of the two Class Representatives (totaling $5,000).  Thus, the total

18   maximum monetary relief to be paid by Eaze pursuant to this revised Settlement is $3,490,800, which

19   is nearly twice the size of the Parties' initial settlement.

20          Notably, the revised Settlement provides for *automatic* cash payments to Settlement Class

21   Members, without the need for Settlement Class Members to file Claim Forms.  Thus, all identifiable

22   Settlement Class Members who do not timely exclude themselves from the Settlement will

23   automatically receive a Cash Award paid either by check sent to their postal address (the default

24   payment method) or by electronic deposit into their PayPal account (to the extent a Settlement Class

25   Member submits a request on the Settlement Website to be paid via PayPal in lieu of by check).  If

26   the proposed Settlement is finally approved, each Settlement Class Member will automatically

27   receive a check for at least $50, and many Settlement Class Members who received multiple

28

2

1   qualifying text messages from Eaze will automatically receive checks of $100 or more.

2        The proposed Settlement also provides wide-ranging non-monetary prospective relief to the

3   Settlement Class.  Pursuant to the Settlement, Eaze has agreed to implement the following meaningful

4   policies, procedures, and changes to its business practices as of the Preliminary Approval Date:  (1)

5   institute TCPA compliance training and marketing oversight generally of key personnel involved in

6   text messaging and maintain best marketing practices at all times in the future; (2) refrain from ever

7   retaining the text messaging services of Handstack, P.B.C., a/k/a "Bitesize," or its founder and CEO

8   Jessica Hyejin Lee in the future; (3) refrain from transmitting verification reminder text messages

9   containing advertising copy in the future; (4) include opt-out notifications in all verification text

10   messages that it transmits in the future; and (5) take steps to adjust the verification process to prevent

11   individuals from mistakenly and repeatedly sending messages to Non-users of its services in the

12   future.

13        If approved, the Settlement will provide meaningful monetary and non-monetary relief to the

14   Settlement Class in an expeditious manner – an eminently fair, reasonable, and adequate resolution

15   to this litigation.  Accordingly, Plaintiffs respectfully request that the Court (1) preliminarily approve

16   the Settlement, (2) provisionally certify the proposed Settlement Class and appoint Plaintiffs as Class

17   Representatives and their counsel as Class Counsel, (3) approve the proposed Notice plan, and appoint

18   KCC as the Settlement Administrator, (4) establish a procedure and timetable for the settlement

19   administration, and (5) set a final approval hearing date.

20  **II.**    **BACKGROUND**

21     **A.**    **The TCPA and the Meaning of "Automatic Telephone Dialing System"**

22        The TCPA was enacted more than two decades ago in response to "[v]oluminous consumer

23   complaints about abuses of telephone technology."  *Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740,

24   744 (2012).  In passing the statute, Congress specifically sought to prevent "intrusive nuisance calls"

25   to consumers that it deemed "invasive of privacy," *see id.*, and set statutory damages in the amount

26   of $500 per violation (which may be trebled if the conduct is found willful) as well as provided for

27   injunctive relief.  *See* 47 U.S.C. § 227(b)(3)(A)–(C).

28

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

1   The TCPA and its implementing regulations specifically prohibit the transmission of

2   marketing text messages to cellular phones via an "automatic telephone dialing system" (or "ATDS"),

3   absent the "prior express written consent" of the called party.  47 U.S.C. § 227(b)(1)(A)(iii).  To prove

4   a violation of the TPCA, the plaintiff has the burden of demonstrating, inter alia, that the defendant's

5   calls or text messages were sent via an ATDS, which is defined in the statute as any dialing equipment

6   that "ha[s] the capacity . . . (A) to store or produce telephone numbers to be called, using a random

7   or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1) (emphasis

8   added).

9       **B.      History of this Litigation**

10      On August 23, 2018, following an extensive pre-filing investigation, Plaintiff Lloyd initiated

11  this action by filing the Complaint, individually and on behalf of others similarly situated. (ECF No.

12  1.)  The Complaint alleged two claims for violation of the TCPA against Eaze.

13      On October 8, 2018, Eaze filed a motion to dismiss the action for failure to state a claim

14  pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 11 (the "Motion to Dismiss"), as well

15  as a request for judicial notice (ECF No. 12).  On November 29, 2018, Plaintiff Lloyd responded in

16  opposition to the Motion to Dismiss (ECF No. 16) and to the request for judicial notice (ECF No. 17),

17  and on December 20, 2018, Eaze filed its replies in support of the Motion to Dismiss (ECF No. 19)

18  and the request for judicial notice (ECF No. 20).

19      On November 27, 2018, the Parties filed a motion for entry of a stipulated confidentiality

20  order (ECF No. 15), which the Court entered on December 5, 2018 (ECF No. 18).

21      In discovery, Eaze produced, inter alia, copies of the only potentially applicable insurance

22  policies that existed for the duration of the Class period, each of which contained an exclusion for

23  TCPA litigation and thus provided no coverage.  Eaze additionally produced documents, information,

24  and data reflecting the identities of its marketing vendors; the approximate number of recipients of

25  the text messages in question, the dates on which such messages were sent, and information

26  confirming that Lloyd and the majority of individuals who received such messages had not registered

27  for or initiated the process of registering for Eaze's services.  Plaintiffs' counsel obtained further

28

4

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

1  important information bearing on the size and scope of this action by serving third-party subpoenas
2  to Twilio, Inc. and Handstack, P.B.C.

3      Armed with this information, together with other important information obtained during a
4  robust pre- filing investigation of the underlying facts in this matter, Plaintiff Lloyd and her counsel
5  were in a position to intelligently assess the strengths and weaknesses of the Settlement Class
6  members' claims and Eaze's defenses to them.

7      Thus, on December 14, 2018, the Parties attended a full day of mediation in Oakland,
8  California before Robert A. Meyer of JAMS, a mediator with substantial experience mediating
9  complex civil actions including class actions.  Although mediation was unsuccessful, substantial
10  progress was made towards the principal components of a proposed settlement.

11      Shortly after mediation, Plaintiffs' counsel was retained by Julius Mena, another recipient of
12  Eaze's text messages, who provided Plaintiffs' counsel with additional important information
13  concerning the claims alleged in the action, information which enabled Plaintiffs' counsel to further
14  assess the strengths and weaknesses of the underlying claims of the class and the likelihood of
15  prevailing at class certification. Thus, for the month following the mediation, Plaintiffs' counsel (now
16  representing Ms. Lloyd and Mr. Mena) continued to investigate the merits of the claims alleged in
17  this action and the likelihood of winning class certification, and also continued to engage in settlement
18  negotiations with Eaze's counsel with the continued assistance of Mr. Meyer.

19      On January 16, 2019, the Parties reached a proposed resolution of this action and signed a
20  binding term sheet setting forth the material terms of the proposed Settlement Agreement, the
21  execution of which was conditioned upon Plaintiffs taking confirmatory discovery regarding, inter
22  alia, the composition of the Settlement Class.

23      Over the next two months, Plaintiffs' counsel conducted additional party and third-party
24  discovery to confirm, inter alia, the size and scope of the proposed Settlement Class and other matters
25  bearing on Plaintiffs' claims and Eaze's defenses.  For instance, on February 21, 2019, Eaze produced
26  to Plaintiffs' counsel spreadsheets of records reflecting the date, time, recipient telephone number,
27  and the content of each Eaze-related "verification-reminder" text message that had been erroneously

28

5

1   transmitted to Settlement Class members, including to Plaintiff Lloyd.  Additionally, on February 25,

2   2019, Plaintiffs' counsel deposed Jessica Hyejin Lee, the CEO and designated corporate

3   representative of Handstack, P.B.C., d/b/a "Bitesize," one of the entities that transmitted the relevant

4   text messages.  In advance of Ms. Lee's deposition, Plaintiffs' counsel obtained from Ms. Lee copies

5   of, inter alia, additional text-transmission records reflecting the dates, times, recipient numbers, and

6   the contents of each of the text messages that Handstack, P.B.C. had transmitted using Twilio, Inc.'s

7   technology, including the message it had sent to Plaintiff Mena.

8           After Plaintiffs' counsel successfully confirmed the size and scope of the Settlement Class

9   and the accuracy of the records described above, the Parties solicited estimates from four (4) potential

10  settlement administrators.  The estimates were prepared based upon various detailed assumptions

11  pertaining to the type and scope of class member data available to the Parties. Upon obtaining and

12  thoroughly reviewing the four estimates, including performing cost comparisons and analyzing

13  differences between the detailed notice and disbursement plans devised by each potential

14  administrator, the Parties selected KCC as the proposed Settlement Administrator.

15          On March 29, 2019, Plaintiffs filed the operative First Amended Class Action Complaint.

16  (ECF No. 24 (hereinafter, the "Amended Complaint")).  The Amended Complaint alleges that Eaze,

17  acting through its marketing-partner agent(s) Handstack, P.B.C., Twilio, Inc., and/or Iterable, Inc.,

18  violated the TCPA by transmitting text-message advertisements, via ATDS, to Plaintiffs and the

19  Settlement Class members' cellular telephone numbers, without their prior "express written consent."

20          On March 30, 2019, Plaintiffs moved for preliminary approval of a proposed class-wide

21  resolution of this action. (ECF No. 25.)  The Court denied Plaintiffs' motion for preliminary approval

22  on May 9, 2019. (ECF Nos. 30-31.)  Following the Court's denial of the motion for preliminary

23  approval, the Parties continued to discuss potential revised resolutions to the case (*see* ECF Nos. 32-

24  33 (joint status reports)), including with the assistance of their retained mediator.

25          On July 1, 2019, the Parties filed a Joint Case Management Report (ECF No. 31), in which

26  Eaze set out its plan for responding to the First Amended Complaint, stating its intention to possibly

27  file "a motion to compel arbitration, a motion to dismiss, a motion to strike, a motion to stay or some

28

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

1 │ combination of the foregoing."

2 │     On October 23, 2019, after several additional months of extensive, contentious, and at all

3 │ times arm's-length negotiations, the Parties executed the revised Settlement Agreement.  The Parties

4 │ believe that this revised Settlement addresses the issues raised by the Court at the preliminary

5 │ approval hearing on the initial proposed settlement and in the Court's order denying the initial

6 │ proposed settlement. (ECF No. 31.)

7 │     This revised Settlement is the product of extensive litigation, an exchange of the pertinent

8 │ discovery, lengthy and arm's-length negotiations overseen by an experienced mediator, thorough

9 │ confirmatory discovery, and a competitive bidding process resulting in the selection of an experienced

10 │ Settlement Administrator. Plaintiffs and proposed Class Counsel firmly believe that the proposed

11 │ revised Settlement is a fair, reasonable, and adequate resolution to this litigation and is in the best

12 │ interests of the Settlement Class.

13 │ **III.  TERMS OF THE SETTLEMENT**

14 │     A copy of the Settlement Agreement is attached to the Hedin Decl. as Exhibit "1", the key

15 │ terms of which are summarized as follows:

16 │     **A.  Class Definition**

17 │     Pursuant to the Settlement Agreement, Plaintiffs request in this Motion that the Court

18 │ provisionally certify the following Settlement Class:

19 │
20 │     All Persons within the United States who, between August 23, 2014
    and the Preliminary Approval Date, were sent one or more text

21 │     message(s) (other than one containing a uniquely-identifying
    verification code and/or uniquely-identifying verification URL to

22 │     complete an online registration form) by Eaze Solutions, Inc. or an
    affiliate, subsidiary, or agent of Eaze Solutions, Inc., at a time when

23 │     such Person had not registered for or initiated the registration process
    for Eaze Solutions, Inc.'s services (i.e., a "Non-user" of Eaze Solutions,
    Inc.).

24 │     Specifically excluded from the Settlement Class are the following Persons:

25 │
26 │     a. Eaze Solutions, Inc., and its employees, officers, directors, agents,
      and representatives and their immediate family members;

27 │     b. Class Counsel; and

28 │

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

c. The Judges who have presided over the Litigation and their immediate family members.

Settlement Agreement § III.A.[2]

**B.      Monetary Relief**

Eaze has agreed to pay each Settlement Class Member (who does not exclude himself or herself from the Settlement) $50 for each qualifying text message he or she received, and has further agreed to pay all Notice and Administrative Costs to KCC (not to exceed $255,000), an Attorneys' Fee Award to Class Counsel of $437,500, and Service Awards of $2,500 to each of the two Class Representatives (totaling $5,000). *Id.* § IV. The total maximum amount of the monetary relief to be paid by Eaze pursuant to the Settlement equates to approximately $3,490,800. *Id.* § VI.B. Eaze's payment of such sums will be in full satisfaction of all of its monetary obligations under the Settlement and Settlement Agreement.

All identifiable Settlement Class Members who do not timely excluded themselves from the Settlement will automatically receive – without the need to file a claim form – a Cash Award paid either by check sent to their postal address (the default payment method) or by electronic deposit into their PayPal account (to the extent a Settlement Class Member submits a request on the Settlement Website to be paid via PayPal in lieu of by check). *Id.* § IV.I. The amount of each check (or PayPal deposit) will be computed by the Settlement Administrator by multiplying the number of qualifying text messages each Settlement Class Member received by $50. *Id.* § IV.A. Discovery obtained by Class Counsel indicates that approximately 56,000 qualifying text messages were sent by Eaze to Settlement Class Members. *Id.* § IV.B.

Checks sent to Settlement Class Members will expire after 180 days. The expiration date will be provided on each check, and the Class Notice will inform Settlement Class Members that checks must be cashed or deposited prior to the expiration date on the check (and that the check will no longer be valid after such date). *Id.* § IV.I. Any uncashed check funds that remain after the expiration date of the checks has passed will be returned to Eaze, such that each Settlement Class Member who

---

[2]      The proposed class definition and claims to be released are the same as those alleged in the operative Amended Complaint.  (*See* ECF No. 24.)

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

1   does not submit a request for exclusion will be paid exactly $50 for each qualifying Eaze text message

2   that he or she received. *Id.* § IV.J.

3       **C.      Prospective Relief**

4       Pursuant to the Settlement Agreement, Eaze has also agreed to make significant changes to

5   its consumer marketing practices going forward, to ensure that no text messages are transmitted to

6   Settlement Class members absent their prior express written consent in the future. *Id.* § IV.C.

7   Specifically, Eaze has agreed to implement the following policies, procedures, and changes in

8   business practices as of the Preliminary Approval Date: (1) institute TCPA compliance training and

9   marketing oversight generally of key personnel involved in text messaging and maintain best

10  marketing practices at all times in the future; (2) refrain from ever retaining the text messaging

11  services of Handstack, P.B.C., a/k/a "Bitesize," or its founder and CEO Jessica Hyejin Lee in the

12  future; (3) refrain from transmitting verification reminder text messages containing advertising copy

13  in the future; (4) include opt-out notifications in all verification text messages that it transmits in the

14  future; and (5) take steps to adjust the verification process to prevent individuals from mistakenly and

15  repeatedly sending messages to Non-users of its services in the future.  *Id.* These practices shall

16  remain in effect at all times in the future, unless a subsequent change in applicable law modifies or

17  discharges the obligation to maintain such practices, in which event Eaze may conform its practices

18  to comport with the subsequent change in applicable law.  *Id.*

19      **D.      Class Notice and Settlement Administration**

20      Eaze has agreed to pay from the Settlement Fund all Notice and Administration Costs to the

21  Settlement Administrator.  *Id.* § IV.D. The Settlement Administrator has agreed to limit the Notice

22  and Administration Costs in this case to a maximum not-to-exceed amount of $255,000. (*See id.*; *see*

23  *also* Declaration of Carla Peak ("Peak Decl.") ¶ 20.)

24      Each Settlement Class Member for whom the Settlement Administrator has identified a

25  current postal address will be sent the Class Notice via U.S. postal mail. *Id.* § V.B(i). To date a postal

26  address has been identified for approximately 96.3% of Settlement Class Members. (*See* Peak Decl.

27  ¶ 11.) The Class Notice provides all of the important information and dates pertaining to the case and

28

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

the proposed Settlement, discloses to each Settlement Class Member the specific amount of the Cash Award that he or she will automatically be sent by check (to the extent no opt-out request is submitted), discloses the specific amounts of the Attorneys' Fee Award and Service Awards to be requested by Class Counsel and Class Representatives, and fully informs Settlement Class Members of their right to opt out of or object to the Settlement (and sets forth the procedure and deadlines for doing so).  Settlement Agreement § V.A-B; *id.*, Ex. B (Class Notices).

The Class Notice also invites Settlement Class Members to visit the Settlement Website or to call the IVR toll-free telephone number for additional information about the Settlement, to obtain copies of the Settlement Agreement and all other important filings and orders in the case, to submit updated postal addresses to which their Cash Awards should be sent by check, to submit requests to receive Cash Awards via PayPal payment in lieu of by check, and to submit requests for exclusion from the Settlement.  See *id.* § II.LL.

To the extent a Class Notice sent by postal mail is returned as undeliverable, the Settlement Administrator will attempt to locate an alternative address for the Settlement Class Member (using the NCOA directory and other third-party databases) and will re-send another copy of the Class Notice to any such alternative address that is identified. *Id.* § V.B(i)-(iv); *see also* Peak Decl. ¶¶ 12-14. To the extent a postal address cannot be located for a Settlement Class Member, the Settlement Administrator will send the Class Notice to any e-mail address available for the Settlement Class Member.  Settlement Agreement § V.B(iii)-(iv); *see also* Peak Decl. ¶ 15. And to the extent the Settlement Administrator cannot identify either a postal address or an e-mail address for a Settlement Class Member – a circumstance that the Parties and the Settlement Administrator estimate will affect approximately only 3-4% of Settlement Class Members – the Settlement also provides for a robust publication notice plan on social media that will result in the dissemination of millions of advertisements aimed at reaching these Settlement Class Members who were unable to receive direct notice by postal mail or e-mail.  Settlement Agreement § V.B(v); *see also* Peak Decl. ¶ 16.

The Notice Plan is described in more detail in the Settlement Agreement, and the proposed Class Notices and Claim Forms are attached as exhibits to the Settlement Agreement.

**E.      Service Award for Class Representative and Attorneys' Fees for Class Counsel**

Eaze has agreed to pay reasonable Service Awards of $2,500 to each of the two Plaintiffs in recognition of the time and effort they expended in pursuing this action and in fulfilling their obligations and responsibilities as class representative, subject to the Court's approval.  Settlement Agreement § IV.G.  Eaze has also agreed to pay a reasonable Attorneys' Fee Award of $437,500 (inclusive of all litigation costs and expenses) to proposed Class Counsel, also subject to the Court's approval. *Id*. Proposed Class Counsel must file applications for an Attorneys' Fee Award and Service Awards no later than thirty-five (35) days before the Opt-Out and Objection Date. *Id.* § VI.C.[3]  The Settlement Agreement is not contingent on the amount of any Service Award or Attorneys' Fee Award. *Id.* § VI.D. The proposed Class Notices inform Settlement Class members of the amounts of the Service Awards and Attorneys' Fee Award that will be requested by Plaintiffs and Class Counsel.

**F.      Objections and Opt-Out Rights**

Any Settlement Class Member who intends to object must do so on or before the Opt-Out and Objection Date, which will be sixty (60) days following the Notice Date.  Settlement Agreement § VII.A.  In order to object, a Settlement Class Member must timely file with the Court or send to the Clerk of Court a written objection containing all of the information set forth in Section VII, Part B of the Settlement Agreement. *Id.* § VII.B.

Any Settlement Class Member who wishes to opt out of the Settlement Class must complete and send to the Settlement Administrator a request for exclusion that is post-marked or submitted electronically no later than the Opt-Out and Objection Date, which will be sixty (60) days following

---

[3]      To date, proposed Class Counsel's lodestar is approximately $234,975.  The lodestar figure was computed by multiplying 361.5, the number of hours of attorney time reasonably incurred by counsel investigating, prosecuting, and resolving these claims, by $650, which is the reasonable hourly rate that both Frank S. Hedin and David W. Hall currently charge for legal services.  The requested $437,500 fee, to be addressed in further detail in Plaintiffs' forthcoming motion for attorneys' fees, equates to a multiple of counsel's lodestar of approximately 1.86 and represents approximately 12.5% of the total monetary relief ($3.49 million) to be paid by Eaze under the proposed Settlement. *Cf. Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1049 (S.D. Cal. 2015) (awarding a 2.8 multiple of the lodestar, which equated to 15 percent of the common fund, in a TCPA case). These lodestar and multiplier figures, which are reasonable in present form, do not account for the value of the services that will be provided by Plaintiffs' counsel to perform the work that remains in this case, in the approval process and beyond. Additionally, proposed Class Counsel have expended approximately $16,550 in out-of-pocket costs prosecuting this litigation – costs for which no additional reimbursement beyond the requested Attorneys' Fee Award of $437,500 will be sought.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

1  the Notice Date.  *Id.* § VII.C.  The request for exclusion must comply with all of the requirements set

2  forth in Section VII, Part C of the Settlement Agreement.  *Id.* § VII.C.

3        The Class Notice provided to the Settlement Class will contain language consistent with the

4  provisions of Section VII of the Settlement Agreement concerning objections and opt-outs.  *Id.*

5        **G.      Release of Liability**

6        If the Settlement is finally approved and a Final Approval Order and Judgment entered by the

7  Court, Eaze (along with the third-party marketing companies that transmitted the text messages in

8  question, including Handstack, P.B.C., Iterable, Inc., and Twilio, Inc.) will be released and discharged

9  from any and all claims arising from or relating to allegedly unauthorized text messages sent by Eaze

10 to members of the Settlement Class (as set forth in Section IX, Part B of the Settlement Agreement)

11 – except that none of the claims of Settlement Class members who timely and properly request

12 exclusion will be released, as set forth in the Settlement Agreement.  *See id.* § IX.B.; *see also id.* §

13 VII.D-E.

14 **IV.     THE CLASS ACTION SETTLEMENT APPROVAL PROCESS**

15       As the Ninth Circuit has repeatedly recognized, federal courts strongly favor and encourage

16 settlements, particularly in class actions and other complex matters, where the inherent costs, delays,

17 and risks of continued litigation might otherwise overwhelm any potential benefit the class could

18 hope to obtain.  *See Officers for Justice v. Civil Service Com'n of City and County of San*

19 *Francisco,* 688 F.2d 615, 625 (9th Cir. 1982); *Lane v. Facebook,* 696 F.3d 811, 819 (9th Cir. 2012);

20 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.41 (4th ed. 2002) (collecting

21 cases) (hereinafter *Newberg*).

22       The approval process for a proposed class action settlement has three steps:

23       (1) Preliminary approval of the proposed settlement at an informal
24           hearing;

25       (2) Dissemination of mailed and/or published notice of the settlement
             to all affected class members; and

26       (3) A "formal fairness hearing" or final settlement approval hearing, at
27           which class members may be heard regarding the settlement, and at
             which evidence and argument concerning the fairness, adequacy,
28           and reasonableness of the settlement may be presented.

12

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

1  David F. Herr, *Manual for Complex Litigation* (4th ed. 2004) § 21.63.  This procedure safeguards the

2  due process rights of unnamed Settlement Class member and enables the Court to fulfill its role as

3  the guardian of Settlement Class's interests. 4 *Newberg* § 11.25.  Plaintiffs are presently at the first

4  step of this three-step process.

5  **V.    ARGUMENT**

6         The proposed Settlement was negotiated at arm's length by competent, experienced counsel

7  and would, if approved, provide substantial monetary and non-monetary relief to Settlement Class

8  members, in a prompt and efficient manner. Accordingly, the Court should (A) preliminarily approve

9  the Settlement, (B) provisionally certify the Settlement Class, (C) appoint Plaintiffs as Class

10 Representatives and their counsel as Class Counsel, (D) approve the proposed Settlement Class

11 Notice Program, and (E) schedule the Fairness Hearing.

12        **A.    The Settlement Should Be Preliminarily Approved**

13        Rule 23(e) provides that a court may approve a proposed class settlement "on a finding that it

14 is fair, reasonable, and adequate."  *See* Fed. R. Civ. P. 23(e)(2); *see also Lane,* 696 F.3d at 818 ("a

15 district court's only role in reviewing the substance of [a] settlement is to ensure that it is 'fair,

16 adequate, and free of collusion.'") (citing *Hanlon v. Chrysler Corp.,*150 F.3d 1011, 1026 (9th

17 Cir.1998)).  At the preliminary approval stage, the district court need only assess whether the

18 proposed settlement falls within the range of possible approval, in order to ascertain whether there is

19 any reason to notify the class members of the proposed settlement and to proceed with a fairness

20 hearing.  *See Officers for Justice,* 688 F.2d at 625.

21        In making this appraisal, courts consider a range of factors such as "the strength of the

22 plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of

23 maintaining class action status throughout the trial; the amount offered in settlement; the extent of

24 discovery completed and the stage of the proceedings; [and] the experience and views of

25 counsel." *Id.* (citing *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir. 1993)). "The

26 relative importance to be attached to any factor will depend upon and be dictated by the nature of the

27

28

claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice,* 688 F.2d at 625.

Here, each factor weighs in favor of finding the Settlement fair, reasonable, and adequate, warranting its preliminary approval.

### 1. The Settlement Provides Substantial Relief to the Settlement Class, Particularly Given the Risks Posed by Continued Litigation

Among the most important factors relevant to the fairness of a class action settlement is the strength of the plaintiff's case on the merits balanced against the amount offered in the settlement.  Still, settlement is necessarily "an amalgam of delicate balancing, gross approximations and rough justice," *Officers for Justice,* 688 F.2d at 625, and thus "the question whether a settlement is fundamentally fair . . . is different from the question whether the settlement is perfect in the estimation of the reviewing court."  *Lane,* 696 F.3d at 819.

The amount offered in the Settlement – $3.49 million – is substantial.  Should the Settlement be approved, each non-excluded Settlement Class Member will automatically receive a check in the amount of $50 for each qualifying Eaze text message received – relief which compares more than favorably with per-claimant recoveries in prior settlements in similar TCPA cases.

For instance, automatic payments of $50 per text—which will generally result in payments of between $50 and $200 to each Settlement Class Member—is better relief than the per-text monetary relief provided to settlement class members in *Parker v. Universal Pictures, Inc., et al.*, No. 6:16-cv-01193-CEM-DCI (M.D. Fla.), a similar TCPA class action where a proposed settlement was recently granted final approval. *See id.*, Dkt. No. 163 at 12 (explaining that settlement agreement provides payments of between $35 and $185 to each settlement class member who submits a claim, depending on the number and the nature of the texts received).  The defendant in *Parker*, like Eaze in this case, utilized the texting services of Handstack, P.B.C., a/k/a Bitesize, a/k/a Jessica Lee, and in both cases Ms. Lee in turn utilized the data-brokerage services of Aristotle or a similar data broker to obtain lists of intended recipients of her clients' text messages.  *See id.*  However, the settlement in *Parker*, unlike the proposed Settlement here, required class members to submit claims in order to receive settlement payments. *See id.*  As discussed above, in this case all identifiable Settlement Class Members who do

14

not exclude themselves will automatically be sent checks amounting to $50 for each qualifying text received. Given the factual similarities between the claims in this case and in *Parker*, and the far superior claims processing and disbursement procedures in this case as compared with those in *Parker*, the automatic $50-per-text payments provided by the proposed Settlement constitute fair, reasonable, and adequate relief to members of the Settlement Class.

Pursuant to Section 11 of the "Procedural Guidance for Class Action Settlements" issued by the U.S. District Court for the Northern District of California, the proposed Settlement also compares favorably to a prior TCPA settlement involving text messages in which Plaintiffs' counsel served as class counsel, as reflected in the chart below:

| | *Lloyd v. Eaze Solutions, Inc.*, No. 18-cv-5176-JD (N.D. Cal.) | *Farnham v. Caribou Coffee Co.*, No. 16-cv-295-wmc (W.D. Wisc.) |
|---|---|---|
| **Monetary Relief** | Maximum of $3,490,800; automatic cash payments of $50/text to each Settlement Class Member | $8,500,00 common fund; each claiming class member received approximately $68 |
| **Number of Settlement Class Members** | Approximately 52,104 | Approximately 530,000 |
| **Number of Notices Delivered** | Over 96% of Settlement Class Members expected to receive direct notice | 503,900 Postcards 477,850 E-Mails |
| **Notice Methods** | Postcard Notice, Email Notice, Online Social Media Publication, CAFA Notice to AGs | Double-Postcard Notice, E-Mail, Online Ads, Notice to AGs |
| **Number and Percentage of Claiming Class Members** | Claims Forms not necessary for an estimated 96% of Settlement Class Members for whom an address is identified | 73,703 claimants, representing approximately 13.9% of the Settlement Class |
| **Average Recovery** | Each Settlement Class Member will receive automatic cash payment of $50 for each qualifying Eaze text received, without the need to file claim forms | Each Settlement Class member who filed a claim form received approximately $68 |
| **Cy Pres/Residual Funds Recipient Information** | Any residual, uncashed check funds will be returned to Eaze[4] | Uncashed check funds paid to two legal aid organizations |

---

[4]   The Parties expect that the amount of uncashed check funds that will be returned to Eaze will be minimal, given that the checks will all be for $50 or more and sent directly to Settlement Class Members.  Moreover, no claim forms will be required for approximately 98%+ of the class, and, in this way, this distribution plan differs from a typical reversion (*i.e.*, the entire amount will be paid by

15

| Settlement Admin Costs | Not to exceed $255,000 | $657,157.32 |
| --- | --- | --- |
| Attys' Fees/Costs | $437,500 (Approximately 12.5% of the total amount Eaze required to pay under Settlement) | $2,610,947.56 (1/3 of the Settlement Fund, net of administration costs) |

Moreover, historical data collected by Plaintiffs' counsel on numerous previously approved class action settlements in TCPA text message cases – of both the common fund and claims-made variety – further confirms the fairness, reasonableness, and adequacy of the relief provided by the Settlement in this case.  With respect to the common-fund variety, the following chart contains data on the class size (irrespective of the number of text messages received by each person), common fund size, and the fund-to-class-size value in 13 such settlements, as well as the average of the resulting 13 separate fund-to-class-size values:

| Case Name | Fund ($) | Class (#) | $ / # |
| --- | --- | --- | --- |
| *Douglas v. The Western Union Company*, No. 14-cv-1741 (N.D. Ill.) | $8,500,000 | 741,800 | $11.45 |
| *Melito v. American Eagle Outfitters, Inc.*, No. 14-cv-440 (S.D.N.Y.) | $14,500,000 | 618,301 | $23.45 |
| *Chimeno-Buzzi v. Hollister Co.*, No. 14-cv-23120 (S.D. Fla.) | $10,000,000 | 3,700,000 | $2.70 |
| *Farnham v. Caribou Coffee Company, Inc.*, 16-cv-295 (W.D. Wisc.) | $8,500,000 | 530,000 | $16.03 |
| *Brown v. Rita's Water Ice Franchise Company, LLC*, No. 15-cv-3509 (E.D. Pa.) | $3,000,000 | 110,328 | $27.19 |
| *Wright v. Lyft*, No., 14-cv-421 (W.D. Wash.) | $3,995,000 | 341,707 | $11.69 |
| *Pimental v. Google, Inc.*, No. 11-cv-2585 (N.D. Cal.) | $6,000,000 | 185,688 | $32.31 |
| *Willis v. iHeartMedia, Inc.*, No 2016 CH 02455 (Cir. Ct. Cook Cty., Ill.) | $8,500,000 | 400,000 | $21.25 |
| *Bloom v. Jenny Craig Inc.*, No. 1:18-cv-21820 (S.D. Fla.) | $3,000,000 | 644,160 | $4.65 |
| *Gergetz v. Telenav, Inc.*, No. 16-cv-4261 (N.D. Cal.) | $3,500,000 | 200,000 | $17.50 |
| *Lathrop v. Uber Technologies, Inc.*, 15-cv-6942 (N.D. Ill.) | $20,000,000 | 1,000,000 | $20.00 |
| *Soular et al. v. Northern Tier Energy LP*, No. 15-cv-556 (D. Minn.) | $2,200,000 | 175,000 | $12.57 |

---

Eaze, 98% or more of which will be paid by the administrator to Settlement Class Members, and some minimal amount of funds will be returned to Eaze *only* if the checks are not cashed).

16

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

| | | | |
|---|---|---|---|
| *Masson v. Tallahassee Dodge Chrysler Jeep, LLC*, No. 17-22967-CIV-M0ORE (S.D. Fla. May 8, 2018) | $850,000 | 17,044 | $49.87 |
| **AVERAGE FUND / CLASS SIZE FIGURE** | | | **$19.28** |

Thus, the $50 to $200 per Settlement Class Members exceeds these data points. Moreover, based on the average fund-to-class-size value of $19.28 computed above, the fair market rate for an all-cash common fund settlement in this case, on behalf of 52,104 settlement class members (irrespective of the number of text messages received by each person), works out to $1,004,565.12 (52,104 * $19.28). Thus, the proposed Settlement reached by the Parties in this case provides more than three times the amount of relief that would typically be obtained for a class of this size in a case of this type through a common-fund settlement.

As for prior claims-made TCPA text message settlements, the following chart contains data on the per-claimant relief (irrespective of the number of text messages received by each person) provided in 11 such settlements, as well as the average of those resulting 11 values:

| Case Name | $ / Claimant |
|---|---|
| *Manouchehri v. Styles for Less, Inc.*, Case No. 14cv2521 NLS, 2016 WL 3387473, at *2, 5 (S.D. Cal. June 20, 2016) | $10.00 cash (or $15.00 voucher) |
| *Marengo v. Miami Resch. Assocs., LLC*, No. 1:17-cv-20459-KMW (S.D. Fla. July 20, 2018) | $130.00 cash |
| *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, No. 3:11-md-02261 (S.D. Cal. Feb. 20, 2013) | $12.97 cash (or $17.29 voucher) |
| *Estrada v. iYogi, Inc.*, No. 2:13–01989 WBS CKD, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) | $40.00 cash |
| *Cubbage v. Talbots, Inc.*, No. 09-cv- 00911-BHS (W.D. Wash. Nov. 5, 2012) | $40.00 cash (or $80.00 voucher) |
| *Wijesinha v. Susan B. Anthony List, Inc.*, No. 1:18-cv-22880-JEM (S.D. Fla. 2019) | $5.00 cash |
| *Satterfield v. Simon & Schuster, Inc., et al.*, No. 06-cv-2893 (N.D. Cal. 2010) | $175.00 cash |
| *Goldschmidt v. Rack Room Shoes, Inc.*, No. 1:18-cv-21220-KMW (S.D. Fla. 2019) | $5.00 cash (and $10.00 voucher) |
| *Poirier v. CubaMaxTravel, Inc.*, No. 1:18-cv-23240-CMA (S.D. Fla. 2018) | $7.00 cash |
| *Weinstein v. The Timberland Co.*, No. 06-cv-00484 (N.D. Ill. 2008) | $150 cash |
| *Mohamed v. Off Lease Only, Inc.*, No. 1:15-cv-23352-MGC (S.D Fla. 2019) | $50.00 cash |
| **AVERAGE $ / CLAIMANT FIGURE** | **$56.82** |

17

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

1   Thus, the $50 to $200 per Settlement Class Members is well above the majority of these data points.[5]

2   Moreover, under the proposed Settlement negotiated in this case, Settlement Class Members need not

3   submit claims at all to receive payments, and each Settlement Class Member will automatically

4   receive $50 for each text received (as opposed to each person receiving the same amount of relief

5   regardless of the number of text messages received, as was the case in the 11 settlements reflected

6   above). Many Settlement Class Members who received multiple qualifying text messages from Eaze

7   will receive checks of $100 or more if the proposed Settlement is finally approved. By any reasonable

8   comparative measure, the proposed revised Settlement in this case represents an excellent result for

9   the Settlement Class.

10      Additionally, there are a number of legal uncertainties associated with continued litigation

11   that pose substantial risk of non-recovery to the Settlement Class, further underscoring the fairness,

12   reasonableness, and adequacy of the proposed Settlement. *See Smith v. CRST Van Expedited, Inc.*,

13   No. 10-cv-1116, 2013 WL 163293, at *3 (S.D. Cal. Jan. 14, 2013) (where "the settlement avoids the

14   risks of extreme results on either end, *i.e.,* complete or no recovery . . . it is plainly reasonable for the

15   parties at this stage to find that the actual recovery realized and risks avoided here outweigh the

16   opportunity to pursue potentially more favorable results through full adjudication. These factors

17   support approval.").

18      <u>First</u>, through its highly qualified and experienced counsel, Eaze indicated to Plaintiffs'

19   counsel that, had this litigation continued, it would have argued that the subject text messages were

20   not initiated by Eaze but rather by Handstack, P.B.C., a/k/a Bitesize, a rogue third-party marketing

21   company over which Eaze insists that it did not maintain control or oversight.  Although Plaintiffs

22   reject this position and are confident that Handstack acted either as Eaze's actual or apparent agent,

23   or at the very least that Eaze ratified Handstack's conduct in transmitting the subject messages, this

24   Court could easily have disagreed.  A determination by the Court that Eaze neither "initiated" the text

25   messages within the meaning of the TCPA nor acted as Handstack's principal in sending them would

26   ─────────────
   [5]      Many approved TCPA claims-made class action settlements involving text messages provided
27   only voucher relief to claimants.  *See, e.g., Kazemi v. Payless Shoesource, Inc.*, No. 3:09-cv-05142
   (N.D. Cal. Apr. 2, 2012) ($25 voucher).  The chart above analyzes only TCPA class action settlements
28   involving text messages where claimants received cash awards.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

1  have left the Settlement Class without claims for relief against Eaze in this litigation (and unlikely to

2  recover any relief from Handstack, a company facing litigation on numerous fronts that appears to be

3  insolvent). At a minimum, the independent conduct of Handstack would have been relevant for the

4  willfulness of any TCPA violations.

5       Second, there are currently circuit splits regarding the relevant TCPA law and protracted

6  litigation here might have resulted in a delay with the law evolving in Eaze's favor.  For example,

7  while one of the Parties' primary disagreements in this case concerned the meaning of the term

8  "automatic telephone dialing system," an issue which the Ninth Circuit resolved in *Marks v. Crunch*

9  *of San Diego*, 904 F.3d 1041 (9th Cir. 2018), there is a circuit split on the correct definition of an

10  ATDS, a petition for certiorari pending in the United States Supreme Court (*Facebook, Inv. v. Duguid*,

11  No. 19-511), and the FCC appears likely to weigh in on with an agency decision or rulemaking in the

12  near future.  *See, e.g., Public Notice on Interpretation of the Telephone Consumer Protection Act* (CG

13  Docket No. 18-152; CG Docket No. 02-278).  Any FCC decision interpreting the definition of ATDS

14  may well trump *Marks* and control on the issue.  So while the Plaintiffs firmly believe that Eaze's

15  text messages were sent using technology that qualifies as an ATDS under the current, post-*Marks*

16  meaning of the term, there is nonetheless a substantial risk that the Supreme Court or FCC will issue

17  an interpretation of the term narrow enough to exempt Eaze's technology, leaving the Plaintiffs and

18  Settlement Class Members without causes of action under the TCPA and entitled to no relief.

19       Third, the Parties disagree whether the Settlement Class could be certified on a contested

20  motion for class certification. During the litigation and the Parties' settlement discussions, Eaze

21  steadfastly maintained, inter alia, that individual issues among Settlement Class members would

22  predominate and preclude class certification.  For example, Plaintiff Mena and many other proposed

23  Settlement Class members became Eaze customers after receiving the text messages at issue in this

24  case, and Eaze maintains that Plaintiff Mena and these other Settlement Class members agreed to

25  arbitrate the claims alleged in this action.  In addition, Eaze indicated that it would have opposed a

26  contested motion for class certification by arguing that variations across the content and context of

27  its text messages present certain individualized issues among Settlement Class Members, including

28

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

1   between Plaintiff Lloyd (who did not receive a Handstack text message) and the vast majority of

2   Settlement Class Members (who received text messages from Handstack). While Plaintiffs disagree

3   and believe the Settlement Class is well-suited for certification, including on a contested basis,

4   winning class certification was still far from a sure thing.

5       Fourth, even if Plaintiffs were to win class certification, there would remain a risk of losing a

6   jury trial.  And even assuming they prevailed at trial, any judgment or order granting class certification

7   could be reversed on appeal and, even if they were not, any class-wide award "would most surely

8   bankrupt the prospective judgment debtor," *see In re Capital One*, 80 F. Supp. 3d at 790.  A pyrrhic

9   victory for the Settlement Class at trial would be in no one's interest.

10      Finally, even assuming Eaze *could* satisfy a class-wide judgment in this case – which, given

11  the number of text messages sent to the Settlement Class, would amount to roughly either $30 million

12  or $90 million aggregate, measured at $500 (or $1,500 if trebled) per violation – any such judgment

13  would likely be reduced on due process grounds.  In *Golan v. Veritas Entm't, LLC*, No. 4:14CV00069

14  ERW, 2017 WL 3923162 (E.D. Mo. Sept. 7, 2017), for example, a class of TCPA plaintiffs won a

15  judgment at trial for $1.6 billion ($500 for each of approximately 3.2 million violations), only to have

16  the trial court remit the award to $32 million – or approximately $10 per violation – on the grounds

17  that the $1.6 billion awarded by the jury was so annihilative as to violate the Due Process clause of

18  the U.S. Constitution.  *See Golan*, 2017 WL 3923162, at *2-3. The trial court's decision in *Golan* was

19  recently affirmed, in its entirety, by the Eighth Circuit. *Golan v. FreeEats.com, Inc*., No. 17-3156,

20  2019 WL 3118582 (8th Cir. July 16, 2019).   In this case, each Settlement Class Member will

21  automatically receive $50 for each text message received under the Settlement – which is five times

22  greater than the $10 ultimately recovered for each violation in *Golan*, after years of uncertain

23  litigation and a total victory for the class at trial.  The possibility of the same outcome here, even if

24  the Settlement Class were to prevail at trial years from now, further underscores the reasonableness

25  of the immediate, certain, and meaningful relief provided by the Settlement.

26      Accordingly, the first and most important factor weighs heavily in favor of finding the

27  Settlement fair, reasonable and adequate.  *See In re Tableware Antitrust Litig*., 484 F. Supp. 2d 1078,

28

1   1079-80 (N.D. Cal. 2007) (settlement should be preliminarily approved if it is free of "obvious

2   deficiencies" and generally falls within the range of "possible" approval.).

### 2.   Continued Litigation Would Be Complex, Costly, and Lengthy

4   Preliminary approval is also favored where settlement allows the class to avoid the inherent

5   risk, complexity, time, and cost associated with continued litigation.  *See Nat'l Rural Telecommc'ns*

6   *Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("The Court shall consider the

7   vagaries of litigation and compare the significance of immediate recovery by way of the compromise

8   to the mere possibility of relief in the future, after protracted and expensive litigation.").

9   This would be lengthy and very expensive litigation if it were to continue, involving extensive

10   motion practice, including, inter alia, motions to dismiss and to compel arbitration, a motion for class

11   certification (and possibly a motion for decertification), motions for summary judgment and various

12   pretrial motions, as well as the retention of experts, preparation of expert reports, and conducting

13   expert depositions.  *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("[C]lass action suits

14   have a well deserved reputation as being most complex.").  The case would probably not go to trial

15   for over a year.  And even if the Settlement Class recovered a judgment at trial in excess of the $3.49

16   million provided by the Settlement, post-trial motions and the appellate process would deprive them

17   of any recovery for years, and possibly forever in the event of a reversal.

18   Rather than embarking on years of protracted and uncertain litigation, Plaintiffs and their

19   counsel negotiated a Settlement that provides immediate, certain, and *meaningful* relief to all

20   Settlement Class members.  *See DIRECTV, Inc*., 221 F.R.D. at 526.  Accordingly, this factor weighs

21   in favor of finding the Settlement fair, reasonable and adequate. *See Borcea v. Carnival Corp*., 238

22   F.R.D. 664, 674 (S.D. Fla. 2006) (noting that " [i]t  has been held proper to take the bird in the hand

23   instead of a prospective flock in the bush").

### 3.   Proposed Class Counsel are Competent, Well-Informed and Experienced, and Strongly Endorse the Settlement

25   Courts may also examine the opinion of competent counsel as to whether a proposed

26   settlement is fair, reasonable, and adequate.  *Officers for Justice,* 688 F.2d at 625.  In assessing the

21

1  qualifications of counsel under this factor, a court may rely upon affidavits submitted by class counsel

2  as well as its own observations of class counsel during the litigation.  *Id.*

3        Plaintiff's counsel and proposed Class Counsel, Frank S. Hedin and David W. Hall of Hedin

4  Hall LLP, have extensive experience in similar complex class action litigation, including serving as

5  class counsel in similar TCPA class actions concerning the transmission of allegedly unsolicited text

6  message advertisements. (*See generally* Declaration of Frank S. Hedin ("Hedin Decl."); Declaration

7  of David W. Hall ("Hall Decl.").)  Both Mr. Hedin and Mr. Hall strongly endorse this Settlement,

8  which was negotiated at arm's length before an experienced mediator.  (*See id.)*

9        Accordingly, this factor also weighs in favor of finding the Settlement fair, reasonable and

10  adequate.  *See, e.g., Smith*, 2013 WL 163293, at *3 (given their "experience and understanding of the

11  strengths and weaknesses of cases such as this, class counsel's endorsement weighs in favor of final

12  approval."); *Bellinghausen v. Tractor Supply Co*., 306 F.R.D. 245, 257 (N.D. Cal. 2015) ("The trial

13  court is entitled to, and should, rely upon the judgment of experienced counsel for the parties."

14  (citation omitted)).

15      **4.  The Settlement is the Product of a Thorough Investigation, Efficiently Prosecuted Litigation, and Arm's-Length Negotiations**

16        The stage of the proceedings and the amount of discovery that has been completed at the time

17  a proposed settlement is reached also bears on whether the settlement is fair, reasonable, and adequate.

18  *Lane,* 696 F.3d at 819.

19        The proposed Settlement was reached after months of hard-fought litigation and was informed

20  by counsel's thorough review and analysis of voluminous documents and ESI produced by Eaze and

21  related third parties, concerning every aspect of this case.  Plaintiffs' counsel additionally performed

22  extensive and wide-ranging pre-filing and post-filing investigations concerning the recipients of

23  Eaze's text messages, the marketing company retained by Eaze to send them, and the dialing

24  technology used to deliver them.  Armed with this information, Plaintiffs and their counsel had "a

25  clear view of the strengths and weaknesses" of the case and were in a strong position to negotiate a

26  fair, reasonable, and adequate settlement on behalf of the Settlement Class, at mediation and beyond.

27

28

*In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd* 798 F.2d 35 (2d Cir. 1986).

Mediation was hard-fought and lasted for over ten hours, and the initial proposed Settlement was reached after several more weeks of post-mediation negotiations between the Parties.  Class Counsel obtained and thoroughly reviewed documents, ESI, and testimony to confirm the size of the Settlement Class, including by way of a deposition of Handstack, P.B.C.'s CEO pursuant to Rule 30(b)(6).  Following the Court's denial of the initial proposed Settlement, the Parties continued to negotiate a revised settlement for several months, including with the assistance of Mr. Meyer, the Parties' retained mediator, ultimately reaching the proposed Settlement shortly after resuming the litigation. Because the Settlement is the product of arm's length negotiations between experienced counsel, and after significant discovery has occurred, the second factor also weighs in favor of finding the proposed Settlement fair, reasonable, and adequate.  *See Rodriguez v. W. Publishing*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."); *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) ("An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining."); 4 *Newberg* § 11.41 (presumption of fairness exists where a proposed class settlement "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced.").[6]

Accordingly, this factor also weighs in favor of finding the Settlement fair, reasonable and adequate.

**B.    The Settlement Class Should Be Provisionally Certified for Settlement Purposes**

The Court must next find that the proposed Settlement Class is appropriate for provisional certification pursuant to Rule 23(a) and that it fits into one of the three subsections of Rule 23(b). *See*

---

[6]    *See also, e.g.*, *Adams v. Inter-Con Sec. Sys., Inc.*, No. 06-cv-5428, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *In re Indep. Energy Holdings PLC*, No. 00-cv-6689, 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("the fact that the settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable").

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

1    *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 621 (1997).  Provisional certification will allow the

2    Settlement Class to receive notice of the Settlement and its terms, including the rights of Settlement

3    Class Members to submit a Claim Form and recover a Cash Award if the Settlement is finally

4    approved, to be heard on the Settlement's fairness at the Fairness Hearing, and to opt out of the

5    Settlement.

6        For the reasons below, the Court should provisionally certify the Settlement Class –

7    defined as "[a]ll Persons within the United States who, between August 23, 2014 and the Preliminary

8    Approval Date, were sent one or more text message(s) (other than one containing a uniquely-

9    identifying verification code and/or uniquely-identifying verification URL to complete an online

10   registration form) by Eaze Solutions, Inc. or an affiliate, subsidiary, or agent of Eaze Solutions, Inc.,

11   at a time when such Person had not registered for or initiated the registration process for Eaze

12   Solutions, Inc.'s services (i.e., a 'Non-user' of Eaze Solutions, Inc.)" – under Rule 23(a) and Rule

13   23(b)(3).

14   ### 1.  The Requirements of Rule 23(a) Are Satisfied

15       Rule 23(a) requires that (1) the proposed settlement is so numerous that joinder of all

16   individual class members is impracticable (numerosity); (2) there are questions of law or fact common

17   to the proposed settlement class (commonality); (3) the plaintiff's claims are typical of those of the

18   class (typicality), and (4) the plaintiff and class counsel will adequately protect the interests of the

19   class (adequacy).  Fed. R. Civ. P. 23(a)(1)–(4).  The Settlement Class readily satisfies each of these

20   requirements.

21   ### a.    Numerosity

22       The first requirement of Rule 23(a) is that "the class is so numerous that joinder of all

23   members is impracticable." Fed. R. Civ. P. 23(a)(1).  The Settlement Class consists of approximately

24   52,104 individuals dispersed throughout the United States.  Joinder of all Settlement Class Members

25   is obviously impractical.  *See Celano v. Marriott Int'l Inc.*, 242 F.R.D. 544, 548-49 (N.D. Cal. 2007)

26   (numerosity is satisfied where at least 40 class members).

27       Accordingly, the numerosity requirement of Rule 23(a) is satisfied.

28

24

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

**b.    Commonality**

The second requirement is that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).    The commonality requirement is satisfied where a plaintiff asserts claims that "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011).

Many questions of law and fact are common to the Settlement Class in this case, including whether Eaze's dialing technology constitutes an ATDS, whether the texts Eaze sent to the Settlement Class members were "advertisements" under the TCPA, whether Eaze obtained the requisite consent prior to texting the Settlement Class members, and whether Eaze willfully or knowingly transmitted text messages to the Settlement Class in violation of the TCPA. *See Whitaker v. Bennett Law, PLLC*, No. 13-3145, 2014 WL 5454398, at *5 (S.D. Cal. Oct. 27, 2014) (finding commonality satisfied where the central issue was whether the defendant used an ATDS to make calls); *see also G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869, *12 (N.D. Ill. Aug. 20, 2009) (finding numerous common questions underpinning TCPA claims).

Accordingly, the commonality requirement of Rule 23(a) is satisfied.

**c.    Typicality**

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  "The typicality requirement is not demanding." *Fogarazzao v. Lehman Bros., Inc.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005).

Plaintiffs' claims are typical of the claims of Settlement Class members because their claims arise out of the same event, practice or course of conduct that gives rise to the claims of the other class members and are based on the same legal theory. *See, e.g., Whitaker*, 2014 WL 5454398, at *5 (finding typicality satisfied because each class member's claim "revolves exclusively around [the defendant's] conduct as it specifically relates to the alleged violations of the TCPA"); *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 569 (W.D. Wash. 2012) (finding typicality satisfied where the

1   plaintiff's claims, "like all class members' claims, arise from text marketing campaigns

2   commissioned by Papa John's franchisees and executed by the same marketing vendor . . . .").

3   Plaintiffs and each Settlement Class member received one or more text message from Eaze, sent via

4   the same dialing technology and pursuant to the same text message marketing campaigns.  Moreover,

5   Plaintiffs seek the same statutory damages on behalf of themselves and all Settlement Class members.

6          Accordingly, the typicality requirement of Rule 23(a) is satisfied.

7                    **d.      Adequacy of Representation**

8          The fourth and final Rule 23(a) requirement is "adequacy of representation," Fed. R. Civ.

9   P. 23(a)(4), which has two components: (1) the representatives must not possess interests which are

10  antagonistic to the interests of the class; and (2) the representatives' counsel must be qualified,

11  experienced, and generally able to conduct the proposed litigation.  *See Ellis v. Costco Wholesale*

12  *Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).

13         Both components are satisfied because Plaintiffs' interests in this litigation are aligned with,

14  and not antagonistic to, those of the Settlement Class, and because Plaintiffs hired qualified and

15  competent counsel.  Plaintiffs each challenge the same alleged unlawful conduct that each Settlement

16  Class member challenges, and they each seek the same monetary relief that is sought by each

17  Settlement Class member. Plaintiffs have retained competent counsel, provided substantial

18  assistance to their counsel in advance of and during the litigation, vigorously prosecuted the case on

19  behalf of the Settlement Class, and assisted their counsel in reaching a proposed resolution to

20  this action on behalf of the Settlement Class. Finally, Plaintiffs' counsel have substantial class

21  action litigation experience, having successfully investigated, prosecuted, and resolved many

22  complex class actions, including prior TCPA class actions similar to the instant matter. (*See generally*

23  Hedin Decl.; Hall Decl.)

24         Accordingly, the adequacy of representation requirement of Rule 23(a) is satisfied.

25               **2.   The Requirements of Rule 23(b)(3) Are Satisfied**

26         Finally, because Plaintiffs seek provisional certification under Rule 23(b)(3), Plaintiffs must

27  additionally show (1) that common questions of law or fact predominate over questions affecting only

28

---

26

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

1   individual members of the class (predominance); and (2) that a class action is superior to other

2   available methods of resolving the controversy (superiority).   Fed. R. Civ. P. 23(b)(3).[7]   Both

3   requirements are easily satisfied here.

**a.      Common Questions Predominate**

5          The predominance requirement of Rule 23(b)(3) is satisfied because common questions

6   comprise a substantial aspect of the case and can be resolved for all Settlement Class members in a

7   single adjudication.  *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("When

8   'one or more of the central issues in the action are common to the class and can be said to predominate,

9   the action may be considered proper under Rule 23(b)(3) . . .'" (citation omitted)); *True Health*

10  *Chiropractic, Inc. v. McKesson Corporation*, 896 F.3d 923, 932 (9th Cir. 2018); *accord Roach v. T.L*

11  *Cannon Corp.*, 773 F.3d 401, 405 (2d Cir. 2015) (predominance is satisfied "if resolution of some of

12  the legal or factual questions that qualify each class member's case as a genuine controversy can be

13  achieved through generalized proof, and if these particular issues are more substantial than the issues

14  subject only to individualized proof").

15         The vast majority of text messages in question were sent to Settlement Class members

16  pursuant to a common marketing campaign and a uniform course of conduct.  Thus, the central

17  questions    in    this    case–whether    Eaze    sent    text    message    "advertisements"    or

18  "telemarketing" material to members of the Settlement Class via an "automatic telephone dialing

19  system," and without prior "express written consent" – are each capable of resolution on a class-wide

20  basis by looking to Eaze's records (together with those of Eaze's marketing affiliates Handstack,

21  P.B.C, Iterable, Inc., and Twilio, Inc.) and Eaze's dialing technologies (together with that of Twilio,

22  Inc.).  *See, e.g., Sadowski v. Med1 Online, LLC*, No. 07 C 2973, 2008 U.S. Dist. LEXIS 41766, *13

23  (N.D. Ill. May 27, 2008) (finding common issues such as "how numbers were generated from

24  Defendant's database and whether Defendant's actions . . . violated the TCPA" to predominate, and

---

26  [7]        Because the Court is called upon to assess the requirements of Rule 23 in the context of a
    settlement, the Court need not consider whether any manageability problems would arise at trial if
27  the Settlement Class is certified.    *Amchem*, 521 U.S. at 620 ("Confronted with a request for
    settlement-only  class certification, a district court need not inquire whether the case, if tried, would
28  present intractable management problems . . . for the proposal is that there be no trial.").

27

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

that the issue of consent might be resolved through common proof such as "the source of the numbers" and "how Defendant selected who was to receive the [ ] faxes").  Because every member of the Settlement Class received an offending text message at a time when he or she had not enrolled in or even attempted to enroll in Eaze's services (much less provided Eaze their telephone number), Eaze cannot show that it had obtained anyone's "express written consent" prior to texting the entire Settlement Class.  *See Johansen v. GVN Mich., Inc.*, No. 1:15-cv-00912, 2015 WL 3823036, at *1 (N.D. Ill. June 18, 2015) (noting burden is on the defendant to plead consent affirmative defense).  Accordingly, in this case, unlike many TCPA actions, there are no individualized issues of consent capable of predominating over issues common to the Settlement Class.

Because there are no apparent issues requiring individualized proof, the predominance requirement is satisfied for purposes of preliminary approval.

### b.   Class Treatment of Plaintiffs' Claims is Superior

Rule 23(b)(3) also requires that a class action be superior to other available methods for adjudicating the controversy.  It is axiomatic that cases involving "multiple claims for relatively small individual sums" are well suited to class treatment.  *Local Joint Exec. Bd. of Culinary/ Bartender Trust Fund v. Las Vegas Sands, Inc*., 244 F.3d 1152, 1163 (9th Cir. 2001); *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."); *see also Amchem,* 521 U.S. at 617 (noting that "the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all").

A class action is the superior method for the fair and efficient adjudication of these claims.  Plaintiffs' claims are shared by approximately 52,104 other consumers, each of whom received at least one text message promoting the sale of goods or services from Eaze, via the same dialing technology, during the same four-year statutory period.  The resolution of all claims of all Settlement Class Members in a single proceeding promotes judicial efficiency and avoids inconsistent decisions.  *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (noting "the class-action device

28

1   saves the resources of both the courts and the parties by permitting an issue potentially affecting every

2   class member to be litigated in an economical fashion under Rule 23").  Further, the statutory damages

3   available under the TCPA ($500 per violation, or $1,500 if the violation is willful) are small in

4   comparison to the costs of litigation.  As a result, it is unlikely any Settlement Class member would

5   be willing or able to pursue relief on an individual basis.

6      Accordingly, the superiority requirement is satisfied for purposes of preliminary approval.

7   The Court should provisionally certify the Settlement Class.

8      **C.**   **Plaintiffs' Counsel Should Be Appointed Class Counsel**

9      Upon certifying a class, Rule 23 requires that a court appoint class counsel who will "fairly

10  and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B), (2), (4).  In appointing

11  class counsel, the court must consider (1) the work counsel has done in identifying or investigating

12  potential claims; (2) counsel's experience in handling class actions, other complex litigation, and the

13  types of claims asserted in the case; (3) counsel's knowledge of the applicable law, and (4) the

14  resources class counsel has committed to representing the class.  Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv);

15  *Cabiness v. Educational Fin. Solutions, LLC*, No. 16-cv-1109-JST, 2018 WL 3108991, at *4 (N.D.

16  Cal. June 25, 2018).

17     In this case, proposed Class Counsel, Frank S. Hedin and David W. Hall of Hedin Hall LLP,

18  readily satisfy the criteria of Rule 23(g).  First, Plaintiffs' counsel and proposed Class Counsel have

19  devoted substantial time, effort, and resources to this litigation, beginning with their initial

20  investigation of Plaintiffs' allegations, continuing through almost a year of vigorous litigation, formal

21  discovery and expert consultation, and ending with hard-fought settlement negotiations, a lengthy

22  mediation and confirmatory discovery. (*See* Hedin Decl. ¶ 9.)  Second, Plaintiffs' counsel have

23  extensive experience in complex class action litigation, in district courts of the Ninth Circuit and

24  elsewhere, and Mr. Hedin previously served as class counsel in two prior similar cases involving the

25  alleged unsolicited transmission of advertising and marketing text messages in violation of the TCPA,

26  *Chimeno-Buzzi, et al. v. Hollister, Co.*, No. 14-cv-23120-MGC (S.D. Fla.) ($10 million class

27  settlement finally approved on behalf of 3.7 million settlement class members, with each claiming

28

29

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

1   settlement class member receiving approximately $40); *Farnham v. Caribou Coffee Company, Inc.*,

2   No. 16-cv-295-wmc (W.D. Wisc.) ($8.5 million class settlement finally approved on behalf of

3   approximately 530,000 settlement class members, with each claiming settlement class member

4   receiving approximately $68).

5          Accordingly, the Court should appoint Plaintiffs' counsel at Hedin Hall LLP as Class Counsel.

6   **D.     The Court Should Approve the Proposed Notice Plan**

7          "Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class

8   members who would be bound by a proposed settlement, voluntary dismissal, or compromise'

9   regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for*

10  *Complex Litigation, supra*, at § 21.312.   The best practicable notice is that which is "reasonably

11  calculated, under all the circumstances, to apprise interested parties of the pendency of the action and

12  afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*,

13  339 U.S. 306, 314 (1950).   The notice must contain specific information in plain, easily understood

14  language, including the nature of the action and the rights of class members. Fed. R. Civ. P.

15  23(c)(2)(B)(i)–(vii).

16         In this case, the Settlement Agreement provides for a comprehensive Settlement Class Notice

17  Program under which the Settlement Administrator will directly provide the Class Notice to

18  Settlement Class Members.

19         The Parties have already provided the Settlement Administrator with a complete list of the

20  cellular telephone numbers appearing in its records (and the records of third-party marketing

21  companies retained by Eaze) as having received the qualifying text messages. (*See* Peak Decl. ¶ 7.)

22  The Settlement Administrator has been able to identify names and likely current addresses of the

23  individuals who subscribed to those telephone numbers at the time the subject text messages were

24  received. (*Id.*) Immediately after the Court enters the Preliminary Approval Order directing

25  commencement of the Settlement Class Notice Program, the Settlement Administrator will update

26  these records through reverse-lookup procedures to ensure that the physical addresses Eaze has on

27  file for Settlement Class Members are as current as possible, and will utilize additional skip-tracing

28

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

1   procedures to attempt to identify physical addresses for the Settlement Class members for whom no

2   address or name is presently on file. (*See* Peak Decl. ¶¶ 13-14). Each Settlement Class Member for

3   whom the Settlement Administrator has identified a current postal address will be sent the Class

4   Notice via U.S. postal mail. (*Id.* ¶ 11; *see also Manual for Complex* Litigation*, supra*, § 21.311, at

5   287 ("When the names and addresses of most class members are known, notice by mail usually is

6   preferred.").) As previously discussed, to date a postal address has been identified by the Settlement

7   Administrator, with the Parties' assistance, for approximately 96.3% of Settlement Class Members.

8   (*See* Peak Decl. ¶¶ 11).

9          The Class Notice will, inter alia: (i) describe the essential terms of the Settlement, the relief

10   provided by the Settlement, the specific amount of each Cash Award that each Settlement Class

11   member will receive (unless he or she submits a request for exclusion), and the postal address to

12   which the Settlement Administrator will mail such Cash Award in check form (unless an updated

13   address is provided by the Settlement Class Member on the Settlement Website or a request for PayPal

14   payment is made on the Settlement Website); (ii) disclose Class Counsel's intention to file an

15   application with the Court for Service Awards to the Class Representatives and an Attorneys' Fee

16   Award to Class Counsel, the specific amounts that will be requested for each, and the date on which

17   such application will be filed with the Court; (iii) indicate the time and place of the hearing to consider

18   final approval of the Settlement, and the method for filing objections to and/or requests for exclusion

19   from the Settlement; (iv) provide information concerning the timing of the distribution of Cash

20   Awards to Settlement Class Members; and (v) prominently display the address of the Clerk of Court,

21   the Settlement Administrator, and Class Counsel and the procedure for making inquiries concerning

22   the Settlement.  The Class Notice also invites Settlement Class Members to visit the Settlement

23   Website or to call the IVR toll-free telephone number to obtain additional information about the

24   Settlement, submit requests for exclusion, provide an updated postal address to which a Settlement

25   Class Member's check should be sent, and request payment via PayPal in lieu of payment by check.

26          To the extent a Class Notice sent by postal mail is returned as undeliverable, the Settlement

27   Administrator will attempt to locate an alternative address for the Settlement Class Member (using

28

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

the NCOA directory and other third-party databases) and will re-send another copy of the Class Notice to any such alternative address that is identified.  To the extent a postal address cannot be located for a Settlement Class Member, the Settlement Administrator will send the Class Notice to any e-mail address available for the Settlement Class Member.  And to the extent the Settlement Administrator cannot identify either a postal address or an e-mail address for a Settlement Class Member – a circumstance that the Parties and the Settlement Administrator will exist as to approximately 3-4% of Settlement Class Members – the Settlement also provides for a robust publication notice plan on social media (both Facebook and Twitter) that will result in the dissemination of millions of advertisements aimed at reaching these Settlement Class Members who were unable to receive direct notice by postal mail or e-mail.  *See Mullane*, 339 U.S. at 314 (explaining that Rule 23 "requires  that individual  notice  in 23(b)(3) actions be given to class members who can be identified through reasonable effort."); *see also* Fed. R. Civ. P. 23(e)(1) (calling for notice to be provided in a "reasonable manner to all class members who would be bound by the proposal").) These electronic social media notices will also direct Settlement Class Members to the Settlement Website.

The Settlement Website will provide access to the long-form Class Notice, as well as answers to frequently asked questions, the toll-free Settlement telephone number, and copies of the full Settlement Agreement and other important documents (including the operative Complaint, this Motion, all Orders of the Court concerning the Settlement, and Plaintiffs' forthcoming motions for an Attorneys' Fee Award and Service Awards and for final approval of the Settlement). (*See* Peak Decl. ¶ 17.)  The Settlement Website will also contain web-based forms for Settlement Class Members to submit updated postal addresses to ensure the proper delivery of Settlement checks, to submit requests that their Cash Award be sent via PayPal payment in lieu of by check, and to submit requests for exclusion from the Settlement.  Claim Forms will also be available on the Settlement Website and from the Settlement Administrator upon request to the extent a Settlement Class Member for whom a postal address could not be identified wishes to submit a claim.

The proposed Settlement Class Notice Program is robust, comprehensive, and informative, effectuating the Class Notice directly to approximately 96.3% of Settlement Class members; notifying

1  additional members of the Settlement Class through publication, the Settlement Website, and the

2  automated toll-free Settlement telephone number; and providing for the submission of address

3  updates, requests for exclusion, and requests for PayPal payment on the Settlement Website.

4      As discussed above, the Settlement Administrator will automatically mail a check (or make a

5  PayPal deposit if requested) to each Settlement Class Member who does not exclude himself or herself

6  from the Settlement, with such checks being mailed to the same addresses to which the Class Notices

7  were mailed, except in the event a Settlement Class Member provides an updated address on the

8  Settlement Website or where a Class Notice is returned as undeliverable and an updated address is

9  identified by the Settlement Administrator, in which cases the Settlement Administrator will

10 automatically mail checks to such Settlement Class Members' updated addresses.

11     In denying Plaintiffs' motion for preliminary approval of the Parties' initial proposed

12 settlement, the Court "f[ound] inadequate the lack of discussion about the option of providing notice

13 to the class via text message." (ECF No. 31 at 1.)  Having thoroughly considered the potential for

14 disseminating notice to the Settlement Class by text message, Plaintiffs and their counsel respectfully

15 do not believe that such an approach would be in the best interests of the Settlement Class.

16     For one thing, sending tens of thousands of unsolicited text messages to telephone numbers

17 that are believed to belong to Settlement Class Members, violative of the TCPA or not, would

18 nonetheless be invasive of these individuals' privacy and thus inconsistent with the privacy interests

19 that this litigation seeks to advance.  (*See, e.g.,* Amend. Compl. ¶ 10, ECF No. 24 at 3 ("SMS and

20 MMS text messages are directed to a wireless device through a telephone number assigned to the

21 device. When an SMS or MMS text message is successfully transmitted, the recipient's wireless

22 phone alerts the recipient that a message has been received. Because wireless telephones are carried

23 on their owners' persons, SMS and MMS text messages are received virtually anywhere in the

24 world."); *id.* ¶ 12, ECF No. 24 at 3 ("Moreover, unsolicited text-message advertisements are

25 distracting and aggravating to receive and intrude upon their recipients' seclusion.").)

26     Moreover, by receiving a text message from the Settlement Administrator, and being forced

27 to access the Settlement Website and download any documents (such as a PDF of the Class Notice)

28

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

1  accessible via hyperlinks provided in such text message, many Settlement Class Members would be

2  charged texting and data costs by their cellular carriers. *See, e.g., Bakhtiar v. Info. Res. , Inc.*, No.

3  17-cv-4559-JST (N.D. Cal. Jul. 26, 2018) (rejecting plan to send class notice by text message because,

4  inter alia, it may force class members "to incur further charges from their cellular phone service

5  provider depending on their text and/or data plans"); *see also* Amend. Compl. ¶ 11, ECF No. 24 at 3

6  ("Unlike more conventional advertisements, SMS and MMS text-message advertisements can

7  actually cost their recipients money, because wireless phone users must often pay their service

8  providers for each text message received or incur a usage allocation deduction to their text messaging

9  or data plan, regardless of whether the message was authorized.").) Additionally, any text messages

10  sent by the Settlement Administrator, regardless of their content, would be from unrecognized

11  numbers and thus likely misconstrued as scams by many Settlement Class Members.

12  Sending the Class Notice directly to each Settlement Class Member by postal mail, as

13  contemplated in the proposed Settlement, is the far superior approach. First, Settlement Class

14  Members will be able to review the Class Notice provided on these post cards on their own time and

15  in an easily readable format – much preferable to reading a message that hyperlinks to the Class

16  Notice in a 180-character text message on the screen of a cell phone. Second, any post cards that are

17  sent to out-of-date addresses for Settlement Class Members are capable of being forwarded to correct

18  addresses associated with those Settlement Class Members, via mail forwarding services that

19  individuals often utilize when they change residences; text messages sent to reassigned telephone

20  numbers, on the other hand, are not capable of being forwarded to the intended recipients' current

21  telephone numbers and will instead simply be discarded by the current subscribers to those numbers.

22  Moreover, sending a post card Class Notice to each of the addresses that the Settlement

23  Administrator has identified for Settlement Class Members will serve the important purpose of testing

24  the accuracy of those addresses before checks are mailed out after final approval. To the extent a post

25  card notice sent to a Settlement Class Member is returned to the Settlement Administrator as

26  undeliverable, the Settlement Administrator will then work to identify a correct address for that

27  Settlement Class Member, re-send another postcard to such address, and ultimately send a Settlement

28

34

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

1    check to such address. By contrast, if the Class Notice were initially disseminated by text message to

2    telephone numbers believed to belong to Settlement Class Members, the Settlement Administrator

3    would be forced to send Settlement checks to each of the Settlement Class Members' addresses

4    identified to date without the benefit of having tested them for accuracy.

5        Accordingly, Plaintiffs respectfully request that the Court, as set forth in the proposed order

6    accompanying this Motion, find that the notice provided by the Settlement Class Notice Program: (i)

7    is the best practicable notice; (ii) is reasonably calculated, under the circumstances, to apprise the

8    Settlement Class of the pendency of the Action and of their right to object to or to exclude themselves

9    from the proposed Settlement; (iii) is reasonable and constitutes due, adequate, and sufficient notice

10   to all Persons entitled to receive notice; and (iv) meets all requirements of applicable law.  *See, e.g.,*

11   *Touhey v. U.S.*, No. 08-cv-1418, 2011 WL 3179036, at *11 (C.D. Cal. July 25, 2011) (finding mail,

12   publication, website and toll-free number were sufficiently calculated to reach class members, and

13   satisfied Rule 23 notice requirements).[8]

14       **E.    The Court Should Schedule the Final Approval Hearing**

15       The last step in the settlement approval process, after completion of the Settlement Class

16   Notice Program, will be a Fairness Hearing on final approval of the Settlement and Settlement

17   Agreement to consider the fairness, reasonableness, and adequacy of the proposed Settlement and

18   whether it should be finally approved by the Court, and to determine the reasonableness of the

19   requested Attorneys' Fee Award and Service Award.  Plaintiffs respectfully request that the Court set

20   a date for the Final Hearing at the Court's convenience and consistent with the proposed timetable set

21   forth in the proposed order accompanying this Motion.

22   **VI.    CONCLUSION**

23       For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) preliminarily

24   approve the Settlement; (2) provisionally certify the Settlement Class and appoint Plaintiffs as Class

25   Representatives and Plaintiffs' counsel as Class Counsel; (3) approve the Class Notice, appoint KCC

26

27   [8]    Promptly after the filing of this Motion and the attached Settlement Agreement, Eaze will
serve or cause the Class Administrator to serve CAFA Notice in full compliance with 28 U.S.C. §
28   1715.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

1  as Settlement Administrator, and order that Notice be effectuated by KCC; (4) establish a procedure

2  and timetable, consistent with the procedure set forth in the Settlement Agreement, for Settlement Class

3  members to object to the Settlement, exclude themselves from the Settlement Class, and file Claims in

4  the Settlement (for Settlement Class Members for whom no address can be identified); and (5) set a

5  final approval hearing to consider whether to finally approve the Settlement.

6  Dated:  October 25, 2019                          Respectfully submitted,

7                                                                  **HEDIN HALL LLP**

8                                                                  By: s/ Frank S. Hedin
                                                                   FRANK S. HEDIN (SBN 291289)
9                                                                  fhedin@hedinhall.com
                                                                   DAVID W. HALL (SBN 274921)
10                                                                 dhall@hedinhall.com
                                                                   Four Embarcadero Center, Suite 1400
11                                                                 San Francisco, California 94111
                                                                   Telephone: (415) 766-3534
12                                                                 Facsimile: (415) 402-0058

13                                                                 *Counsel for Plaintiffs and Proposed Settlement Class*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT